IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **VIDEOSHARE, LLC,** <br> *Plaintiff* <br><br> v. <br><br> **GOOGLE LLC, YOUTUBE, LLC,** <br> *Defendants* | § <br> § <br> § <br> § <br> § <br> § <br> § | **CIVIL NO. 6-19-CV-00663-ADA** |

### ORDER DENYING DEFENDANTS' MOTION TO DISMISS

Before the Court is Defendants' Motion to Dismiss Based on Claim Preclusion (ECF No. 18). Plaintiff filed a response on February 19, 2020 (ECF No. 21) and Defendants filed a reply on February 26, 2020 (ECF No. 23). The Court held a hearing on the issue on March 13, 2020. ECF No. 28. After considering the parties' briefs, the applicable law, oral argument, and the case file, the Court **DENIES** Defendants' Motion based on the reasons that follow.

**I.  BACKGROUND**

This case concerns the same Plaintiff (VideoShare, LLC) filing the same cause of action (patent infringement) against the same Defendants (Google, LLC and Youtube, LLC) concerning the same product (streaming video), albeit in a different venue. Defendants assert that Plaintiff's case should be dismissed based on res judicata, also known as claim preclusion, because a federal court in Delaware held that a similar previously litigated patent was invalid under 35 U.S.C. § 101.

On June 4, 2013, Plaintiff filed suit in the District of Delaware asserting that Defendants infringed U.S. Patent No. 8,464,302 and an additional patent. *VideoShare, LLC v. Google, Inc. and Youtube, LLC*, No.13-cv-990 (GMS). Specifically, Plaintiff identified "Defendants' infringing products and services" as "products and services for receiving, converting, and sharing streaming video, including those marketed as Youtube." *Id.*, ECF No. 47 at ¶ 11 (D. Del. June 9, 2015).

1

Defendants filed a Rule 12(c) motion, asserting lack of patentable subject matter of both patents-in-suit. On August 2, 2016, the district court found that both patents-in-suit were invalid pursuant to 35 U.S.C. § 101. *VideoShare, LLC v. Google, Inc.*, 2016 WL 4137524 (D. Del. Aug. 2, 2016) ("*VideoShare I*"). The Federal Circuit subsequently affirmed the district court's Order. *Videoshare, LLC v. Google, Inc.*, 695 F. App'x 577 (Fed. Cir. 2017) ("*VideoShare II*").

Several years later, in January 2019, Plaintiff filed the patent application that would later issue as U.S. Patent No. 10,362,341. The '341 Patent is a continuation of the '302 Patent and shares an identical specification except for the '341 Patent's more extensive listing of related patent applications. On April 4, 2019, the patent examiner issued a rejection of all claims for nonstatutory double patenting, finding that the claims of the '341 Patent were not patentably distinct from the claims of the '302 Patent. Plaintiff filed a terminal disclaimer in response to the double patenting rejection, but did not dispute the examiner's conclusions. The '341 Patent issued on July 23, 2019.

In November 2019, Plaintiff filed its current complaint against Defendants, alleging infringement of the '341 Patent in the Western District of Texas. As it did in the Delaware litigation, Plaintiff identifies "Defendants' infringing products and services" as "products and services for receiving, converting, and sharing streaming video, including those distributed through YouTube." ECF No. 1, Pl.'s Compl., at ¶ 9. Defendants filed the instant Motion to Dismiss in February 2020, arguing that the Court should dismiss the case based on the doctrine of claim preclusion.

## II.   LEGAL STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

2

662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

Whether a cause of action is barred by claim preclusion is a question of law. *SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1165 (Fed. Cir. 2018). Thus, claim preclusion is appropriately addressed in a motion to dismiss. *Senju Pharm. Co. v. Apotex Inc.*, 746 F.3d 1344 (Fed. Cir. 2014) (affirming dismissal on claim preclusion grounds). The Federal Circuit "looks to the law of the regional circuit for guidance regarding the principles of claim preclusion." *Id.* at 1348. The test for claim preclusion in the Fifth Circuit has four elements: (1) the parties in the later action are identical to, or in privity with, the parties in the earlier action; (2) the judgment in the earlier case was rendered by a court with proper jurisdiction; (3) there has been a final judgment on the merits; and (4) the earlier case and later case involve the same cause of action. *SimpleAir*, 884 F.3d at 1165. The fourth element is governed by Federal Circuit law. *Id*.

The Federal Circuit applies the "transactional test" articulated in the Restatement (Second) of Judgments. *Id*. The test asks whether the later cause of action forms "all or any part of the transaction, or series of connected transactions, out of which the [earlier] action arose." Restatement § 24. "What factual grouping constitutes a 'transaction,' and what groupings constitute a 'series,' are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.* "If the overlap between the transactional facts of the suits is substantial, the later action should ordinarily be precluded." *SimpleAir*, 884 F.3d at 1165.

### III.   ANALYSIS

This appears to be a case of first impression. The parties have not cited to any prior cases where a court analyzed whether claim preclusion applies to a subsequent patent in a second case based on the patent ineligibility of another patent in the same family in the first case.

#### A.  Analysis of claim scope of the '302 and '341 Patents

The Parties agree that the sole issue before the Court is the fourth element—whether the earlier case and the later case involve the same cause of action. Pl.'s Resp. to Def.'s Mot., ECF No. 21 at 4 (hereinafter "Resp."). Defendants proffer two main arguments in support of their contention that the two actions involve the same cause of action. Mot. to Dismiss, ECF No. 18 at 5–6 (the "Motion"). First, Defendants contend that the accused "products or processes are essentially the same." *Id.* (citing *Senju*, 746 F.3d at 1349). Second, Defendants argue that the "scope of the asserted patent claims in the two suits are essentially the same." *Id.* (citing *SimpleAir*, 884 F.3d at 1167). Plaintiff does not seriously dispute Defendants first contention; thus, the Court will focus on Defendants' second argument.

Defendants maintain the scope of the asserted patent claims are essentially the same, requiring the Court to dismiss the current suit. Mot. at 5–6. Defendants base their argument that the claims are essentially the same on two theories. First, Defendants argue that the claims are "patentably indistinct." *Id.* at 6. Specifically, Defendants contend the claims are not patentably distinct because both cover the same concept of converting a video file in a second file format for sharing over a computer network. *Id.* at 9. Although the '341 Patent also requires storing the first original file and delivering one of the first or second file formats, Defendants contend that such a minor change is obvious. *Id.* Further bolstering their point, Defendants point to the fact that Plaintiff made no effort to dispute the examiner's findings, and instead, filed a terminal disclaimer.

*Id.* Thus, Defendants contend that the claims of the '341 Patent are not patentably distinct. *Id.*; *see also SimpleAir*, 884 F.3d at 1168.

Secondly, Defendants contend that the claims of the '341 Patent are narrower versions of the originally asserted '302 Patent claims, making them essentially the same because they do not create new legal rights to assert infringement that differ from the rights asserted in the original patent. *Id.* at 6; *see Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1342 (Fed. Cir. 2012). Specifically, Defendants argue that the claims of the '341 Patent are narrower than those of the '302 Patent because instead of just sending the converted file, the '341 Patent sends one of two different files. *Id.* at 9. Additionally, Defendants point out that the '341 Patent's "structured hierarchical network" is both a narrower and an "obvious variant on the 'network' of the '302 Patent." *Id.* Thus, Defendants claim the '341 patent is not patentably distinct.

In response to Defendant's first argument (that the claims are not "patentably distinct"), Plaintiff contends that the present case and the Delaware case involve distinct causes of action. Resp. at 4. Plaintiff points out that a terminal disclaimer "***is not*** an admission or presumption regarding the patentability of the claims of a continuation patent." *Id.* (emphasis in original). Additionally, Plaintiff argues that because the '341 Patent was not in existence at the time of the Delaware lawsuit, the claims of the '341 Patent could not have been litigated in the previous suit. *Id. at 2.*

More importantly, Plaintiff next argues claim preclusion is not applicable in this case because there was no determination of the scope of the patent's claims. More specifically, unlike infringement or invalidity under §§ 102 and 103, Plaintiff contends that patent ineligibility pursuant to 35 U.S.C. § 101 does not concern the scope of a patent's claims.

Although the Court agrees with Defendants that there is substantial overlap between this case and *VideoShare I*, as the asserted patent shares a common specification and because the Examiner initially rejected of all claims for nonstatutory double patenting, the Court ultimately agrees with Plaintiff that claim preclusion is not applicable in this case.

As the Federal Circuit explained in *SimpleAir*: "[W]here different patents are asserted in a first and second suit, a judgment in the first suit will trigger claim preclusion *only if* the scope of the asserted patent claims in the two suits is essentially the same." *SimpleAir*, 884 F.3d at 1167 (emphasis added). However, this analysis has typically been applied only where infringement or noninfringement was fully adjudicated in the prior litigation. *See, e.g., SimpleAir*, 884 F.3d at 1163 (previous litigation resulted in three judgments of noninfringement for defendant); *Aspex*, 672 F.3d at 1338 (previous litigation resulted in a finding of noninfringement). Plaintiff contends—and Defendants do not appear to disagree—that claim preclusion has never been applied to a different patent in a subsequent suit. Resp. at 1. More specifically to the issue in this case, claim preclusion has never been applied where a patent was found invalid under § 101 in the first case and a different patent was asserted in the second case. The reasons for that make sense. Unlike invalidity based on 35 U.S.C. §§ 102 and 103 where a court has to first determine the scope of the claims in order to find that prior art anticipates or renders obvious, respectively, the claims, patent eligibility under 35 U.S.C. § 101 does not concern the *scope* of a patent's claims. It only concerns whether or not the patents are directed to patent-eligible subject-matter.

In this case, the Delaware district court did not invalidate the '302 patent based on the scope of the Patent, but instead, found the patent invalid because it was directed to an abstract idea and that there was no inventive concept that transformed the abstract idea into something patentable. *VideoShare I*, 2016 WL 4137524 at *8–10. As such, the Delaware district court did not

need to—and never did—determine the scope of the claims. Because the Delaware district court did not determine the scope of the claims for the '341 Patent, the Court cannot compare the respective scopes of the '302 and '341 Patents to determine whether they are essentially the same. Therefore, Defendants' argument that claim preclusion applies to the '302 Patent is fundamentally flawed and the cases cited by Defendants are inapposite. *See e.g., SimpleAir*, 884 F.3d at 1166–67 (claim scope determined in prior litigation and remanded because district court did not analyze the claims of the patents to determine if they were essentially the same).

Defendants primarily rely on *Senju* to support their argument that because the '341 Patent is necessarily a "narrower version" of the '301 Patent, the claims are patentably indistinct. In *Senju*, the district court held the claims invalid as obvious in the first case. 746 F.3d at 1347. Afterwards, the patentee amended existing claims and added new claims to the patent in a reexamination proceeding, and then filed a second action for infringement of the newly amended and added claims against the same party. *Id.* The district court held the patentee's second action-claim was precluded by the earlier action because it raised the same cause of action as the first case, as none of the claims emerging from reexamination were broader than the earlier patent. *Id.* at 1348. The Federal Circuit affirmed, holding that "claims that emerge from reexamination do not in and of themselves create a new cause of action that did not exist before." *Id.* at 1352.

There are at least two reasons why *Senju* is distinguishable from the present case.[1] The first and most important distinction between this case and *Senju* is that the Delaware district court did not determine the claim scope of the claims in the '302 Patent. By contrast, the court in *Senju* did determine the claim scope. Therefore, *Senju* is inapposite.

---

[1] Another difference between *Senju* and the instant case is that the same patent was asserted in both cases, albeit with amended and new claims, whereas a different, subsequent patent is being asserted in this case. But this fact is not dispositive because, in both *Senju* and the instant case, new claims that did not exist at the time of the first litigation were being asserted.

Second, a continuation patent does not necessarily have the same or narrower scope as its parent patent, even if the examiner rejected all claims due to nonstatutory double patenting. There is "no prohibition on broadening claims in continuation patents subject to a terminal disclaimer." *SimpleAir*, 881 F.3d at 1167. "So unlike the case of reexamined claims, claims of terminally-disclaimed continuation patents could 'provide larger claim scope to a patentee than the patentee had under' the parent patent." *Id.* (citing *Senju*, 746 F.3d at 1353).

Even a cursory review of the claim language of the two patents shows that the '341 Patent uses broader claim language, thus indicating potentially broader claim scope. More specifically, the claim 1, limitation [g] of the '302 Patent requires "generating an identification tag identifying the stored steaming video file," whereas the claim 1, limitation [d] of the '341 Patent states "the first server system generating an identifier for video content corresponding to the first video file and the second video file." *See* Mot. at 8 (contending that these two limitations are substantially similar). Because the term "identifier" could, and generally does, encompass a broader meaning than "identification tag," the scope of the '341 Patent is likely broader in scope than the '302 Patent, at least with respect to "identifier." Thus, even if this was one of the rare cases where claim construction was not a necessary step to resolve a patent's subject-matter eligibility,[2] the Court finds the claims are not essentially the same for purposes of claim preclusion.

The Court also believes Defendants' argument that Plaintiff's filing of a "terminal disclaimer without opposition to the examiner's double patenting rejection provides a 'strong clue' that the patentee thought the continuation patent lacked a patentable distinction over the parent" is incorrect for at least two reasons. Def.'s Reply, ECF No. 23 at 2. First, it is well-established that a

---

[2] For the reasons described in *Slyce Acquisition Inc. v. Syte – Visual Conception Ltd.*, No. 6:19-cv-257-ADA, 2020 WL 278481 (W.D. Tex. Jan. 10, 2020), the Court's general practice is to defer resolving § 101 related Rule 12(b) motions until after claim construction and after fact discovery opens.

terminal disclaimer is not an admission or presumption regarding the patentability of the claims of a continuation patent. *See SimpleAir*, 881 F.3d at 1163 (holding the lower court "erred by presuming that terminally-disclaimed continuation patents are patentably indistinct variations of their parent patents without analyzing the scope of the patent claims."); *Motionless Keyboard Co. v. Microsoft Corp.*, 486 F.3d 1376, 1385 (Fed. Cir. 2007) ("A terminal disclaimer is simply not an admission that a later-filed invention is obvious."); *Ventana Med. Sys., Inc. v. Biogenex Labs., Inc.*, 473 F.3d 1173, 1184 n.4 (Fed. Cir. 2006) (rejecting accused infringer's argument that by filing terminal disclaimer patentee effectively admitted that claims of patent had similar scope); *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 941 (Fed. Cir. 1992) (rejecting argument that patent applicant admitted to obviousness-type double patenting by filing terminal disclaimer); *Quad Envtl. Techs. Corp. v. Union Sanitary Dist.*, 946 F.2d 870, 874 (Fed. Cir. 1991) ("[T]he filing of a terminal disclaimer simply serves the statutory function of removing the rejection of double patenting, and raises neither presumption nor estoppel on the merits of the rejection.").

Second, the PTO and district courts have different claim construction standards. The PTO uses the "broadest reasonable interpretation" ("BRI") standard during prosecution. Manual of Patent Examining Procedure § 2111 ("During patent examination, the pending claims must be 'given their broadest reasonable interpretation consistent with the specification.'"). Courts, on the other hand, interpret claims under the *Phillips* standard. *See Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*). In other words, the nonstatutory double patent rejections—and the concomitant terminal disclaimer—resulted from the BRI standard while the analysis of claim preclusion is based on the *Phillips* standard. Because the BRI standard is the same or broader—but not narrower—than the *Phillips* standard, it is quite possible that had the Examiner used the *Phillips* standard instead of the BRI standard, the Examiner would not have rejected the claims of

the '341 Patent based on nonstatutory double patenting. *Facebook, Inc. v. Pragmatus AV, LLC*, 2014 WL 4454956, 4 (Fed. Cir. Sept. 11, 2014) (nonprecedential) ("the broadest reasonable interpretation of a claim term may be the same as or broader than the construction of a term under the *Phillips* standard. But it cannot be narrower.").

For example, suppose that, under the BRI standard, the claim scope of the '341 Patent was such that it fit entirely within the claim scope of the '302 Patent. But because the BRI standard is the same or broader than the *Phillips* standard, it is possible that that under the *Phillips* standard, the claim scope of the '302 Patent could be smaller than under the BRI standard such that the claim scope of the '341 Patent no longer completely fits within the claim scope of the '302 Patent. While this example may be somewhat contrived, it still illustrates that it is very difficult—if not impossible—for a court to determine whether the difference in claim construction standards may sufficiently change the claim scope to affect the claim preclusion analysis. Accordingly, the Court believes that, in most cases, such an analysis would have a sufficiently large "margin of error" that minimizes the utility of a terminal disclaimer when analyzing claim scope for claim preclusion purposes.

For at least these two reasons, the Court believes Defendants' argument that Plaintiff's filing of a terminal disclaimer without opposition to the examiner's double patenting rejection provides a "strong clue" that the patentee thought the continuation patent lacked a patentable distinction over the parent is incorrect.

### B. The Court declines to determine whether the '302 and '341 Patents have the same claim scope at this stage of the litigation

But this approach begs the question: why not determine whether the claims in the two patents have the same scope at this stage in the litigation? There are at least three reasons for not doing so. First, the Court believes comparing the scope of a patent that this early stage in the

litigation is inappropriate without the benefit of formal claim construction. *MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1379 (Fed. Cir. 2019) (citing *Bancorp Servs., LLC v. Sun Life Assurance Co. of Can.*, 687 F.3d 1266, 1273–74 (Fed. Cir. 2012)) ("[I]t will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter.").[3]

The Court's approach is consistent with Federal Circuit case law that Defendants cite. In *SimpleAir*, the Federal Circuit acknowledged that the claim language in the previously litigated patents and the patents-at-issue in the case were very similar. 884 F.3d at 1168. In fact, the court stated it did not see how the two patents were "fundamentally different invention[s] from those patents asserted in the previous litigation." *Id.* Yet despite these apparent similarities, the Federal Circuit decided to leave "it to the district court's discretion on remand whether formal claim construction is necessary to resolve whether the '838 and '048 claims are essentially the same as, *i.e.*, patentably indistinct from, those in the previously adjudicated parent parents." *Id.* at 1168–69; *see also Cardpool, Inc. v. Plastic Jungle, Inc.*, 817 F.3d 1316 (Fed. Cir. 2016) (holding that a district court's finding of invalidity under 35 U.S.C. § 101 did not automatically render that judgment res judicata as to new claims granted upon reexamination). Here, at such an early stage in the litigation, the Court believes claim preclusion is premature and inapplicable. Because the claim scope of the earlier litigated patent was not determined and because the Court has not

---

[3] The Court acknowledges that some Courts have applied claim preclusion at the 12(b) stage, before formal claim construction. *See e.g., MAZ Encryption Tech., LLC v. Blackberry Ltd.*, 347 F. Supp. 3d 283, 293 (N.D. Tex. 2018). The Court respectfully disagrees with that approach for the reasons described in the Court's order for *Slyce*. 2020 WL 278481, at *5. The Court believes that under the facts of this case, where no formal claim construction has occurred and no claim construction occurred in the previous case, granting a 12(b)(6) motion to dismiss based upon claim preclusion is premature.

construed the claims in this case—which, after all, is a question of law—the Court will not determine the claim scope at this point in the litigation.

Second, the Court also finds Defendants' argument that the '341 Patent is necessarily a "narrower version" of the '301 Patent, thus making the claims patentably indistinct, misses the mark. Defendants are correct that the addition of limitations to the '341 Patent (as compared with the '301 Patent) necessarily narrows the scope of infringement because the accused products must have additional limitation(s) in order to infringe the '341 Patent (whereas the accused products did not need to have the additional limitation(s) in order to infringe the '301 Patent). By contrast, adding a limitation to the '341 Patent may provide some invalidity protection because the additional limitation may not be asserted in the prior art. In other words, the additional limitation may prevent a reference from anticipating a '341 Patent claim or from multiple references from rendering it obvious. As such, if the '341 Patent were actually a "narrower version" of the '301 Patent, it may not be invalid.

But adding limitations to a claim has a different effect in the context of a § 101 analysis than it does in the context of an infringement or §§ 102 and 103 invalidity analysis. More specifically, in the context of an infringement or §§ 102 or 103 invalidity analysis, the additional limitation narrows the claim scope. But in the context of a § 101 analysis, the additional limitation may—individually or in conjunction with the other claim limitations (*i.e.*, "as an ordered combination" of elements)—"'transform the nature of the claim' into a patent-eligible application." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014). In other words, contrary to Defendants' argument that adding limitations narrows the claim scope, thus making the claims patentably indistinct, adding limitations to a claim may actually provide the inventive concept that transforms the abstract idea in a patentable invention. *Berkheimer v. HP Inc.*, 881

F.3d 1360, 1370 (Fed. Cir. 2018) (holding dependent claims 4 to 7 "contain limitations directed to the arguably unconventional inventive concept described in the specification.").

Third, to determine whether the claims in the two patents have the same scope would require this Court to determine the claim scope of the '301 Patent—which has not been asserted in this case, and is also invalid—and the '341 Patent—which has been asserted in this case. To do so, the Court would need to construe the claim terms in both patents and then conduct a § 101 analysis on both patents (which may require factual evidence). Not only is this an impractical approach, it also requires construing and analyzing an <u>unasserted</u>, <u>invalid</u> patent, which is outside the scope of the present case.

### C. Claim preclusion cannot be readily applied to (1) analyzing patent eligibility and/or (2) the *Alice* two-step test

Because this is a case of first impression, the Court has carefully considered the doctrines of claim preclusion and patent eligibility in order to provide its opinion whether the former can be readily applied to the latter, in case another court may benefit from the time this Court has spent analyzing this issue. The Court concludes that the doctrine of claim preclusion cannot be readily applied to analyzing patent eligibility. As described above, because one element of claim preclusion is whether or not the two patents have the same scope, if the scope of the first patent was not determined when evaluating its patent eligibility, then it is axiomatic that claim preclusion based on patent ineligibility cannot apply to the second patent.

The Court also does not believe that the doctrine of claim preclusion cannot be readily applied to either step of the *Alice* two-step test. Obviously, for claim preclusion to potentially apply in a later case, the court in the prior case has to have determined (1) that the claims in the first patent were directed to a patent ineligible concept and (2) that there is not an inventive concept that transforms the claimed patent ineligible concept into a patent-eligible application. *Alice*, 573

13

U.S. at 217–18. But even if the prior court determined that the first patent was directed to a patent ineligible concept, that determination is unlikely to have any preclusive effect on whether the second patent is also directed to a patent ineligible concept for a few reasons. First, in many cases, the language of the claims of the second patent may be sufficiently different from that of the first patent such that it is not facially, *i.e.*, without further analysis, obvious that both patents are directed to the same patent ineligible concept. Second, the later patent may use terms which the prior court did not construe (if it construed any at all), which may altogether prevent the application of claim preclusion because "it will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter." *MyMail*, 934 F.3d at 1379. Third, a difference in the type of claims, *e.g.*, method or apparatus, in the first and second patents could also prevent the application of claim preclusion because it may be more difficult to determine if an apparatus claim in the second patent is directed to an abstract idea given the recitation of real-world components, which may not be present in the method claim of the first patent. Because patents are presumed valid, overcoming this presumption requires clear and convincing evidence. *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019) (quoting *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95–96 (2011)). But to the extent that any of these aforementioned reasons apply to the second patent, given that it takes clear and convincing evidence to invalidate a patent, it appears that the applicability of claim preclusion to the first step of the *Alice* analysis will be rather limited, if not rare.

Likewise, a prior court's determination that there is not an inventive concept that transforms the claimed patent ineligible concept into a patent-eligible application also is unlikely to have any preclusive effect on whether there is an inventive concept in the second patent for at

least two reasons. First, as was the case for the first step of the *Alice* analysis, unresolved claim construction disputes may prevent the application of claim preclusion to the second *Alice* step. Second, as described above, because any new or additional limitations may provide an inventive concept that was missing in the first patent, these limitations also prevent the application of claim preclusion.

## IV.   CONCLUSION

Based on the foregoing, the Court finds that Defendants' Rule 12(b)(6) Motion to Dismiss based on claim preclusion should be **DENIED**.

**SIGNED** this 4th day of May, 2020.

*[signature]*
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE