**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| VIDEOSHARE, LLC | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | CIVIL ACTION No. 6:19-cv-00663-ADA |
| GOOGLE LLC and YOUTUBE, LLC | § | JURY TRIAL DEMANDED |
| | § | |
| Defendants. | § | |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY FOR
LACK OF PATENTABLE SUBJECT MATTER UNDER 35 U.S.C. § 101**

# TABLE OF CONTENTS

Page

I.     STATEMENT OF UNDISPUTED MATERIAL FACTS ................................................. 2

II.    STATEMENT OF DISPUTED ISSUE TO BE DECIDED ............................................. 5

III.   LEGAL STANDARD ................................................................................................... 5

IV.    SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE THE '341
       PATENT CLAIMS ARE DIRECTED TO INELIGIBLE SUBJECT MATTER ............. 7

       A.     *Alice* Step One: The Claims Are Directed to an Abstract Idea ................................ 7

              1.     The claims are directed to the abstract idea of preparing a video
                     file in a streaming format for sharing over a computer network and
                     sharing the most compatible between the original and converted
                     files ................................................................................................... 7

              2.     The claims are not directed to improving computer functionality ............ 9

       B.     *Alice* Step Two: The Claims Lack an Inventive Concept .................................... 11

              1.     Beyond the abstract idea, the claims of the '341 patent recite only
                     generic computer and internet functions ................................................. 11

                     a.     The claims' generic computer functions are not inventive .......... 12

                     b.     The claims' generic internet functions are not inventive ............ 13

                     c.     Converting video from one format to another and
                            determining which one is most compatible is not inventive ........ 14

                     d.     Generating an identifier is not inventive .................................... 15

                     e.     Sending an advertisement is not inventive ................................... 16

                     f.     The sequence of steps is not inventive ......................................... 16

       C.     The Decision in *VideoShare I* and VideoShare's Expert Testimony
              Confirm That the Claims of the '341 Patent Are Ineligible ................................ 17

       D.     The Dependent Claims Are Not Directed to Patent-Eligible Subject Matter
              and Lack an Inventive Concept for the Same Reasons ........................................ 19

V.     CONCLUSION ........................................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Accenture Glob. Servs. v. Guidewire Software, Inc.,*
   728 F.3d 1336 (Fed. Cir. 2013)............................................................................ 6, 14

*Affinity Labs of Tex., LLC v. Amazon.com, Inc.,*
   No. 6:15-CV-0029-WSS-JCM, 2015 U.S. Dist. LEXIS 77411 (W.D. Tex.
   June 12, 2015), *aff'd*, 838 F.3d 1266 (Fed. Cir. 2016) ............................... 6, 7, 8, 18

*Alice Corp. v. CLS Bank Int'l,*
   134 S. Ct. 2347 (2014) ...................................................................................... 1, 13

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986)................................................................................................ 5

*buySAFE, Inc. v. Google, Inc.,*
   765 F.3d 1350 (Fed. Cir. 2014)............................................................................. 14

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986)................................................................................................ 5

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,*
   776 F.3d 1343 (Fed. Cir. 2014)..................................................................... passim

*Customedia Techs., LLC v. Dish Network Corp.,*
   951 F.3d 1359 (Fed. Cir. 2020)................................................................... 8, 18, 20

*Cyberfone Sys, LLC v. CNN Interactive Grp., Inc.,*
   558 F. App'x 988 (Fed. Cir. 2014) ................................................................. 13, 15

*Elec. Power Grp., LLC v. Alstom S.A.,*
   830 F.3d 1350 (Fed. Cir. 2016)............................................................................... 9

*Enfish, LLC v. Microsoft Corp.,*
   822 F.3d 1327 (Fed. Cir. 2016)........................................................................... 6, 9

*Free Stream Media Corp. v. Alphonso Inc.,*
   996 F.3d 1355 (Fed. Cir. 2021)......................................................................... 6, 12

*In re TLI Commc'ns LLC Patent Litig.,*
   823 F.3d 607 (Fed. Cir. 2016)............................................................................... 11

*Intellectual Ventures I LLC v. Capital One Fin. Corp.,*
   850 F.3d 1332 (Fed. Cir. 2017)............................................................................... 6

*Internet Patents Corp. v. Active Network, Inc.,*
   790 F.3d 1343 (Fed. Cir. 2015)..................................................................... 6, 9, 14

## TABLE OF AUTHORITIES
### (continued)

Page

*OIP Techs., Inc. v. Amazon.com, Inc.*,
788 F.3d 1359 (Fed. Cir. 2015).......................................................................... 13

*Pragmatus Telecomms., LLC v. Genesys Telecomms. Labs., Inc.*,
114 F. Supp. 3d 192 (D. Del. 2015)..................................................................... 20

*Pure Data Sys., LLC v. Ubisoft, Inc.*,
329 F. Supp. 3d 1054 (N.D. Cal. 2018) ................................................................ 8

*Telinit Techs., LLC v. Alteva, Inc.*,
No. 2:14-CV-369, 2015 U.S. Dist. LEXIS 125991 (E.D. Tex. Sept. 21, 2015).................... 12

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
874 F.3d 1329 (Fed. Cir. 2017)........................................................................ 9, 10

*Ultramercial, Inc. v. Hulu, LLC*,
772 F.3d 709 (Fed. Cir. 2014)..................................................................... passim

*Versata Dev. Grp., Inc. v. SAP Am., Inc.*,
793 F.3d 1306 (Fed. Cir. 2015)....................................................................... 13, 16

*VideoShare, LLC v. Google, Inc. & YouTube, LLC*,
No. 13-cv-990 (GMS) (D. Del.) ........................................................................ 2

*VideoShare, LLC v. Google, Inc.*,
No. 13-cv-990 (GMS), 2016 U.S. Dist. LEXIS 100860 (D. Del. Aug. 2, 2016),
*aff'd*, 695 F. App'x 577 (Fed. Cir. 2017)...................................................... passim

## STATUTES

35 U.S.C. § 101.......................................................................................... passim

## RULES

Fed. R. Civ. P. 56(a) ..................................................................................... 5

Defendants Google LLC and YouTube LLC (collectively, "Defendants") move for summary judgment that the Asserted Claims 1 and 3-7 of U.S. Patent No. 10,362,341 ("the '341 patent") are invalid under 35 U.S.C. § 101.

Under § 101 and *Alice Corp. v. CLS Bank International*, 134 S. Ct. 2347 (2014), patent claims that are directed to an "abstract idea" and contain no "inventive concept" are invalid. The '341 patent claims fail the *Alice* test. The '341 patent claims are directed to the abstract idea of preparing a video file in a streaming format for sharing over a computer network and sending the most compatible between the original and the converted files. The '341 patent claims specify a particular result—sending either the original or the converted file—and not any improvement to computer technology. The claims also fail to recite an inventive concept. The claimed result can be accomplished using entirely conventional technologies; indeed, the specification identifies no technological improvement.

The Federal Circuit has found materially identical claims invalid under § 101. In 2016, the U.S. District Court for the District of Delaware held that two patents in the same family as the '341 patent were patent ineligible under *Alice*, and the Federal Circuit summarily affirmed that ruling. *See VideoShare, LLC v. Google, Inc.*, No. 13-cv-990 (GMS), 2016 U.S. Dist. LEXIS 100860, at *31 (D. Del. Aug. 2, 2016) ("*VideoShare I*"), *aff'd*, 695 F. App'x 577 (Fed. Cir. 2017). The '341 patent is a continuation of one of the patents found ineligible in *VideoShare I*. Although Plaintiff asserts that it amended the claims to overcome that ruling, the minor differences in the claims are immaterial to the § 101 analysis. The step of choosing for sharing the most compatible format between the original and the converted video files is abstract, conventional, and well known, and thus does not save the claims. The '341 patent fails to address the fundamental flaw the *VideoShare I* court identified in the related patents: the claims

-1-

are functional and result-oriented, and use conventional computer components in conventional ways. This case warrants the same result as in *VideoShare I*: the claims of the '341 patent should be held ineligible under 35 U.S.C. § 101.

Separately, in its infringement case and contrary to the Court's construction, VideoShare's expert asserts that the claim limitations are met by merely sending the second file, without first determining whether its format compared to the first file format is most compatible. Applying this flawed interpretation renders even more stark the patent's ineligibility under § 101.

## I.   STATEMENT OF UNDISPUTED MATERIAL FACTS

1.   On June 4, 2013, VideoShare, LLC ("VideoShare") filed suit in the District of Delaware asserting that the same Defendants here infringed U.S. Patent Nos. 8,464,302 (the "'302 patent") and 8,438,608 (the "'608 patent"). *VideoShare, LLC v. Google, Inc. & YouTube, LLC*, No. 13-cv-990 (GMS), Dkt. 1 (D. Del. June 4, 2013). On August 2, 2016, the Delaware district court granted Defendants' Rule 12(c) motion, finding both patents-in-suit invalid under § 101. *VideoShare I*, 2016 U.S. Dist. LEXIS 100860, at *31. At *Alice* Step One, the court held that the claims of the '302 patent—which shares the same specification as the '341 patent—were directed to the abstract idea of "preparing a video in streaming video format for sharing over a computer network," and were "not directed to an improvement in computer functionality, and the physical components of the claim merely provide a generic environment for carrying out the abstract idea." *Id*. at *13, *16. The court also found that, like other claims the Federal Circuit had ruled invalid, the claims merely "recite conventional features without a restriction on how the result is accomplished." *Id.* at *22. That is, the claims recited a result and "*what* is to happen" but did not "specify *how* these tasks are to be completed." *Id.*

2.   At *Alice* Step Two, the court held that the claims "do not contain an inventive concept," in large part because they "merely recite conventional computer components or

functions that involve the use of a computer network, such as the Internet." *Id.* at *26.  The claims may have been limited to "a particular technological environment, such as computer networks or a web page," but that "does not provide an inventive concept." *Id.* at *28-29.  On August 16, 2017, the Federal Circuit summarily affirmed the district court's order.  695 F. App'x at 577.

3.      On January 23, 2019, VideoShare filed the patent application that issued as the '341 patent.  The '341 patent is a continuation of the '302 patent invalidated in *Videoshare I*, meaning it shares an identical specification, except for its more extensive listing of related patent applications.  The patents have the same title and identify the same three named inventors.

4.      On April 4, 2019, the examiner rejected all claims for nonstatutory double patenting, finding the claims of the '341 patent were not patentably distinct from those of the '302 and '608 patents.  Dkt. 18-2 ('341 File History) at 146-47.  VideoShare did not dispute the examiner's conclusions.  *See* Dkt. 18-2.  Instead, on April 23, 2019, VideoShare filed a terminal disclaimer to overcome the double patenting rejection.  *Id.* at 190.  The '341 patent issued on July 23, 2019, and expired no later than February 3, 2020.[1]

5.      The table below compares claim 9 of the '302 patent held ineligible in *VideoShare I* with claim 1 of the '341 patent, with the limitations labeled and color-coded to illustrate matching limitations and certain limitations in the '302 patent reordered:[2]

---

[1] Defendants' position, articulated in their pending Rule 12(c) Motion to Dismiss, is that the '341 patent had no remaining term when it issued on July 23, 2019, because it was tied by terminal disclaimer to the previously invalidated '302 and '608 patents.  Dkt. 74 at 9.  The term of the '341 patent does not affect the present Motion.

[2] Defendants' current Motion shows that an independent analysis of the '341 patent claims establishes the claims are not eligible.  The similarities between the '341 and '302 patent claims are still relevant in view of the Federal Circuit's finding invalid the claims of the '302 patent.

| '341 Patent-in-Suit | '302 Patent Held Ineligible in *VideoShare* I | Substantial Similarity |
|---|---|---|
| [1P] A method for sharing video over a structured hierarchical network comprising: | [1P] A method of sharing a streaming video and associated advertisement over a network, comprising:<br><br>[1a] executing, by a first computer: | Both recite a "method" for "sharing video" over a "network" using computers (e.g., "first server system" and sending an advertisement (e.g., '341 patent, limitation [1g]) |
| [1a] a first server system receiving a first video file in a first format from a first client via the structured hierarchical network; | [1d] receiving a video file;<br><br>[9] The method of claim 1, wherein the video file is a streaming video file in streaming video format. | Both recite "receiving a video." The received video is in a "format." |
| [1b] the first server system creating a second video file in a second format by converting at least a portion of the first video file from the first format to the second format, independent from receiving a command from the first client to perform such conversion; | [1e] converting the video file into a streaming video file comprising a streaming video format, independent from receiving a command to perform such conversion; | Both recite "converting" a video file into another "format," "independent from receiving a command to perform such conversion." |
| [1c] the first server system storing the first video file and the second video file; | [1f] storing the streaming video file to a storage device; | Both recite "storing the . . . video file." |
| [1d] the first server system generating an identifier for video content corresponding to the first video file and the second video file; | [1g] generating an identification tag identifying the stored streaming video file;<br><br>[1i] embedding the identification tag into a web page accessible to a plurality of users on the network; | Both recite "generating an identifier" or "identification tag" for one or more video files. |
| [1e] the first server system receiving a request to stream the identified video content to a second server system[3] or a second client[4] via the structured hierarchical network; | [1j] receiving, via a web page, a request to transmit the streaming video file; and | Both recite "receiving a request" to stream a video via a network. |

[3] The Parties have agreed that "second server system" means "other servers used for video delivery."  Joint Claim Construction Statement, Dkt. 62 at 1.
[4] The Parties have agreed that "second client" means "viewing device or user."  Dkt. 62 at 1.

| '341 Patent-in-Suit | '302 Patent Held Ineligible in *VideoShare* I | Substantial Similarity |
|---|---|---|
| [1f] the first server system sending the stored first video file or the stored second video file corresponding to the identified video content to the second server system or the second client via the structured hierarchical network **depending on a compatibility of the second server system or a compatibility of the second client with the first format or the second format;**[5] and | [1k] transmitting, via a web page, the streaming video file and the advertisement to a second computer on the network. | Both recite transmitting/ sending the video file. |
| [1g] the first server system sending an advertisement for display with the identified video content sent in the stored first video file or the stored second video file. | [1b] receiving an advertisement; <br><br> [1c] storing the advertisement; <br><br> [1h] associating the streaming video file with the advertisement; | Both recite transmitting or sending an advertisement in conjunction with the video file. *See* '302 patent, limitation [1k]. |

## II.   STATEMENT OF DISPUTED ISSUE TO BE DECIDED

Whether claims 1 and 3-7 of the '341 patent ("Asserted Claims") are invalid as directed to patent-ineligible subject matter under 35 U.S.C. § 101.

## III.   LEGAL STANDARD

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A dispute of fact is "genuine" only if evidence presented "is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Patent eligibility under Section 101 is a question of law

---

[5] The Court construed the bolded phrase as "after determining which of the first format or second format is most compatible with the second server system or the second client."  Claim Construction Order, Dkt. 69 at 2.

that "may contain underlying factual issues." *Accenture Glob. Servs. v. Guidewire Software, Inc.*, 728 F.3d 1336, 1341 (Fed. Cir. 2013); *Affinity Labs of Tex., LLC v. Amazon.com, Inc.*, No. 6:15-CV-0029-WSS-JCM, 2015 U.S. Dist. LEXIS 77411, at *13 (W.D. Tex. June 12, 2015), *aff'd*, 838 F.3d 1266 (Fed. Cir. 2016).

Courts apply a two-step test to determine whether claims are ineligible under 35 U.S.C. § 101.  Step One looks to the "focus of the claimed advance over the prior art" to determine if the claims' "character as a whole" is directed to patent-ineligible matter such as an abstract idea. *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1338 (Fed. Cir. 2017).  In computer-related technologies, a relevant inquiry at *Alice* Step One is "whether the focus of the claims is on the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016).  The Federal Circuit has "repeatedly" held that claims are directed to an abstract idea when they lack "the specificity required to transform [the] claim from one claiming only a result to one claiming a way of achieving it." *Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355, 1363 (Fed. Cir. 2021). Put otherwise, when a claim describes an abstract result but provides "no restriction on how the result is accomplished," that confirms the claim is "directed to the idea itself." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015).

If the claims are directed to an abstract idea, the second step inquires whether the claims contain an "inventive concept," *i.e.*, an element or combination of elements sufficient to ensure that the claims amount to significantly more than a patent upon the abstract idea itself. *Id.* at 1346.  An "inventive concept" must be more than a "well-understood, routine, conventional activity." *Id.*

## IV.     SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE THE '341 PATENT CLAIMS ARE DIRECTED TO INELIGIBLE SUBJECT MATTER

The '341 patent claims fail the *Alice* test because they are directed to the abstract idea of preparing a video file in a streaming format for sharing over a computer network and sending the most compatible between the original and the converted files, and they invoke only conventional computer components in conventional ways to achieve that result.  The Federal Circuit's holding that the materially identical claims in *VideoShare I* are invalid under *Alice* further supports that conclusion.  Under Federal Circuit precedent—including *VideoShare I and* post-*VideoShare I* cases—the '341 patent claims are patent ineligible.

### A.     *Alice* Step One: The Claims Are Directed to an Abstract Idea

#### 1.     The claims are directed to the abstract idea of preparing a video file in a streaming format for sharing over a computer network and sharing the most compatible between the original and converted files

The '341 patent claims recite the abstract idea of preparing a video in a streaming format for sharing over a computer network and sharing the most compatible between the original and the converted files.  Independent claim 1 recites only this idea without reciting any technical implementation details: receive (and store) the content, convert the content, identify the content and share (transmit) the content with an advertisement.  *See, e.g.*, '341 patent, claim 1.  The dependent claims add characteristics of advertisements that do not change what each claim is directed to.

As the Federal Circuit has held multiple times, claims of receiving, storing, processing, and providing data are directed to an abstract idea.  The claims here are similar to those in *Affinity Labs* that were "directed to media systems that deliver content to a handheld wireless electronic device."  838 F.3d at 1267.  The representative claim described "a network-based media system with a customized user interface, in which the system delivers streaming content

from a network-based resource upon demand to a handheld wireless electronic device having a graphical user interface." *Id.* at 1268.  The district court held that the claims were directed to the abstract idea of "delivering selectable media content and subsequently playing the selected content on a portable device." *Id.*  The Federal Circuit affirmed, explaining that the patent did "not disclose any particular mechanism for wirelessly streaming content to a handheld device." *Id.* at 1269.  The claims did nothing more than "describe a desired function or outcome, without providing any limiting detail that confines the claim to a particular solution to an identified problem." *Id.*

Similarly, in *Customedia Technologies, LLC v. Dish Network Corp.*, the Federal Circuit affirmed invalidation of claims reciting a "data delivery system for providing automatic delivery of . . . specifically identified advertising data."  951 F.3d 1359, 1363 (Fed. Cir. 2020).  The court found the claims "directed to the abstract idea of using a computer to deliver targeted advertising to a user," rejecting patent owner's contention that they provided for improvements to the operation and functioning of computer systems. *Id.* at 1362-63.

As in those cases, the claims of the '341 patent do not disclose any particular non-conventional mechanism for the claimed steps of receiving, converting, or sending data.  The one change from the claims found ineligible in *VideoShare I*—tailoring the sending process to send either the original or the converted video file, depending on which is most compatible with a viewer's device—does not make the idea less abstract.  Indeed, the Federal Circuit has expressly found that such "tailoring . . . [of content sent to the user] based on information known about the user . . . is an abstract idea." *Affinity Labs*, 838 F.3d at 1271; *see also Pure Data Sys., LLC v. Ubisoft, Inc.*, 329 F. Supp. 3d 1054, 1065 (N.D. Cal. 2018) ("[C]hanging information into a format compatible for use by a recipient represents the abstract idea of 'translating.'").  As in

*VideoShare I*, the claims here describe "what is to be done," but nothing in the claims or specification says anything about *how* to perform the claimed conversion or transmission.  That omission confirms that the claims are directed to the abstract "idea itself."  *Internet Patents*, 790 F.3d at 1348.

*Ultramercial, Inc. v. Hulu, LLC* is also instructive.  There, the court invalidated a patent claiming a method for allowing a user to view copyrighted media (such as a TV show) online in exchange for watching an advertisement.  772 F.3d 709, 715, 717 (Fed. Cir. 2014).  Those claims contained limitations, such as consulting an activity log, that might have added "a degree of particularity," but that could not "turn[] an abstraction into something concrete."  *Id.*  Despite its eleven steps, the claim in *Ultramercial* was found directed to the abstract idea of "showing an advertisement before delivering free content."  *Id*. at 715.  The claims of the '341 patent are even broader, lacking even the "degree of particularity" that existed in, but could not save, the claims in *Ultramercial*.  *See* '341 patent, claim 1.

There is nothing more to the '341 patent claims than the abstract idea of preparing a video file in a streaming format for sharing over a computer network and sending the most compatible between the original and the converted files.

## 2.    The claims are not directed to improving computer functionality

The '341 patent claims are fundamentally unlike claims held patent eligible because they offer an "improvement in computers as tools," rather than merely claiming "certain independently abstract ideas that use computers as tools."  *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016) (citing *Enfish*, 822 F.3d at 1335-36); *see also Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) ("Claims directed to generalized steps to be performed on a computer using conventional computer activity are not patent eligible.").  Like its patent-ineligible parent, the '341 patent claims

epitomize an unpatentable abstract idea using computers as tools.  The claims recite conventional computer components such as "server," "client," "network," and "video file," with no improvement claimed in computer functionality.  '341 patent, claim 1.  The specification confirms that the claimed functional steps involve "conventional" general-purpose computers and known "third-party technologies" for video format conversion.  *See id.* at 5:47-52, 13:25-30.

In *Two-Way Media*, the patents related "to a system for streaming audio/visual data over a communications system like the internet."  874 F.3d at 1333.  The representative claim recited "converting a plurality of streams of audio and/or visual information into a plurality of streams of addressed digital packets," "routing" each "stream to one or more users," "controlling the routing of the stream of packets in response to selection signals received from the users," and "monitoring the reception of packets by the users and accumulating records" regarding which streams were received.  *Id.* at 1334-35.  The district court found the claims were directed to the abstract idea of "(1) sending information, (2) directing the sent information, (3) monitoring receipt of the sent information, and (4) accumulating records about receipt of the sent information."  *Id.* at 1336.  The Federal Circuit affirmed, explaining that the claim used "result-based functional language" that did not "sufficiently describe how to achieve these results in a non-abstract way."  *Id.* at 1337.  Rejecting plaintiff's contention that the invention was a particular scalable network architecture, the court held that even under plaintiff's construction, the claims "recite only conventional computer components."  *Id.* at 1338.  As in *Two-Way Media* and unlike in *Enfish*, the claims here use generic computer components to carry out the abstract idea rather than providing any specific improvement in computer capabilities or architecture.

The '341 patent claims also parallel those in *TLI*, which were directed to recording images, storing them, transmitting to a server "data including at least the digital images and

classification information . . . prescribable by a user," receiving the data by the server, extracting classification information, and storing the images in the server. *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 610 (Fed. Cir. 2016). The Federal Circuit found the claims drawn to the abstract idea of "classifying and storing digital images in an organized manner." *Id.* at 611. Although the claims recited some tangible components such as "a telephone unit" and a "server," the specification revealed that those physical components "merely provide a generic environment in which to carry out the abstract idea." *Id.* Here as well, tangible claim components such as "server," "client," and "network" merely provide a generic environment in which to carry out the abstract idea. *See id.*

**B.   *Alice* Step Two: The Claims Lack an Inventive Concept**

An abstract idea does not become patent eligible when "the claims simply instruct the practitioner to implement the abstract idea with routine, conventional activity," such as through a "general purpose computer." *Ultramercial*, 772 F.3d at 715-16. That is all the '341 patent does. The '341 patent claims fail *Alice* Step Two under the independent analysis shown below, a conclusion reinforced by the Federal Circuit's finding of materially identical claims invalid.

**1.   Beyond the abstract idea, the claims of the '341 patent recite only generic computer and internet functions**

The '341 patent claims fail the second *Alice* step because their limitations, alone or in combination, do not contain an "inventive concept." The claims merely recite the above-described abstract idea implemented using "generic" computing or Internet technology to "perform well-understood, routine, and conventional activities commonly used in the industry." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014). Such generic, high-level limitations, providing no guidance or restriction on how they are accomplished, do not provide an inventive concept. *See, e.g.*, *Ultramercial*, 772

F.3d at 712, 716 (no inventive concept in an eleven step method that included a step of "selecting

a sponsor message to be associated with the media product," because the method "comprise[d]

only conventional steps specified at a high level of generality"); *Free Stream Media*, 996 F.3d at

1364, 1366 (no inventive concept where claims recited "abstract idea of targeted advertising"

"implemented using conventional components and functions generic to the technology"); *Telinit*

*Techs., LLC v. Alteva, Inc.*, No. 2:14-CV-369, 2015 U.S. Dist. LEXIS 125991, at *49 (E.D. Tex.

Sept. 21, 2015) (no inventive concept in structures that were "nothing more than generic

computer and Internet based elements").

     The hardware and software described by the claims consists of well-known and routine

computer elements.  In the subsections below, the limitations of independent claim 1 are

addressed in the following groups:

(a)     Conventional Computer Functions or "Automation":
1. "receiving," "storing," and "sending" by a server;
2. "independent from receiving a command to perform;"

(b)     Conventional Internet Functions:
1. "receiving" "via the structured hierarchical network;"
2. "sending" "via the structured hierarchical network."

(c)     "Converting the video from the first format to the second format" and determining which one is most compatible.

(d)     "Generating an identifier for video content."

(e)     "Sending an advertisement for display with the identified video content."

### a.   The claims' generic computer functions are not inventive

     The claims set forth at least three basic computer limitations: receiving, storing, and

sending.  *See* '341 patent, claim 1.  Each recites only the conventional use of a generic,

unspecialized computer.  The Federal Circuit has repeatedly stated that "storing," "receiving,"

and "sending" by a basic computer are not inventive concepts.  *See, e.g.*, *Content Extraction*, 766

F.3d at 1345-49 ("receiving," "recognizing," "processing," and "storing" not inventive); *Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1334 (Fed. Cir. 2015) ("storing, retrieving, sorting, eliminating and receiving were 'well-known, routine, and conventional steps'"); *Cyberfone Sys, LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988, 993 (Fed. Cir. 2014) ("obtaining, separating, and then sending information" are conventional computer steps).

The claims' use of a "server" to convert video "independent from receiving a command to perform" does not make them inventive either. *See* '341 patent, claim 1. Automation of a known concept is not inventive because it "rel[ies] on a computer to perform routine tasks **more quickly or more accurately**[.]" *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) (citing *Alice*, 134 S. Ct. at 2359) (emphasis added).

The specification explicitly discloses that the claimed functions are performed by **conventional** computing operations or structures. The computers and servers used to implement the claimed invention are generic, functional equipment. '341 patent at 5:47-52, 5:62-64. Further, the data storage, receiving, and sending functions they perform are basic functions of any computer. *See, e.g.*, *id.* at 6:47-50. The specification thus confirms that the limitations are non-inventive.

> b.    **The claims' generic internet functions are not inventive**

The recited basic internet limitations of receiving and sending are similarly not inventive. *See* '341 patent, claim 1. The specification acknowledges that each of these limitations is generic and, therefore, cannot be sufficient for an inventive concept. First, the patent discloses that videos are "received" using conventional methods of transferring data, such as email or download from a Web Universal Resource Locator, or URL. *See id.* at 7:24-31. Second, the specification discloses two well-known examples of transmitting videos: (1) a video "can be made available to the viewer as a streaming video that is sent to the viewer" (*id.* at 7:25-26); or

(2) "may be made available by sending the viewer a message such as an email that contains an address of a location to visit on the Web (e.g., a Universal Resource Locator, or URL)." *Id.* at 7:26-29. These steps are performed using conventional web browsers (*e.g.*, "Microsoft Internet Explorer or Netscape Navigator"). *Id.* at 5:54-55. Receiving, embedding, and transmitting are generic networking functions that are not inventive. *See, e.g.*, *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."); *Internet Patents*, 790 F.3d at 1348 (known web browser functionality not inventive).

### c.   Converting video from one format to another and determining which one is most compatible is not inventive

The converting limitations also lack an inventive concept. They cover nothing more than converting the video data format from one unspecified format into another using a conventional computer running off-the-shelf software, and determining which one between the original and converted format is most compatible.

Indeed, the claims recite the conversion being performed by a generic "first server system." '341 patent, claim 1. The conversion step is described only in generalities ("converting . . . from the first format to the second format"), adding nothing inventive or limiting. *See id.* Although details from the specification not reflected in the claims cannot supply the inventive concept, *Accenture*, 728 F.3d at 1345, the specification here confirms that VideoShare provided nothing inventive to convert video and instead just used conventional and existing components as intended. Indeed, it describes the file format conversion using existing, standard third-party video conversion tools, such as Microsoft's DirectShow and Windows Media Technologies. '341 patent at 13:25-29. The specification further explains that the conversion used conventional video formats and results. *See, e.g., id.* at 15:12-14 (input videos include QuickTime, MPEG, or

AVI), 17:2-8 (output includes existing streaming video formats, *e.g.* ASF, WMF, MPEG 4).

Courts have found similar limitations not inventive. *See, e.g.*, *Content Extraction*, 776 F.3d at 1348 (converting data by scanning an image using known means not inventive); *Cyberfone*, 558 F. App'x at 993 (same, for converting a single data source into multiple streams).

Determining which one of the original and the converted file is most compatible with computer hardware is also not inventive. The specification is silent on how this compatibility determination is made, merely listing well-known, conventional formats "such as MPEGs and Quick-Time" as "[f]ormats that are compatible with streaming media formats." '341 patent at 16:17-19. Determining whether a data format is compatible for a given use and delivering user-dependent media content are abstract ideas that are not inventive. *See, e.g., Affinity Labs*, 838 F.3d at 1267 (claims directed to "delivering selectable media content and subsequently playing the selected content" not patent eligible); *Customedia*, 951 F.3d at 1366 (claims directed to "abstract idea of delivering targeted advertising" and reciting "only generic computer components, including a programmable receiver unit, a storage device, a remote server and a processor," did not recite an inventive concept).

### d.    **Generating an identifier is not inventive**

The generating limitations cannot provide an inventive concept because they merely recite creating an "identifier" to identify the video—a concept known and used long before the filing of the '341 patent. VideoShare does not claim to have invented identifiers, nor do the claims recite any particular way to create them. *See* '341 patent, claim 1. The claims provide no technical description of the identifier—they merely recite in generic terms "generating an identifier for video content corresponding to the first video file and the second video file." *Id.*

The specification admits that the generating process uses known and conventional software to create an identifier, for example an image in a known image format. *See, e.g., id.* at

17:10-13 (use of generic hardware, firmware, and software to create a JPEG still image, a conventional format in 1999); 19:12-23:15 (same); 15:31-31 ("[c]reating a 'Thumbnail' JPEG snapshot of the video[] as an identifier").  The claims (and the rest of the patent) fail to explain how to create the identifier beyond these references to conventional techniques.  Reciting functional limitations, without describing a particular way the function is performed, but instead relying on known, conventional technologies, does not save the claims.  *See, e.g.*, *Ultramercial*, 772 F.3d at 716 (reciting "conventional steps . . . at a high level of generality" insufficient to provide an inventive concept); *Content Extraction*, 776 F.3d at 1348.

### e.        Sending an advertisement is not inventive

The advertisement sending limitation is purely abstract and captures nothing more than the broad mental concept of associating an advertisement with a video.  The claim language lacks any meaningful limits on how an ad is sent with the video and does not tie this step to any particular device or implementation.  *See* '341 patent, claim 1.  Courts have held that such "associating" limitations do not provide an inventive concept.  *See, e.g.*, *Ultramercial*, 772 F.3d at 712, 714-16 (invalidating claims that included "selecting a sponsor message ***to be associated with*** the media product") (emphasis added).

### f.        The sequence of steps is not inventive

Finally, the ordered combination adds nothing here.  The claims merely recite the typical order of the conventional elements of receiving, converting, and sharing content—they provide nothing inventive.  *See, e.g.*, *Versata*, 793 F.3d at 1334 ("[W]hen considered as an ordered combination, the components of each claim add nothing that is not already present when the steps are considered separately.").  As the *VideoShare I* court held for the related patents, the '341 patent claims "specify only conventional steps at a high level of generality, and the association of an advertisement is not sufficient to provide an inventive concept."  2016 U.S.

Dist. LEXIS 100860, at *28 (citing *Ultramercial*, 772 F.3d at 715).

### C.     The Decision in *VideoShare I* and VideoShare's Expert Testimony Confirm That the Claims of the '341 Patent Are Ineligible

The independent analysis of the '341 patent claims described above establishes the claims are not eligible—that conclusion is reinforced by the Federal Circuit's finding invalid the materially identical claims of the related patents.  The Federal Circuit agreed that the claims of VideoShare's '302 and '608 patents are directed to the abstract idea of "preparing a video in streaming video format for sharing over a computer network."  2016 U.S. Dist. LEXIS 100860, at *13.  Under *Alice* Step One, the claims of the '341 patent are similarly directed to preparing a video in streaming video format for sharing over a computer network and sharing the most compatible between the original and the converted files.

At *Alice* Step Two, as shown in the table in Section I, *supra*, the '341 patent claims are materially identical to those of the '302 patent.  The few differences, outlined below, all involve well-known, conventional elements or steps that do not change the *Alice* analysis.

*"Structured hierarchical" network*.  The '341 patent claims recite a "structured hierarchical" network.  '341 patent, claim 1.  While it does not mention either "structured" or "hierarchical," the '341 patent specification explains that the network envisioned by the claims is a well-known computer network, "such as the Internet."  *Id.* at 5:55-56, 7:40-43, 10:10-13.

*Storing the first video file.*  The '341 patent claims recite storing both the first and second video files, as opposed to storing only the second, as is claimed in the '302 patent.  The '341 patent does not disclose storing the first video file in any way that is different from how the second video file is stored, i.e., using conventional methods.  Storing is a well-known computer activity and not an inventive concept.  *See, e.g.*, *Content Extraction*, 776 F.3d at 1345-49 ("receiving," "recognizing," "processing," and "storing" not inventive).

***Sending the most compatible video file.***  While the '302 patent claims recite sending the converted video file over the network, the '341 patent claims recite sending either the first (un-converted) or the second (converted) video file, "after determining which of the first format or second format is most compatible" with the viewing computer or video sharing network.  '341 patent, claim 1; Dkt. 69 at 2.  But the patent is silent on how this compatibility determination is made, and determining whether a data format is compatible for a given use and delivering user-dependent media content are abstract ideas that are not inventive.  *See, e.g.*, *Affinity Labs*, 838 F.3d at 1267; *Customedia*, 951 F.3d at 1366.

Moreover, under VideoShare's expert's reading of this limitation, the "determining" step is performed even when only the second format is evaluated for compatibility with the viewing device.  Ex. 1[6] (Sarhan Rough Tr.) at 94:24-96:4.  Dr. Sarhan's testimony is unambiguous:

> Q.  So is it your opinion that the claim limitation
> as construed by the Court would be met if only the second
> format is compared with the compatibility of the second
> server system or the second client?
> MR. ELLERMAN:  Objection.  Asked and answered
> calls for a legal conclusion.
> MS. SIMMONS:  So it's your opinion.
> THE WITNESS:  Yeah.  This is my opinion this is
> how I read it.
> Q.  BY MS. SIMMONS:  All right.  And I'm just trying
> to understand it your opinion is that you can meet
> claim limitation of Claim 1 as construed by the Court
> without considering the first format is that right?
> A.  Yeah and I believe so because there is or in
> -- in the court construction.
> Q.  So the determination of which of the two formats
> is most compatible can be achieved without considering
> the first format in your opinion; right?
> MR. ELLERMAN:  Objection.  Asked and answered.
> THE WITNESS:  Yes.  It says which of the first
> format or second format is most compatible I don't read
> this one as comparing I don't see this one necessarily

---

[6] Ex. 1 refers to Exhibit 1 to the declaration of Bill Trac, submitted concurrently herewith.

> meaning comparing the first with the second set.
> Q.  BY MS. SIMMONS:  So I can figure out which is
> most compatible I can figure out which is most compatible
> without even considering what the first format is is that
> your opinion?
> MR. ELLERMAN:  Objection legal conclusion and
> incomplete hypothetical.  You may answer.
> THE WITNESS:  This is my opinion.

Under Dr. Sarhan's reading of this limitation—a reading that is incorrect under a plain reading of

the limitation and under the Court's construction of the limitation—the '341 patent claims do not

even require considering the first format in the determination.  VideoShare's reading, therefore,

eradicates any slight difference between the '341 and '302 patent claims, as under that reading

both would cover sending only the second (converted) video file.  *See* Section I, *supra*.

### D.    The Dependent Claims Are Not Directed to Patent-Eligible Subject Matter and Lack an Inventive Concept for the Same Reasons

Asserted dependent claims 3-7 are directed to the same abstract idea and do not add any

inventive features to ineligible claim 1, instead reciting only limitations relating to the format of

the advertisements: "the ***advertisement*** is a non-static image" (claim 3), "the ***advertisement*** is

selected based on the second client" (claim 4), "the ***advertisement*** is stored" (claim 5), "the

***advertisement*** is sent to the second client concurrent[ly]" (claim 6), "the ***advertisement*** includes

an Internet link" (claim 7) (emphases added).  None of these limitations rescue the claims at

*Alice* Step One.  *See Ultramercial*, 772 F.3d at 715 (adding a "degree of particularity" did not

save the claims, where "the concept embodied by the majority of the limitations describes only

the abstract idea of showing an advertisement before delivering free content").  Neither do these

limitations constitute a claimed improvement in computer functionality, as they use the same

generic computer components in claim 1.

Claims 3-7 similarly fail *Alice* Step Two, because narrower versions of conventional

functions are not sufficient for finding an inventive concept.  *See Content Extraction*, 776 F.3d at

1348-49 ("additional steps, such as extracting and detecting specific data fields, repeating some steps, and storing data as images or text" are insufficient to constitute an inventive concept). Video advertisements (*see* claim 3), known since the advent of motion pictures 100 years ago, are not inventive—nor does the '341 patent claim to have invented them. *See* '341 patent at 1:32-4:51 (Background and Summary of the Invention). Neither does selecting the advertisement based on the viewing user (claim 4) make the claim patentable. *See Customedia*, 951 F.3d at 1366 (claims directed to "abstract idea of delivering targeted advertising" and reciting "only generic computer components" did not recite an inventive concept). Storing or sending the advertisement (claims 5 and 6) are not inventive either. *See Content Extraction*, 766 F.3d at 1345-49 ("receiving," "recognizing," "processing," and "storing" not inventive). Finally, an Internet link is well known and conventional as well. *See Pragmatus Telecomms., LLC v. Genesys Telecomms. Labs., Inc.*, 114 F. Supp. 3d 192, 201 (D. Del. 2015) ("Internet Protocol (IP) address" is a "conventional technological element[]."); *VideoShare I*, 2016 U.S. Dist. LEXIS 100860, at *31 (URL a "conventional feature[]").

VideoShare did not invent any of these claimed steps or their conventional, well-known elements, and none of them add anything of "practical significance to the underlying abstract idea." *See Ultramercial*, 772 F.3d at 716. As claim 1 they depend on, claims 3-7 are unpatentable under § 101.

## V. CONCLUSION

The '341 patent broadly claims the abstract idea of preparing a video in a streaming format for sharing over a computer network and sending the most compatible between the original and the converted videos. The claims fail to include any limitations that provide an inventive concept. The Court should grant summary judgment that asserted claims 1 and 3-7 of the '341 patent are invalid as directed to unpatentable subject matter.

Dated:  August 25, 2021                         /s/ Luann L. Simmons

                                                J. Mark Mann
                                                State Bar No. 12926150
                                                G. Blake Thompson
                                                State Bar No. 24042033
                                                MANN | TINDEL | THOMPSON
                                                300 West Main Street
                                                Henderson, Texas 75652
                                                (903) 657-8540
                                                (903) 657-6003 (fax)

                                                Luann L. Simmons (*Pro Hac Vice*)
                                                lsimmons@omm.com
                                                David S. Almeling (*Pro Hac Vice*)
                                                dalmeling@omm.com
                                                Brad N. Garcia (*Pro Hac Vice*)
                                                bgarcia@omm.com
                                                Bill Trac (*Pro Hac Vice*)
                                                btrac@omm.com
                                                Amy K. Liang (*Pro Hac Vice*)
                                                aliang@omm.com
                                                Sorin G. Zaharia (*Pro Hac Vice*)
                                                szaharia@omm.com
                                                Daniel Silverman (*Pro Hac Vice*)
                                                dsilverman@omm.com
                                                **O'MELVENY & MYERS LLP**
                                                Two Embarcadero Center
                                                28th Floor
                                                San Francisco, CA 94111-3823
                                                Telephone: 415-984-8700
                                                Facsimile: 415-984-8701

                                                ***Attorneys for Defendants Google LLC and
                                                YouTube, LLC***

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on August 25, 2021, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

*/s/ Luann L. Simmons*                
Luann L. Simmons
