# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| VIDEOSHARE, LLC | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION No. 6:19-cv-00663-ADA |
| | § | JURY TRIAL DEMANDED |
| GOOGLE LLC and YOUTUBE, LLC | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' MOTION TO EXCLUDE DAMAGES OPINIONS OF MR. STEPHEN HOLZEN UNDER *DAUBERT* AND FEDERAL RULE OF EVIDENCE 702

**TABLE OF CONTENTS**

Page

I. FACTUAL BACKGROUND ................................................................................................ 1

    A. Summary of Mr. Holzen's Damages Theories ........................................................ 1

    B. Mr. Holzen Improperly Allocates All Incremental Profit to Licensor ................... 2

    C. Mr. Holzen's Improper Opinions Regarding Technical Comparability ................ 3

II. LEGAL STANDARD ........................................................................................................... 4

III. ARGUMENT ....................................................................................................................... 5

    A. Mr. Holzen's Allocation of the Full Profit to Licensor in Calculating Royalty Rates Under the Income Approach Is Improper ...................................... 5

    B. Mr. Holzen's Opinions Regarding Technical Comparability of Patent Licenses and Resulting Royalty Rate Are Improper ............................................. 7

IV. CONCLUSION .................................................................................................................. 10

## TABLE OF AUTHORITIES

Page

**CASES**

*Biscotti Inc. v. Microsoft Corp.*,
No. 2:13-CV-01015-JRG-RSP, 2017 U.S. Dist. LEXIS 93166 (E.D. Tex. May 18, 2017) .................................................................................................................. 6

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993) ................................................................................................... 4, 7

*Ga.-Pac. Corp. v. U.S. Plywood Corp.*,
318 F. Supp. 1116 (S.D.N.Y. 1970), *modified & aff'd*, 446 F.2d 295 (2d Cir. 1971) ............................................................................................................................ 5

*GREE, Inc. v. Supercell Oy*,
No. 2:19-CV-200-JRG, 2021 U.S. Dist. LEXIS 26074 (E.D. Tex. Feb. 11, 2021) ............................................................................................................................ 8

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) ...................................................................................................... 5

*Limelight Networks, Inc. v. Xo Commc'ns, LLC*,
No. 3:15-CV-720-JAG, 2018 U.S. Dist. LEXIS 17802 (E.D. Va. Feb. 2, 2018) ................. 8, 9

*Network-1 Techs., Inc. v. Alcatel-Lucent USA, Inc.*,
No. 6:11-cv-492-RWS, 2017 U.S. Dist. LEXIS 175127 (E.D. Tex. Oct. 23, 2017) ......................................................................................................................... 7, 9

*Uniloc USA Inc. v. Microsoft Corp.*,
632 F.3d 1292 (Fed. Cir. 2011) .................................................................................... 6

*VirnetX, Inc. v. Cisco Sys., Inc.*,
767 F.3d 1308 (Fed. Cir. 2014) ................................................................................ 6, 7

*Wang Labs., Inc. v. Toshiba Corp.*,
993 F.2d 858 (Fed. Cir. 1993) ...................................................................................... 5

*Zegers v. Zegers, Inc.*,
458 F.2d 726 (7th Cir. 1972) ........................................................................................ 5

**RULES**

Fed. R. Evid. 702 ................................................................................................................. 4

Defendants Google LLC and YouTube LLC (collectively, "Defendants") move under *Daubert* to exclude certain opinions of Plaintiff's damages expert, Mr. Stephen Holzen, on two independent grounds. First, Mr. Holzen's royalty rate opinions under the income approach improperly allocate to VideoShare the entire incremental profits from the patented technology and should, therefore, be excluded. *See* Ex. A[1] (Holzen Report) ¶¶ 19–20, 80–91, 175–177, Exs. 1–4. Mr. Holzen's methodology does not allow the licensee to keep any profit from the patented functionality, thereby rendering it economically unreasonable and impermissible. And he provides no fact-based rationale for giving the full incremental profit to the licensor, making his opinion akin to "rule of thumb" approach rejected by the Federal Circuit.

Second, Mr. Holzen's royalty rate opinions under his market approach are improper and should also be excluded. *See* Ex. A ¶¶ 99–105, 121–126, 140–143, Ex. 2. Mr. Holzen rejects patent license agreements produced by Google as purportedly not technically comparable and therefore not relevant in determining a royalty rate. To reach these technical comparability opinions, he relies solely on his review of the licensed patents, while conceding he lacks technical expertise in this case. Because Mr. Holzen is not technically qualified, his market approach royalty rate is infected with unreliable opinions and should be excluded. At a minimum, he should not be allowed to testify on technical comparability of the Google-produced licenses or the reasons he assumed they were not comparable with a hypothetical license.

I.   **FACTUAL BACKGROUND**

   A.   **Summary of Mr. Holzen's Damages Theories**

VideoShare accuses Defendants of infringing U.S. Patent No. 10,362,341 (the "'341

---

[1] Exs. A, B, and C refer to exhibits to the accompanying Declaration of Sorin G. Zaharia ("Zaharia Decl.").

patent") by offering the ad-based YouTube video platform ("YouTube Core Business"). Mr. Holzen submitted an expert report opining on a reasonable royalty as damages for the alleged infringement. Ex. A. Mr. Holzen employs an "income approach" and a "market approach" to calculate royalty rates in a "Reference Range." *Id.* ¶ 143. His income approach calculations are summarized below.



Ex. C (Holzen Dep. Ex. 2); Ex. A ¶¶ 86–87, 90–91; Ex. B (Holzen Dep. Tr.) at 77:23–78:2 (Mr. Holzen confirming in deposition these formulas accurately state his income approach opinions).

Under his market approach, Mr. Holzen chooses the ▇ royalty rate from a license agreement between ▇▇▇▇▇ (Ex. A ¶¶ 99–105) because he excludes Google's license agreements ▇▇▇▇▇ as not technically comparable. *Id.* ¶¶ 121–126.

### B. Mr. Holzen Improperly Allocates All Incremental Profit to Licensor

Mr. Holzen employs two theories to calculate a royalty rate under the Income Approach. Ex. A ¶¶ 82–91. First, under the "Profit Sharing" approach, Mr. Holzen compares his calculated Google gross profit margin from the accused ad-based YouTube Core Business ▇ to Google's gross margin from the non-accused subscription YouTube Premium/Music business

-2-

lines. *Id.* ¶¶ 84–86. Mr. Holzen notes that the difference of ▇ between the two represents ▇ of Google's gross profit margin from YouTube's Core Business. *Id.* ¶ 86. Mr. Holzen opines that "it is reasonable to credit Defendants with ▇ of the accused operating profit and credit ▇ of the accused operating profit to the '341 patent." *Id.* He then attributes the full incremental profit margin of ▇ to licensor VideoShare, by "multiplying Defendants' normalized operating profit margin (▇) by the portion of Defendants' profits credited to the '341 Patent ▇." *Id.* This calculation leads to a royalty rate of ▇ *Id.*; Ex. C.

Second, under the "Pricing Premium" approach, Mr. Holzen compares the Cost-per-Mille (cost per thousand ad impressions, or "CPM") Defendants charge for the accused YouTube Core Business with the CPM for non-accused Google Display advertisements, to "determine the CPM premium attributable to the patent practicing products." Ex. A ¶ 89. The difference of ▇ between the CPM for YouTube ads (▇) and the CPM for Google Display ads (▇) represents an incremental premium of ▇ of the CPM for the accused YouTube ads. *Id.* ¶ 90. Mr. Holzen opines that "since Defendants charge advertisers ▇ more for the right to use the '341 Patent relative to non-accused display advertising, the parties might credit the '341 Patent with ▇ of Defendants' accused normalized operating profits." *Id.* He then attributes the entire incremental premium of ▇ to VideoShare by "multiplying Defendants' normalized accused operating profit margin ▇ by the premium price Defendants' [sic] charge customers for use of the '341 Patent ▇." This calculation leads to a ▇ royalty rate. *Id.*; Ex. C.

C.   **Mr. Holzen's Improper Opinions Regarding Technical Comparability**

Under the Market Approach, Mr. Holzen evaluates "the technical and economic comparability of" VideoShare's and Defendants' license agreements to the hypothetical license. Ex. A ¶ 140. He opines that the only technically comparable agreements are VideoShare's

agreements with ▮▮▮▮.  *Id.*  He chooses the ▮ royalty rate of the ▮▮ agreement as "a relevant data point at the hypothetical negotiation."  *Id.* ¶ 142.

Mr. Holzen excludes from consideration all patent license agreements produced by Google on the grounds that "it is unclear if the technical aspects of the inventions covered by those agreements are comparable to the technology claimed by the '341 Patent."  *Id.* ¶ 141; *see also id.* ¶ 62 (listing agreements).

Two agreements Mr. Holzen excludes as not technically comparable are Google's patent license agreements with ▮▮▮▮.  *Id.* ¶¶ 123, 126.  Mr. Holzen notes that "he reviewed the ▮▮▮▮ and based on that review it is [his] understanding that these patents related to processing signals to remove redundant information related to video compression systems."  *Id.* ¶ 121.  Mr. Holzen also states that he "reviewed the ▮▮▮▮ and based on that review it is [his] understanding that these patents relate to selecting content to be presented to viewers."  *Id.* ¶ 124.  Mr. Holzen does not cite discussions with a technical expert or anyone else in reaching his technical comparability conclusions.  *Id.*  He confirmed in deposition that he made the comparability decisions on the ▮▮▮▮ licenses based solely on his own review of the patents and without discussing them with any technical expert or anyone with technical qualifications.  Ex. B at 142:2–143:6, 148:23–149:11.

## II. LEGAL STANDARD

*Daubert* and Rule 702 of the Federal Rules of Evidence require courts to act as "gatekeepers" to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).  The purpose of the gatekeeping role "is to make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant

field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

### III.     ARGUMENT

####    A.     Mr. Holzen's Allocation of the Full Profit to Licensor in Calculating Royalty Rates Under the Income Approach Is Improper

Courts have long recognized that a "reasonable royalty" involves a reasonable split of the profit from the patented invention between licensor and licensee. "A reasonable royalty is the amount that a person, desiring to manufacture, use, or sell a patented article, as a business proposition, would be willing to pay as a royalty and yet be able to make, use, or sell the patented article, in the market, at a reasonable profit." *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 870 (Fed. Cir. 1993). "It would, of course, be most unlikely that a licensee would be willing to pay 100% of his profits to the patentee in exchange for a license." *Zegers v. Zegers, Inc.*, 458 F.2d 726, 728 n.8 (7th Cir. 1972).

The well-recognized *Georgia-Pacific* case, which Mr. Holzen purports to apply, similarly defines a "reasonable royalty" as "the amount that a prudent licensee . . . would have been willing to pay as a royalty and yet be able to make a reasonable profit." Ex. A, page 50 (citing *Georgia-Pacific* Factor 15); *Ga.-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified & aff'd*, 446 F.2d 295 (2d Cir. 1971). In modifying the *Georgia-Pacific* district court opinion, the appellate court highlighted the need to allow the licensee to retain a reasonable profit. 446 F.2d at 299 ("[A]lthough we affirm the other findings, we feel that despite the trial court's professed intention to do so, it did not allow GP a reasonable profit after paying the suppositious royalty. This is a basic error which should be corrected.").

Mr. Holzen's income approach improperly leaves the licensee Defendants without any profit from the patented functionality. Mr. Holzen does so despite admitting at his deposition that a "reasonable amount of profit" under *Georgia-Pacific* Factor 15 would involve "some

portion going to each entity." Ex. B at 64:17–24.  Under both methodologies of his income approach, Defendants would forfeit all incremental profit assigned to the patented invention, and thus would have no incentive to develop and commercialize their allegedly infringing platform. First, under his "profit sharing" approach—a misnomer in light of his methodology—Mr. Holzen opines that the incremental profit due to the patented functionality is ▮ of Google's gross profit margin from YouTube's Core Business, which he then allocates entirely to VideoShare. Ex. A ¶ 86.  Second, under his "pricing premium" approach, Mr. Holzen opines that the incremental price premium due to the patented functionality represents ▮ of the price Defendants charge for the accused YouTube platform ads, which he allocates entirely to VideoShare.  *Id.* ¶ 90.  Because it does not "allow [the licensee] a reasonable profit" from developing and commercializing the patented invention, Mr. Holzen's approach is improper.

In addition, Mr. Holzen presents *no fact-based rationale* why the licensor here would agree at the hypothetical negotiation to forfeit the entire incremental profit or price premium attributed to the patented functionality.  The Federal Circuit has rejected this type of "rule of thumb" allocating set profit percentages between licensor and licensee.  In *Uniloc USA Inc. v. Microsoft Corp.*, the court held "as a matter of Federal Circuit law that the 25 percent rule of thumb is a fundamentally flawed tool for determining a baseline royalty rate in a hypothetical negotiation . . . because it fails to tie a reasonable royalty base to the facts of the case[.]"  632 F.3d 1292, 1315 (Fed. Cir. 2011).  And in *VirnetX, Inc. v. Cisco Systems, Inc.*, the Federal Circuit also rejected a 50/50 profit split as "akin to the 25% rule of thumb" rejected in *Uniloc*. 767 F.3d 1308, 1331 (Fed. Cir. 2014).  District courts have similarly rejected set percentage allocations divorced from the case facts.  *See Biscotti Inc. v. Microsoft Corp.*, No. 2:13-CV-01015-JRG-RSP, 2017 U.S. Dist. LEXIS 93166, at *14-15 (E.D. Tex. May 18, 2017) (rejecting a

40/60 split between licensor and licensee as "entirely conclusory" and "mirror[i]ng the approach rejected in *VirnetX*").

Going even further than the rejected "rule of thumb" allocations, Mr. Holzen makes a 100/0 split of the incremental profit, and his income approach is equally "insufficiently grounded in the specific facts of the case." *VirnetX*, 767 F.3d at 1331. Much like Mr. Holzen, plaintiff's damages expert in *VirnetX* "began by determining 'incremental or additional profits that are associated with the use of the patented technology.'" *Id*. "Having thus purported to determine those profits, [the expert] then testified about how the parties would split those incremental profits. To do this, he began with the assumption that each party would take 50% of the incremental profits[.]" *Id*. The Federal Circuit rejected that approach, holding it was "akin to the '25 percent rule of thumb'" rejected in *Uniloc*, "as being insufficiently grounded in the specific facts of the case." *Id*. Similarly here, Mr. Holzen assumes that the licensor would take 100% of the incremental profit, but fails to ground that assumption "in the specific facts of the case." *Id*.

Mr. Holzen's approach—by splitting the incremental profit 100/0 in licensor's favor without providing a fact-based rationale for doing so—contravenes *Georgia-Pacific*, *Uniloc*, and *VirnetX*. Mr. Holzen's income approach opinions should thus be excluded.

> **B.    Mr. Holzen's Opinions Regarding Technical Comparability of Patent Licenses and Resulting Royalty Rate Are Improper**

A party offering expert testimony must prove that the expert is qualified. *Daubert*, 509 U.S. at 590-91. In particular, "an expert on damages with no technical background . . . *must rely on the technical experts* in the case when determining whether patents are comparable." *Network-1 Techs., Inc. v. Alcatel-Lucent USA*, Inc., No. 6:11-cv-492-RWS, 2017 U.S. Dist. LEXIS 175127, at *18 n.4 (E.D. Tex. Oct. 23, 2017) (emphasis added).

In *Limelight Networks, Inc. v. Xo Communications, LLC*, the court excluded royalty opinions of a damages expert who had no technical expertise yet relied on conversations with a non-expert engineer for his technical comparability conclusions. No. 3:15-CV-720-JAG, 2018 U.S. Dist. LEXIS 17802, at *26 (E.D. Va. Feb. 2, 2018). Noting the expert's admitted lack of technical expertise, the court held that it "cannot allow [damages expert] to provide the jury with unsupported technological testimony about which [damages expert] lacks any knowledge and provides no detail." *Id.* at *26-27. On the other hand, in *GREE, Inc. v. Supercell Oy*, the court allowed a damages expert to rely on a technical expert for technical comparability opinions. No. 2:19-CV-200-JRG, 2021 U.S. Dist. LEXIS 26074, at *24 (E.D. Tex. Feb. 11, 2021). The court reasoned that "because [the damages expert] is not a technical expert, . . . it was proper as well as logical that he would rely on [] a technical expert, who concluded that the patents are technically comparable." *Id.*

Mr. Holzen is unqualified to offer opinions on technical comparability. Mr. Holzen admitted at his deposition that he is not a technical expert, does not hold himself out as one, and does not offer any technical opinions in this case. Ex. B at 21:20–25, 22:7–12, 23:5–12. He further conceded that "technical comparability needs to be assessed by a technical expert" and that it "is outside the scope of [his] services." *Id.* at 72:7–8, 124:5–11. Mr. Holzen further confirmed he does not offer an opinion on technical comparability:

> Q. And you are not qualified to opine on whether the licenses are technically comparable in this case; correct?
> A. ***I am not offering an opinion in that regard***.

*Id.* at 124:16-20 (emphasis added).

Mr. Holzen's market approach royalty opinions, based on excluding Google-produced licenses as purportedly not technically comparable, should be stricken. They have no support in

-8-

view of Mr. Holzen's admission that he is not offering a technical comparability opinion.

And because Mr. Holzen is not a technical expert, he cannot offer his own technical comparability opinions. "As an expert on damages with no technical background, [Holzen] is of course, not a POSITA and must rely on the technical experts in the case when determining whether patents are comparable." *Network-1*, 2017 U.S. Dist. LEXIS 175127, at *18 n.4. Mr. Holzen did not do so. In choosing his market approach ▇ royalty rate, he excludes several license agreements produced by Google, by stating that based on his own review of the licensed patents "it is unclear if the technical aspects of the inventions covered by those agreements are comparable to the technology claimed by the '341 Patent." Ex. A ¶ 141.

In his report, Mr. Holzen does not state that he discussed with Dr. Sarhan—VideoShare's technical expert—the technical comparability of the Google-licensed patents, much less relied on such a discussion in formulating his opinions. *Id.* ¶¶ 121, 124. And at his deposition, he admitted his comparability opinions are based on his own review of the patents and he did not discuss the Google-produced ▇▇▇ licenses with Dr. Sarhan before he submitted his expert report. Ex. B at 41:18–42:3, 142:2–143:6, 148:23–149:11.

As a non-technical expert, Mr. Holzen was required to "rely on the technical experts in the case when determining whether patents are comparable." *Network-1*, 2017 U.S. Dist. LEXIS 175127, at *18 n.4. Even worse than the expert in *Limelight*, Mr. Holzen did not even discuss the licenses at issue with anyone else in formulating his opinions. Mr. Holzen "provides the Court with nothing more than the *ipse dixit* of a non-expert to support his damages analysis." *Limelight*, 2018 U.S. Dist. LEXIS 17802, at *26. "The jury would have no way to evaluate the comparability analysis, and the Court cannot allow [Holzen] to provide the jury with unsupported technological testimony about which [Holzen] lacks any knowledge[.]" *Id.* at *26-

27.

Mr. Holzen's result-driven methodology further highlights its unreliable and prejudicial nature. Mr. Holzen relies on VideoShare's technical expert Dr. Sarhan to *include* the licenses that VideoShare claims are technically comparable (Ex. B at 188:14–18), yet he *excludes* licenses produced by Google based only on his non-expert say-so without even discussing them with Dr. Sarhan. *Id.* at 142:2–143:6, 148:23–149:11.

Because he arrived at it by excluding the Google licenses as not comparable, Mr. Holzen's market approach royalty rate is unreliable and should be excluded. At a minimum, and consistent with his deposition, he should not be permitted to testify at trial on the technical comparability of Google's agreements with ▮▮▮▮▮ or the reasons why he assumed they are not comparable.

## IV.   CONCLUSION

Mr. Holzen's damages opinions are based on a flawed and unreliable methodology. First, his income approach royalty rate opinions should be excluded because he improperly allocates all incremental profit from the patented technology to licensor VideoShare. Second, Mr. Holzen excludes two licenses as not technically comparable, despite lacking technical expertise and not discussing the licenses with any technical expert. Mr. Holzen's market approach royalty rate should be excluded. At a minimum, he should not be permitted to testify at trial regarding the technical comparability of the ▮▮▮▮▮ licenses. Specifically, the following portions of Mr. Holzen's expert report should be stricken and he should be precluded from expressing any opinions based thereon: ¶¶ 19–20, 80–91, 99–105, 121–126, 140–143, 175–177, Exs. 1–4.

| | |
|---|---|
| Dated: August 25, 2021 | */s/ J. Mark Mann* |
| | |
| | J. Mark Mann |
| | State Bar No. 12926150 |
| | mark@themannfirm.com |
| | G. Blake Thompson |
| | State Bar No. 24042033 |
| | blake@themannfirm.com |
| | MANN | TINDEL | THOMPSON |
| | 201 E. Howard St. |
| | Henderson, Texas 75654 |
| | (903) 657-8540 |
| | (903) 657-6003 (fax) |
| | |
| | Luann L. Simmons (*Pro Hac Vice*) |
| | lsimmons@omm.com |
| | David S. Almeling (*Pro Hac Vice*) |
| | dalmeling@omm.com |
| | Bradley N. Garcia (*Pro Hac Vice*) |
| | bgarcia@omm.com |
| | Bill Trac (*Pro Hac Vice*) |
| | btrac@omm.com |
| | Amy K. Liang (*Pro Hac Vice*) |
| | aliang@omm.com |
| | Sorin G. Zaharia (*Pro Hac Vice*) |
| | szaharia@omm.com |
| | Daniel Silverman (*Pro Hac Vice*) |
| | dsilverman@omm.com |
| | **O'MELVENY & MYERS LLP** |
| | Two Embarcadero Center |
| | 28th Floor |
| | San Francisco, CA 94111-3823 |
| | Telephone: 415-984-8700 |
| | Facsimile: 415-984-8701 |
| | |
| | ***Attorneys for Defendants Google LLC and YouTube, LLC*** |

**CERTIFICATE OF CONFERENCE**

On August 23, 2021, pursuant to Local Rule CV-7, counsel Bill Trac for Defendants met and conferred with counsel William Ellerman and Halima Shukri Ndai for Plaintiff, and counsel for Plaintiff indicated on August 23, 2021, that Plaintiff is opposed to the relief sought by this Motion.

Dated:  August 25, 2021　　　　　　　　　　　/s/ *J. Mark Mann*
　　　　　　　　　　　　　　　　　　　　　　　　**J. Mark Mann**

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on August 25, 2021, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

　　　　　　　　　　　　　　　　　　　　　　　　*/s/ J. Mark Mann*
　　　　　　　　　　　　　　　　　　　　　　　　**J. Mark Mann**