```
12:41:53   1              IN THE UNITED STATES DISTRICT COURT

           2              FOR THE WESTERN DISTRICT OF TEXAS

           3                       WACO DIVISION

           4  VIDEOSHARE, LLC,              )(

           5       PLAINTIFF,               )(    CIVIL ACTION NO.

           6                                )(    6:19-CV-663-ADA

           7  VS.                           )(    WACO, TEXAS

           8                                )(

           9  GOOGLE LLC and YOUTUBE, LLC, )(    JULY 23, 2021

          10       DEFENDANT.               )(    1:31 P.M.

          11                       MOTION HEARING

          12        BEFORE THE HONORABLE JUDGE ALAN D ALBRIGHT

          13              UNITED STATES DISTRICT JUDGE

          14

          15  FOR THE PLAINTIFF: Mr. William D. Ellerman
                                 Shore Chan LLP
          16                     901 Main Street
                                 Suite 3300
          17                     Dallas, TX 75202

          18                     Mr. Charles L. Ainsworth
                                 Mr. R. Christopher Bunt
          19                     Parker, Bunt & Ainsworth, P.C.
                                 100 East Ferguson
          20                     Suite 418
                                 Tyler, TX 75702
          21
              COURT REPORTER:    Ms. Shelly Holmes, CSR, TCRR
          22                     Certified Shorthand Reporter
                                 2593 Myrtle Road
          23                     Diana, TX 75640
                                 (903) 720-6009
          24                     shellyholmes@hotmail.com

          25  (Proceedings recorded by mechanical stenography, transcript
              produced on a CAT system.)
```

```
 1   FOR THE DEFENDANT: Ms. Luann L. Simmons
                        Mr. Bill Trac
 2                      O'Melveny & Myers LLP
                        Two Embarcadero Center
 3                      28th Floor
                        San Francisco, CA 94111-3823
 4
                        Mr. J. Mark Mann
 5                      Mann Tindel Thompson
                        201 E. Howard Street
 6                      Henderson, TX 75654

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

01:32:39  1          THE COURT:  Good afternoon, everyone.

01:32:42  2          MR. MANN:  Good afternoon, Your Honor.

01:32:47  3          MS. AINSWORTH:  Good afternoon, Your Honor.

01:32:48  4          THE COURT:  Suzanne, if you'd be so kind as to

01:32:50  5  call the case, please.

01:32:51  6          COURTROOM DEPUTY:  Sure.

01:32:53  7          Motion hearing in Civil Action in W:19-CV-663

01:32:57  8  styled VideoShare, LLC, versus Google LLC and YouTube, LLC.

01:33:02  9          THE COURT:  If I could have announcements from

01:33:04  10 Plaintiff and then Defendant, please.

01:33:05  11         MS. AINSWORTH:  Yes, Your Honor.  This is Charley

01:33:08  12 Ainsworth, along with Will Ellerman, Chris Bunt, and our

01:33:11  13 client, Gad Liwerant.  And Mr. Ellerman will be the main

01:33:17  14 speaker today.  And we're -- we're ready to proceed, Your

01:33:20  15 Honor.

01:33:20  16         THE COURT:  Mr. Ainsworth, you've become a

01:33:20  17 frequent flyer of this court.

01:33:20  18         MR. AINSWORTH:  That's right.

01:33:25  19         THE COURT:  Always a pleasure to have you.

01:33:25  20         MS. AINSWORTH:  Did you get through all your

01:33:28  21 hearings yesterday?

01:33:28  22         THE COURT:  I only had five, so -- and then this

01:33:30  23 is -- don't tell anyone, because this is my last one today.

01:33:33  24 I don't want the rumor to get out that I'm not doing

01:33:36  25 enough.  So -- but it's a good way to end it with such

01:33:40  1  great lawyers, so...

01:33:40  2            Mr. Mann?

01:33:42  3            MR. MANN:  Good afternoon, Your Honor.  Mark Mann

01:33:43  4  on behalf of Google, and my colleague is with me today,

01:33:46  5  Luann Simmons, and she'll be doing probably all of our

01:33:49  6  speaking, or at least most of it, from O'Melveny Myers, and

01:33:58  7  then Bill Trac.  And then we have from Google, from general

01:34:03  8  counsel's office, Demarron Berkley, and he's here to listen

01:34:06  9  in.  And we're ready to proceed, Your Honor.

01:34:08  10           THE COURT:  Well, I hope I passed the audition.

01:34:12  11 So if you will give me just one second here to get caught

01:34:15  12 up.

01:34:16  13           Okay.  I'm ready to proceed.

01:34:24  14           Counsel, you may -- Mr. Mann, I've already lost my

01:34:31  15 place on who you said was going to be chatting, but I'm

01:34:35  16 happy to hear from them.

01:34:37  17           MR. MANN:  Luann Simmons, Your Honor.

01:34:39  18           THE COURT:  Ms. Simmons?  Very good.

01:34:42  19           MS. SIMMONS:  Good afternoon, Your Honor.  May I

01:34:43  20 proceed?

01:34:43  21           THE COURT:  Good afternoon.  Yes, please.

01:34:44  22           MS. SIMMONS:  Thank you, Your Honor.

01:34:44  23           I'll try to get right to the heart of the matter.

01:34:44  24           As Your Honor identified in the email setting the

01:34:47  25 hearing, that what Your Honor is most interested in hearing

01:34:50  1  about is the Eli Lilly case.  So I'm going to -- I'm going

01:34:52  2  to try to get to that pretty quickly.

01:34:54  3          But I did want to just frame the issue a bit.  You

01:34:57  4  know, Google's motion is actually quite simple, or at least

01:35:03  5  it's narrowly focused.

01:35:04  6          What Google is asking the Court to do simply is

01:35:07  7  hold VideoShare to what it told the Patent Office and the

01:35:10  8  public in its terminal disclaimer.

01:35:12  9          VideoShare chose to file a disclaimer that tied

01:35:16  10  the termination date of the '341 patent, the sole patent

01:35:21  11  asserted in this case, to the termination date of the '302

01:35:25  12  and '608 patents.  And it is our view that the Federal

01:35:29  13  Circuit has told us in the Eli Lilly case and other cases

01:35:32  14  that as a matter of law, the result of that choice is that

01:35:35  15  the '341 patent terminated on August 16, 2017, the

01:35:41  16  termination date of those two patents.

01:35:42  17          And the -- VideoShare -- what VideoShare is trying

01:35:50  18  to do now is to go back and -- and try to extend the '341

01:35:53  19  patent beyond what it told the Patent Office and the public

01:35:55  20  its termination date was, and as a matter of law, it should

01:35:58  21  not be permitted to do that.

01:36:01  22          And so as I promised I would do, let's go right to

01:36:04  23  Eli Lilly, because that really is the key, I think, case

01:36:08  24  related to the issues here.

01:36:09  25          What Eli Lilly told us -- now -- now this is all

01:36:12  1   in Footnote 5, and we agree this is in a footnote, but this

01:36:17  2   footnote is actually not dicta.  And what the Federal

01:36:20  3   Circuit said in Footnote 5 was critical to its opinion,

01:36:23  4   because essentially Footnote 5 is where the Federal Circuit

01:36:26  5   says this is -- this is something that Eli Lilly could not

01:36:31  6   have done in the -- in these circumstances to avoid double

01:36:35  7   patenting.  So this is why we have to now analyze double

01:36:38  8   patenting -- the double patenting issue.

01:36:40  9          And so it actually is critical to the Federal

01:36:43  10  Circuit's opinion.  And you can see that in Judge Newman's

01:36:48  11  dissent.  Judge Newman also refers to it as a holding of

01:36:48  12  the Court.

01:36:49  13         So with that aside, what did the Federal Circuit

01:36:51  14  tell us in Footnote 5?

01:36:54  15         The Federal Circuit said two really pretty

01:36:56  16  important things about terminal disclaimers that are

01:36:59  17  relevant to VideoShare's terminal disclaimer.

01:37:04  18         First, the Federal Circuit explained to us what a

01:37:08  19  terminal disclaimer does and what it can do and what it

01:37:12  20  can't do importantly.  The Federal Circuit said that a

01:37:16  21  terminal disclaimer sets the second patent, so the newer

01:37:21  22  patent's termination date to be the same as the existing

01:37:26  23  actual termination date of the first patent, the earlier

01:37:30  24  patent, at the time that the disclaimer is filed.

01:37:33  25         And it says that this is true even if that earlier

01:37:38  1  patent has a termination date now, you know, at the time
01:37:42  2  the disclaimer is being filed, that is different than what
01:37:46  3  it would have been had the normal 20-year, you know, term
01:37:50  4  apply.
01:37:50  5          The Federal Circuit was -- was clear about this.
01:37:55  6  The patent owner can't now at this -- at this point in time
01:37:58  7  when it's filing its disclaimer set the second patent to
01:38:03  8  expire on the date that the first patent would have expired
01:38:06  9  under the normal 20-year term if something has happened to
01:38:10  10  change that date for the first patent.  You can't go back
01:38:13  11  and reclaim that.
01:38:14  12          And the second thing that the Federal Circuit told
01:38:16  13  us in Eli Lilly is it told us a bit about what it means.
01:38:21  14  What is termination date of the first patent?  What is
01:38:25  15  that?
01:38:25  16          And the Federal Circuit explained -- and this --
01:38:28  17  this makes sense given all of the other precedent from the
01:38:32  18  Federal Circuit and -- that a termination date of the
01:38:34  19  patent is the date on which the patent owner can no longer
01:38:40  20  exclude others from practicing the claimed invention.
01:38:43  21          So that's -- that's when the right to exclude is
01:38:45  22  terminated.  And that can happen in all sort of ways.  It
01:38:50  23  can happen through the normal expiration of the default 20
01:38:53  24  years.  It can happen through disclaimer, as it did in Eli
01:38:57  25  Lilly.  It can happen -- it can be extended, actually,

01:39:01  1   beyond the 20 years based on some adjustment that happened
01:39:04  2   during prosecution.  Or it can be truncated as a result of
01:39:08  3   a finding of invalidity, which is what happened in the
01:39:11  4   present case.
01:39:11  5        But the Federal Circuit in this footnote makes it
01:39:16  6   clear that it doesn't matter how that first patent ended up
01:39:19  7   with a termination date that might be different than the
01:39:23  8   default 20-year date would have been.  That is the date,
01:39:28  9   and that is the only date to which the patentee could now
01:39:31  10  tie the termination of the second patent through a terminal
01:39:36  11  disclaimer.
01:39:37  12       And so this -- this binding Federal Circuit
01:39:40  13  authority, in our view, means that VideoShare's terminal
01:39:45  14  disclaimer, as I said, set the termination date for the
01:39:50  15  '341 patent to be the date that the '302 and '608 patents
01:39:55  16  terminated.
01:39:56  17       And it's our view that the Federal Circuit's
01:39:58  18  authority makes it clear that even if VideoShare meant to
01:40:01  19  or wanted to, it could not have, as a matter of law, set
01:40:06  20  the '341 patent to terminate on the date that those two
01:40:11  21  earlier patents would have terminated under the -- the
01:40:15  22  default 20-year term.  It -- they cannot reclaim that
01:40:21  23  period of time through a terminal disclaimer.
01:40:24  24       The -- therefore, the termination date for the
01:40:30  25  '341 patent was August 16, 2017.  And that means that the

01:40:34  1   legal result of VideoShare's express terminal disclaimer

01:40:40  2   was to disclaim the full term of the '341 patent, which you

01:40:45  3   can do.  The statute regarding disclaimers makes it clear

01:40:48  4   that the full term can be disclaimed, and that is, in fact,

01:40:52  5   what VideoShare did, or at least that's the legal

01:40:54  6   consequence of what VideoShare said in its terminal

01:40:57  7   disclaimer.

01:40:58  8           And, you know, it is our view that not only do the

01:41:04  9   cases that we cite support that result or -- or show that

01:41:09  10  that's the legal consequence of their action, even the

01:41:12  11  cases that VideoShare cites, in our view, support that

01:41:20  12  result, because those cases all stand for the proposition

01:41:23  13  and all say what a terminal disclaimer does is it fixes, as

01:41:27  14  the Federal Circuit said in Ortho Pharmaceuticals, one of

01:41:31  15  the cases that VideoShare cited, it fixes, quote, an

01:41:34  16  earlier date certain upon which the second patent will

01:41:37  17  expire or terminate.

01:41:39  18          And we agree, that's exactly what VideoShare did.

01:41:43  19          Now, is that -- VideoShare argues that that leads

01:41:49  20  to an absurd result.  I don't agree that it's an absurd

01:41:53  21  result.  It was maybe a surprising choice that VideoShare

01:41:56  22  made to do this.  It had other options.  VideoShare could

01:41:59  23  have responded during prosecution of the '341 patent to the

01:42:04  24  double patenting rejection in -- in numerous other ways.

01:42:09  25          It could have disputed the examiner's holding or

01:42:14  1  determination -- we didn't lose the judge, right?  Okay.

01:42:20  2  Just making sure.  Okay.  Sorry, I panicked.  Sorry, I

01:42:22  3  thought my video maybe went down.

01:42:25  4          VideoShare could have disputed the examiner's

01:42:27  5  finding that the claims were not patentably distinct.  It

01:42:31  6  could have disputed that finding with respect to the two

01:42:37  7  expired patent -- or two invalidated patents, the '302 and

01:42:42  8  '608, and then terminally disclaimed as to the other

01:42:45  9  patents that hadn't been invalidated.  There are -- there

01:42:47  10  are other options that VideoShare had during the

01:42:49  11  prosecution.

01:42:52  12          That it chose to file a terminal disclaimer trying

01:42:55  13  to tie a -- or tying a -- an expiration date or termination

01:43:03  14  date back to two already terminated patents is -- is likely

01:43:06  15  something that the Patent Office, had it known that those

01:43:08  16  two patents had already been terminated, the Patent Office

01:43:12  17  probably shouldn't have allowed that to happen.

01:43:14  18          We think that that's evidence that the Patent

01:43:16  19  Office, in fact, didn't know that those two patents had

01:43:19  20  already terminated.

01:43:20  21          But in any event, that is now the situation that

01:43:23  22  we -- we face, and, you know, Courts are clear that

01:43:32  23  District Courts have to address errors that were made in

01:43:35  24  the issuance of patents all the time.  And so at best, this

01:43:39  25  was an error that the Patent Office made and shouldn't have

01:43:41  1  issued this patent.

01:43:42  2          But, again, the fact remains VideoShare was very

01:43:46  3  clear that in its terminal disclaimer, it tied the

01:43:50  4  termination of the '341 patent to the termination of the

01:43:56  5  '302 and '608 patents, and we think that as a matter of

01:43:59  6  law, it is clear that the results of that is that the '341

01:44:04  7  patent has no term during which VideoShare can enforce the

01:44:07  8  right to exclude, and, therefore, VideoShare's claims

01:44:10  9  should be dismissed.

01:44:11  10         And with that, I think I'll pause and find out if

01:44:15  11  maybe Your Honor has some questions that I might be able to

01:44:17  12  address.

01:44:17  13         THE COURT:  I don't.  I feel like I must have made

01:44:22  14  some progress in my reputation that you didn't have a

01:44:28  15  25-page PowerPoint to explain to me what a terminal

01:44:31  16  disclaimer was when you started, like would have happened

01:44:32  17  two and a half years ago.

01:44:34  18         So, no, I thought that was very efficient.  I

01:44:36  19  thought it was very informative.

01:44:39  20         So -- and a rebuttal?

01:44:41  21         MS. SIMMONS:  Thank you, Your Honor.

01:44:44  22         MR. ELLERMAN:  Yes.  Thank you, Your Honor.

01:44:45  23         I do have some slides I'd like to share with the

01:44:50  24  Court if I can have permission to share my screen.

01:45:12  25         All right.  Your Honor, I want to discuss a few

01:45:14  1   subjects with the Court today.  First of all, in light of

01:45:21  2   the Court's comment just now about terminal disclaimers, I

01:45:25  3   don't feel the need I need -- that I need to go into those

01:45:27  4   things.  So I'm going to short-circuit this a little bit.

01:45:32  5          But I do want to specifically look at VideoShare's

01:45:34  6   terminal disclaimer, and then I will show the Court that

01:45:36  7   the language of that disclaimer is clear and unambiguous,

01:45:40  8   clearly shows on its face what VideoShare intended.

01:45:43  9          I'm going to --

01:45:45  10         THE COURT:  I will welcome that.  I think -- I

01:45:46  11  think that would be very relevant.  That would be very

01:45:50  12  helpful.

01:45:50  13         MR. ELLERMAN:  Yes.  And then, Your Honor, we're

01:45:53  14  going to look specifically at the Eli Lilly opinion, not

01:45:55  15  only Footnote 5, but some background information about the

01:45:58  16  case digging into the party's briefs, in particular, to

01:46:03  17  show why we believe that footnote appeared out of nowhere

01:46:08  18  into that case and what the Court meant by it.

01:46:10  19         As you heard a moment ago, opposing counsel stated

01:46:16  20  that the Footnote 5 in Eli Lilly is not dicta.  We're going

01:46:19  21  to show the Court that it is 100 percent absolutely dicta,

01:46:25  22  but that even if it's not, even if it is controlling,

01:46:29  23  VideoShare's terminal disclaimer is consistent with that

01:46:32  24  dicta.

01:46:33  25         And, finally, I think it's important for the Court

01:46:36  1  to recognize some of the absurd consequences that may

01:46:40  2  result if Google wins this motion.

01:46:48  3       Now, I do want to talk briefly about the concept

01:46:52  4  of double patenting as pertains to this case, because as

01:46:57  5  the Court will recall, Google filed a prior motion to

01:47:00  6  dismiss, and in that prior motion, it contended that this

01:47:03  7  case was barred by res judicata because VideoShare was

01:47:07  8  asserting a patent that was patentable -- patently

01:47:12  9  indistinct from a prior patent that had been invalidated in

01:47:15  10  Delaware.

01:47:16  11      And what I'm showing here, Your Honor, is there

01:47:18  12  wasn't a double patenting here.  The Court's already

01:47:21  13  addressed that issue in -- in its opinion in the prior

01:47:24  14  motion to dismiss.  As we explained to the Court then, the

01:47:30  15  claims of the '341 patent are significantly distinct from

01:47:32  16  those of the earlier patent.

01:47:34  17      VideoShare was not trying to extend its patent

01:47:38  18  monopoly here.  It was simply doing what a lot of

01:47:42  19  applicants do when -- when their patents get invalidated.

01:47:46  20  It went back, and it filed a continuation.  It got a new,

01:47:49  21  different, better patent that didn't have the perceived

01:47:53  22  deficiencies of the older one.

01:47:55  23      When interpreting a terminal disclaimer, it's

01:48:00  24  important to recognize that a patent that's modified by one

01:48:03  25  is still independently presumed valid.  It's a different

01:48:08  1  patent, as the Court held in its prior -- its prior opinion

01:48:13  2  on the earlier motion to dismiss.  Invalidity doctrines

01:48:18  3  will apply separately to two -- two -- the two separate

01:48:23  4  patents.  If there are any ambiguities in a terminal

01:48:28  5  disclaimer, and we'll see that there aren't any here, those

01:48:31  6  should always be construed in favor of validity, and a

01:48:35  7  Court should consider the purpose of all statements made to

01:48:36  8  the Patent Office.

01:48:37  9       So let's look at the terminal disclaimer at issue

01:48:39 10  in this case.  And here, we've -- I've split it into two

01:48:44 11  slides because there are two different sections to it.

01:48:46 12       This first one is the most important one, and

01:48:50 13  it's -- it's the section of the disclaimer that we -- we

01:48:52 14  believe applies here.

01:48:55 15       What VideoShare disclaimed here is any term of the

01:49:02 16  '341 patent that would extend beyond the full statutory

01:49:05 17  term of the prior patents on this list, period.  I don't

01:49:10 18  think there can be any question about what full statutory

01:49:14 19  term means here.  Anybody reviewing this document would

01:49:18 20  understand that it means the full 20-year terms of the

01:49:22 21  prior patents under Section 154.

01:49:24 22       Now, Google completely ignores this primary part

01:49:30 23  of the terminal disclaimer.  What it focuses on is this

01:49:34 24  second part, which all it does is clarify VideoShare's

01:49:40 25  intent that if any of the earlier patents listed there, if

01:49:46  1   any of those terms were cut short, like for a finding of

01:49:50  2   invalidity, failure to pay maintenance fees, or if they're

01:49:53  3   terminated prior to the statutory expiration, then that

01:49:57  4   would not operate to shorten the life of the '341 patent.

01:50:02  5          Google zeros in here on the word "later" used

01:50:06  6   before this bulleted list.  That's what its entire argument

01:50:11  7   hinges on.  But because these examples are couched in terms

01:50:15  8   of things that may happen later to the prior patents, they

01:50:19  9   don't apply because the prior patents had already been

01:50:21  10  invalidated earlier.

01:50:22  11         But we don't think that's the part of the

01:50:24  12  disclaimer that's necessarily applicable here.  The first

01:50:27  13  part that I showed you a moment ago is what applies, and it

01:50:30  14  says that the -- the '341 patent shall extend to the

01:50:34  15  full -- the full length of the statutory term of any -- of

01:50:40  16  the prior patents.

01:50:40  17         THE COURT:  Could you go back to that slide,

01:50:42  18  please, the one right before?

01:50:44  19         MR. ELLERMAN:  Yes, Your Honor.

01:50:45  20         THE COURT:  One more.  Okay.  And which slide

01:50:49  21  number is that?

01:50:50  22         MR. ELLERMAN:  Slide 6, Your Honor.

01:50:51  23         THE COURT:  Okay.  Thank you.

01:50:52  24         And I'm sorry I interrupted you.  You're welcome

01:50:55  25  to move on.  I just -- I'm going to make sure I hear from

01:50:59  1  Ms. Simmons about the argument that you made on that slide.

01:51:01  2  MR. ELLERMAN:  And, Your Honor, I do want to point

01:51:03  3  out that the language VideoShare used in its terminal

01:51:06  4  disclaimer is not something that it came up with on its

01:51:09  5  own.  It's not something that VideoShare drafted or

01:51:12  6  created.

01:51:13  7  As shown here, the language used in the terminal

01:51:18  8  disclaimer is verbatim the language used in the patents --

01:51:25  9  the Patent Office's published form for a terminal

01:51:28  10  disclaimer.  There's literal nothing different at all about

01:51:31  11  it.  And this is the form that virtually every patentee

01:51:35  12  that use -- every patentee uses to avoid the hassle of

01:51:38  13  dealing with a rejection for double patenting.

01:51:41  14  So we think it's clear on the face of the

01:51:46  15  disclaimer that -- what -- what VideoShare intended here.

01:51:50  16  Google's whole argument is based on those later

01:51:54  17  exceptions that I showed you.  It disregards the language

01:51:56  18  of the overall disclaimer itself, that VideoShare

01:52:01  19  intended -- that the term of the patent would extend to the

01:52:04  20  full statutory term of any of those listed prior patents.

01:52:08  21  And Google's motion also assumes that the Patent

01:52:11  22  Office would for some reason choose to grant a patent, even

01:52:15  23  though it would have no term whatsoever and basically would

01:52:18  24  be stillborn at the time it issues.  That makes no sense.

01:52:22  25  And it's apparent on the face of the disclaimer

01:52:25   1   what VideoShare intended to do here.  In light of the PTO's

01:52:30   2   issuance of the patent, it's apparent that the PTO

01:52:33   3   understood that intent, as well.

01:52:35   4         The listed exceptions that Google relies on in

01:52:38   5   that second slide I showed you just clarifies what

01:52:42   6   VideoShare meant.  It meant to tie the '341 patent's

01:52:46   7   expiration to the full statutory terms of any of those

01:52:49   8   prior patents and not to any shortened terms.

01:52:51   9         Your Honor, this statement right here from

01:52:56  10   Google's motion to dismiss says it all.  There's no

01:53:03  11   authority that they've been able to find that would justify

01:53:05  12   dismissal of this case.

01:53:06  13         So let's talk about what they do have.  Eli

01:53:10  14   Lilly -- Eli Lilly.  That case doesn't apply here at all.

01:53:18  15   Eli Lilly was a case of pure double patenting.

01:53:23  16         In that case, Lilly was trying to extend its

01:53:27  17   patent monopoly on the drug, Prozac.  And the facts are

01:53:32  18   very complex in that litigation, but the basic gist was

01:53:39  19   Lilly obtained patents on use of the drug in humans, and

01:53:43  20   then when time was running out on those patents, it tried

01:53:46  21   to get a broader patent on the drug's use in animals.  But,

01:53:50  22   you know, of course, humans are animals, too.  So that was

01:53:54  23   a clear case of double patenting.

01:53:56  24         So the only issue that the Federal Circuit was

01:53:59  25   presented with was whether that later patent could survive

01:54:03  1  the test for double patenting.

01:54:06  2          The Court specifically stated in its analysis that

01:54:10  3  on appeal, we limit our inquiry to an analysis of whether

01:54:14  4  the later patent is invalid for double patenting over the

01:54:18  5  earlier patent.

01:54:24  6          There was no terminal disclaimer at issue at all

01:54:26  7  in that case.  Eli Lilly never filed a terminal disclaimer.

01:54:30  8  It never argued that it could file a terminal disclaimer.

01:54:34  9  It obviously did not want to file a terminal disclaimer

01:54:38  10  because that would ruin its plan to extend its monopoly.

01:54:41  11          So the Court never had to address the effect of a

01:54:44  12  terminal disclaimer, and its holding was strictly that

01:54:50  13  Lilly's later patent was invalid for double patenting.

01:54:53  14          Now, let's look at Footnote 5.  And what I -- the

01:54:59  15  factual background that I just described to you is what

01:55:02  16  makes Footnote 5's appearance in this opinion so bizarre.

01:55:09  17          The footnote really came out of nowhere and was

01:55:13  18  placed at the end of a string cite on the general law of

01:55:16  19  double patenting, and it addresses a hypothetical scenario

01:55:19  20  that the Court was never presented with because Lilly never

01:55:25  21  terminally disclaimed anything -- never terminally

01:55:28  22  disclaimed the later patent.

01:55:29  23          What Lilly did was the exact opposite of that.  It

01:55:33  24  tried to avoid double patenting by disclaiming the earlier

01:55:37  25  patent.  So the only statement in this footnote that has

01:55:40  1  any real significance at all is where it says, a patent

01:55:45  2  owner cannot avoid double patenting by disclaiming the

01:55:48  3  earlier patent.

01:55:49  4        That's pretty obvious.  That would have still

01:55:54  5  allowed Lilly -- Lilly's later patent to have a life that

01:55:57  6  extended beyond the term of the earlier patent.

01:55:59  7        Now, to try to make sense of -- of why this

01:56:07  8  footnote appeared and why the Court wrote it, we took a

01:56:10  9  look at all the briefing from the Eli Lilly case, from the

01:56:13  10  Federal Circuit all the way through the Cert petition, and

01:56:17  11  one thing that we saw is that the Defendant in that case

01:56:20  12  repeatedly condoned and almost to the point, Your Honor, of

01:56:28  13  recommending that Eli Lilly should have done what

01:56:30  14  VideoShare did.

01:56:32  15        In its Federal Circuit brief, the Defendant

01:56:34  16  pointed out that Lilly could have avoided double patenting

01:56:39  17  altogether by filing a terminal disclaimer on the later

01:56:42  18  patent.  But what it did was the exact opposite.  It

01:56:46  19  disclaimed the earlier patent.

01:56:47  20        And in its response to Lilly's Cert petition, the

01:56:52  21  Defendant pointed out that during six years of litigation,

01:56:55  22  Lilly never even attempted to file a terminal disclaimer,

01:56:58  23  and any arguments about a terminal disclaimer were never

01:57:03  24  ripe for adjudication.

01:57:04  25        So the facts of Eli Lilly are the exact opposite

01:57:06  1   of what happened here.

01:57:07  2        VideoShare didn't disclaim its prior patent.  It

01:57:11  3   terminally disclaimed a later one, which is what Eli Lilly

01:57:14  4   should have done all along.

01:57:16  5        Now, based on that, there's no question that Eli

01:57:20  6   Lilly's Footnote 5 is pure dicta.  The Court itself stated

01:57:28  7   that it was focused on the merits of double patenting.

01:57:31  8   There was never any issue presented about a terminal

01:57:35  9   disclaimer.  And if you look at the footnote, the Court did

01:57:36  10  not even cite any authority at all for its statement about

01:57:39  11  the effect of terminal disclaimers.

01:57:42  12       As Google itself concedes in its motion, there is

01:57:46  13  no such authority.  Nothing in the disclaimer statute or

01:57:49  14  the rules implementing it require a patent to be in force

01:57:52  15  as a condition precedent to disclaiming a portion of the

01:58:00  16  second patent.  And nothing about that -- that rule

01:58:02  17  announced in Footnote 5 would further the goal of

01:58:05  18  preventing double patenting.

01:58:09  19       So Footnote 5 is pure dicta.  But I think it's

01:58:13  20  important for the Court to know that even if the statements

01:58:16  21  in that foot -- footnote somehow are controlling,

01:58:20  22  VideoShare's terminal disclaimer is completely on all fours

01:58:23  23  with it.

01:58:24  24       The highlighted part here of Footnote 5 is the

01:58:28  25  real point that the Federal Circuit was making, that

01:58:32  1   because Eli Lilly disclaimed the earlier patent, it cannot

01:58:37  2   now terminally disclaim the later patent to expire at the

01:58:42  3   time the earlier patent would have expired had it not been

01:58:47  4   disclaimed.

01:58:47  5          Now, at most, what that statement means is that a

01:58:51  6   terminal disclaimer of a later -- later patent has to be

01:58:57  7   coextensive with any prior disclaimers on the earlier

01:59:00  8   patent.

01:59:00  9          So let's look once again at VideoShare's terminal

01:59:06  10  disclaimer.

01:59:07  11         And I don't know if the PTO's standard form

01:59:11  12  disclaimer was taking that footnote of Eli Lilly into

01:59:14  13  account when it was drafted, but VideoShare's disclaimer,

01:59:20  14  based on that form, reflects the exact statement the

01:59:24  15  Federal Circuit made in Footnote 5.  It says that

01:59:28  16  VideoShare disclaims any part of the term of the '341

01:59:34  17  patent that would extend beyond the full statutory term of

01:59:34  18  the prior patents -- down here at the bottom, it says, as

01:59:42  19  the term of the prior patents are presently shortened by

01:59:45  20  any terminal disclaimer themselves.

01:59:47  21         So what that means is if the prior patents were

01:59:53  22  incumbered by a disclaimer, then that would serve to

01:59:57  23  shorten the life of the '34 -- '341 patent to be

02:00:01  24  coextensive with any terminal disclaimers on those patents.

02:00:05  25         That's exactly what Footnote 5 of Eli Lilly says.

02:00:11  1          Your Honor, another point that occurs to me as I

02:00:15  2   was listening to opposing counsel a minute ago, one of the

02:00:18  3   most important distinctions, I think, between this case and

02:00:25  4   Eli Lilly is, as I mentioned, VideoShare did not engage in

02:00:29  5   double patenting.  But in Eli Lilly, the Court specifically

02:00:36  6   found that double patenting had occurred.

02:00:43  7          The two patents in that case were basically

02:00:46  8   identical to each other.  As I said, one's for Prozac in

02:00:48  9   humans.  The later one was for Prozac in animals.  They

02:00:48 10   were the same thing.  And because the first patent had been

02:00:51 11   disclaimed, Eli Lilly wouldn't be able to file a terminal

02:00:58 12   disclaimer on the second patent in order to make its life

02:01:01 13   coextensive with the original full term of the first

02:01:04 14   patent, because allowing that to happen would be basically

02:01:06 15   allowing an identical patent to resurrect itself and live

02:01:10 16   out the remainder of its statutory term.  This situation is

02:01:13 17   completely different.

02:01:14 18          VideoShare did not engage in double patenting.

02:01:17 19   The Court has essentially found as much in connection with

02:01:21 20   the prior motion to dismiss.  These are different patents.

02:01:25 21   The current one is presumed to be valid.  All validity

02:01:30 22   doctrines should be applied to it separately.

02:01:32 23          When faced with a double patenting objection, an

02:01:35 24   applicant has two choices.  They can fight it or file a

02:01:44 25   terminal disclaimer.

02:01:45  1          Eli Lilly did the former.  It fought it.  It lost.

02:01:48  2          VideoShare did the latter.  Rather than deal with

02:01:51  3  the hassle of fighting it, it filed a terminal disclaimer.

02:01:57  4          So my point here is that without a finding or a

02:02:01  5  litigation of the issue of double patenting, without a

02:02:04  6  finding that VideoShare engaged in double patenting,

02:02:08  7  VideoShare would not be prevented from having the term of

02:02:09  8  its current patent be coextensive with the full terms of

02:02:13  9  all the prior patents listed in the terminal disclaimer.

02:02:23  10         So, Your Honor, to sum up, what would it mean if

02:02:26  11 Google's motion to dismiss is granted?  Well, the first --

02:02:29  12 first thing I think it would mean is that the Court would

02:02:31  13 be making new law based on bad dicta, but not only would it

02:02:39  14 be making new law based on bad dicta, it would be expanding

02:02:44  15 that dicta to encompass a situation that wasn't present,

02:02:47  16 that is not -- that was not present in the Eli Lilly case.

02:02:50  17         But it would also lead to the absurd result that

02:02:57  18 the PTO chose to grant a patent that would have dead on

02:02:58  19 arrival and have no life whatsoever.  It would mean that

02:03:06  20 terminal disclaimers have to be interpreted in a

02:03:11  21 hypertechnical way without regard to the obvious intent of

02:03:13  22 the patentee.  It would mean that the Patent Office's own

02:03:14  23 terminal disclaimer form is pretty worthless and that it's

02:03:19  24 going to cause plenty of massive problems for patent

02:03:23  25 prosecutors who use it.  It's going to mean that the,

02:03:26  1  quote, full statutory term, as used in the terminal

02:03:30  2  disclaimer form, doesn't mean the full 20 years of Section

02:03:34  3  154, but it means there's some kind of sliding scale that

02:03:41  4  may be less than that full 20 years.  And it would also

02:03:44  5  prohibit what VideoShare here -- what VideoShare did here,

02:03:49  6  which I suspect is very common, that when a patent is

02:03:52  7  invalidated, the patentee goes back and tries to get a new

02:03:58  8  and different -- entirely different better patent, and if

02:04:02  9  faced with a -- with an allegation of double patenting, the

02:04:07  10  applicant won't be able to easily avoid that by filing a

02:04:10  11  terminal disclaimer, because if it does so, its patent is

02:04:14  12  going to be dead before it ever issues.

02:04:15  13       And I suspect that there are quite a lot of

02:04:18  14  patents out there with these disclaimers -- these

02:04:21  15  disclaimers on them that are going to be completely killed

02:04:24  16  if Google is correct here.

02:04:30  17       THE COURT:  Thank you, sir.

02:04:31  18       Ms. Simmons, you're absolutely free to say

02:04:34  19  anything you want about -- in response, but I would -- I

02:04:38  20  would prefer if you would -- would start -- if counsel

02:04:45  21  could -- Mr. Ellerman could put up the slide I asked him

02:04:48  22  about, and if you could address that first.

02:04:51  23       I wrote down -- I just wrote down slide without a

02:04:55  24  number, so I can't help you.  But if you could go through

02:05:00  25  his argument with respect to this particular slide, and

02:05:03  1  then, of course, you're free to say anything else you care

02:05:04  2  to.

02:05:05  3          MR. ELLERMAN:  Of course, Your Honor.

02:05:07  4          Oh, am I -- there, I'm unmuted.

02:05:09  5          I believe you asked about Slide 6 when -- when

02:05:12  6  that one was up; is that correct?

02:05:14  7          Mr. Ellerman, would you mind going to Slide 6?

02:05:18  8          I thought that was when you asked the question,

02:05:22  9  Your Honor.

02:05:22 10          MR. ELLERMAN:  I -- I'm -- I will certainly do

02:05:23 11  that.  I was just having some technical difficulties.

02:05:27 12          THE COURT:  I can see it.

02:05:29 13          MS. SIMMONS:  Was it this slide, Your Honor, or

02:05:31 14  was it Slide 6?

02:05:32 15          THE COURT:  Oh, no, no, no, this is not the right

02:05:34 16  slide.  I can see his -- there you go.

02:05:38 17          MS. SIMMONS:  I just want to make sure I'm -- I

02:05:40 18  made a note that I thought you asked about that for Slide

02:05:45 19  6, but perhaps I got that wrong.

02:05:47 20          MR. ELLERMAN:  Okay.  I'm getting there now.

02:05:49 21  My -- I think my battery on my remote is dying, but --

02:05:54 22          MS. SIMMONS:  Oh, I understand.

02:05:56 23          MR. ELLERMAN:  There you go.

02:05:57 24          MS. SIMMONS:  It is Friday afternoon, after all.

02:05:58 25  I mean --

| | | |
|---|---|---|
| 02:05:58 | 1 | THE COURT:  Here we go. |
| 02:06:00 | 2 | MS. SIMMONS:  Was that the -- the slide, Your |
| 02:06:01 | 3 | Honor? |
| 02:06:01 | 4 | THE COURT:  Yes, ma'am. |
| 02:06:02 | 5 | MS. SIMMONS:  Thank you. |
| 02:06:02 | 6 | I would love to start with that -- with that |
| 02:06:07 | 7 | slide. |
| 02:06:07 | 8 | The -- the argument that I believe counsel was |
| 02:06:13 | 9 | focused on with respect to this slide was what does full |
| 02:06:16 | 10 | statutory term mean? |
| 02:06:19 | 11 | Is that -- am I headed in the right direction, |
| 02:06:22 | 12 | Your Honor?  Was that where -- |
| 02:06:22 | 13 | THE COURT:  Yes.  Yes, ma'am, you are. |
| 02:06:26 | 14 | MS. SIMMONS:  Great.  And that was definitely on |
| 02:06:28 | 15 | my list to address. |
| 02:06:30 | 16 | Full statutory term, based on Federal Circuit |
| 02:06:33 | 17 | precedent, clearly means whatever term that the patentee is |
| 02:06:41 | 18 | permitted to or continues to have the right to exclude. |
| 02:06:44 | 19 | Now, it's our view that Eli Lilly makes this clear |
| 02:06:50 | 20 | in and of itself in the footnote by saying that a -- the |
| 02:06:53 | 21 | patentee in that case, that Eli Lilly could not go back and |
| 02:06:56 | 22 | terminally disclaim the full statutory or default under the |
| 02:07:03 | 23 | statute 20-year term anymore because that term had been |
| 02:07:06 | 24 | shortened through a disclaimer.  But that's not the only |
| 02:07:09 | 25 | case that stands for that proposition. |

02:07:11  1        We cited several in our briefing.  One is the

02:07:19  2   Korsinsky -- Korsinsky, if I'm saying that correctly --

02:07:19  3   case against Microsoft.  And in that case, the Federal

02:07:23  4   Circuit found that there could be no infringement, quote,

02:07:25  5   during the term of the patent thereof.  So addressing the

02:07:28  6   patent that was at issue in this case, under 271 because

02:07:33  7   that patent had expired for failure to pay maintenance

02:07:36  8   fees.

02:07:36  9        And so in that case, the reason that the 20-year

02:07:39 10   term -- you know, the patent didn't live out the default

02:07:43 11   20-year term is because it had expired.  And, therefore,

02:07:46 12   the term was adjusted.

02:07:50 13        Term must mean, as it is used in multiple

02:07:54 14   statutes, the period of time during which the patentee

02:07:57 15   enjoys the right to exclude.  And I can go through other

02:08:00 16   cases.  They're cited in our briefing, but that is the way

02:08:03 17   that the Federal Circuit regularly and consistently uses

02:08:08 18   the phrase "term of the patent."

02:08:11 19        You can't collect royalties, for example, on a

02:08:13 20   patent that has been invalidated because the term has been

02:08:17 21   shortened.  You can only collect royalties during the term

02:08:21 22   of the patent, meaning the time within which the patentee

02:08:25 23   can enforce that patent against others and exclude them

02:08:27 24   from practicing the claimed invention.

02:08:29 25        And so it -- it may be the case that VideoShare,

02:08:39  1   when it used this language in the terminal disclaimer,

02:08:42  2   wanted that language to refer to the default 20-year term,

02:08:48  3   but Eli Lilly and numerous other Federal Circuit cases make

02:08:53  4   it clear that that is not what it means in the -- in the

02:08:59  5   use of a terminal disclaimer or in any other context.

02:09:04  6        Statutory term is the term that the patent is

02:09:07  7   enforceable.

02:09:08  8        And so, you know, we agree that the language here

02:09:12  9   is clear.  We also agree that Federal Circuit precedent is

02:09:17  10  clear, and, of course, that's the only thing that makes

02:09:19  11  sense.  It wouldn't make sense to say that this 20-year

02:09:24  12  default continues to have some meaning after it's been

02:09:28  13  adjusted for the -- the patent in question.  What -- how

02:09:32  14  would that make sense anymore?  And how would that serve

02:09:36  15  the public notice function of a terminal disclaimer?

02:09:40  16        How -- how on earth would the public know that --

02:09:44  17  that somehow this is -- this full statutory term isn't the

02:09:47  18  actual term anymore of the patent, as it has been

02:09:51  19  determined in reality?  It's this default, and it's always

02:09:54  20  going to be the default regardless of what happens.

02:09:58  21        That's simply not consistent with statutory term,

02:10:01  22  as it is used consistently by the Federal Circuit.  And,

02:10:05  23  again, as the Federal Circuit said in the Eli Lilly

02:10:09  24  Footnote 5 -- made it clear, you can't terminally disclaim

02:10:15  25  back to when the patent would have expired.

02:10:17   1          So that, to me, directly refutes VideoShare's

02:10:21   2   argument as to what the meaning of full statutory term is

02:10:26   3   in the terminal disclaimer.

02:10:27   4          Now, I wanted to also address -- if that answers

02:10:30   5   Your Honor's questions about that slide?

02:10:34   6          THE COURT:  Yes, ma'am.  Yes, ma'am.  Thank you.

02:10:36   7          MS. SIMMONS:  Thank you.

02:10:36   8          I wanted to also address a couple of additional

02:10:40   9   points.

02:10:40  10          One is, first, I just -- I want to make it clear

02:10:43  11   that Google's motion does not ask nor does it require the

02:10:49  12   Court to make a determination as to validity of the '341

02:10:55  13   patent.  That is not at all what we are asking.

02:10:57  14          The motion doesn't seek such a finding.  The

02:11:02  15   motion doesn't seek to have the Court nor does the Court

02:11:05  16   need to decide whether or not the double patenting

02:11:08  17   rejection was right and should have been issued.

02:11:12  18          All of that is not relevant and not dispositive of

02:11:17  19   the issues in this motion.

02:11:19  20          The issue in this motion, as I tried to explain at

02:11:22  21   the very beginning is actually very narrow, and it is that

02:11:29  22   VideoShare made a decision as to how it would address that

02:11:33  23   rejection, and that decision was to state in a filing

02:11:37  24   before the Patent Office and to the public that the '341

02:11:41  25   patent would terminate on the same date that the '302 and

02:11:47  1   '608 patents terminated.  And that -- that's as -- it's as

02:11:52  2   straightforward as that, honestly.

02:11:53  3          And so what VideoShare did by doing that is

02:11:56  4   disclaimed the term of the '341 patent, and that is what

02:12:01  5   we're asking the Court to find as it -- as the Federal

02:12:05  6   Circuit has instructed it should find in the Eli Lilly

02:12:08  7   case.

02:12:08  8          That -- that is not the same as a finding of

02:12:14  9   invalidity or as a finding of double patenting or, you

02:12:18  10  know, any of the other list of horribles that -- that

02:12:21  11  opposing counsel suggests would flow from granting Google's

02:12:25  12  motion.

02:12:25  13         And, in fact, opposing counsel several times made

02:12:34  14  the claim that what VideoShare did is what a lot of

02:12:39  15  patentees do, which is I had an earlier patent that had

02:12:43  16  some issues with it, and so I now come back with a new,

02:12:48  17  different, better patent, I believe is how counsel

02:12:51  18  described it.

02:12:51  19         And we agree.  There's nothing wrong with doing

02:12:54  20  that.  And if a patentee does that and the Patent Office

02:12:59  21  comes back with a double patenting objection, the patentee

02:13:05  22  is absolutely within its rights and has the option to

02:13:08  23  explain to the Patent Office why this new patent is newer,

02:13:13  24  different, and better, and doesn't suffer from the

02:13:16  25  deficiencies that the previous patent did.

02:13:18   1             And that's why double patenting doesn't apply, and

02:13:21   2    that's -- that's not an appropriate rejection.

02:13:24   3             VideoShare could have done that here, but

02:13:27   4    VideoShare said -- I believe opposing counsel said, you

02:13:31   5    know, it's a hassle.  It's a hassle to have to do that, and

02:13:34   6    it's easier to file a terminal disclaimer.

02:13:37   7             And -- and so that is what VideoShare did and is

02:13:40   8    now stuck, essentially, with the consequences of having

02:13:43   9    done it that way.

02:13:44   10            So granting Google's motion in no way, shape, or

02:13:47   11   form prevents patentees from filing newer, different, and

02:13:52   12   better patents to overcome deficiencies or issues with

02:13:56   13   previous patents.  Those patentees can all still file those

02:14:02   14   patents and explain to the Patent Office if they face a

02:14:05   15   double patenting rejection why that rejection is not

02:14:08   16   appropriate because the newer claims are patentably

02:14:13   17   distinct.  They're newer and better and different.

02:14:16   18            And so that -- that hypothetical about the results

02:14:23   19   that would follow with all sorts of patents being

02:14:27   20   invalidated and terminal disclaimers no longer being able

02:14:29   21   to serve their function certainly doesn't hold true.

02:14:33   22            So I want to make it clear, though, once again,

02:14:37   23   and I apologize if I'm repeating myself, our motion does

02:14:40   24   not ask the Court to decide that the double patenting

02:14:43   25   objection that -- or rejection that the Patent Office

02:14:46  1   issued was right or not right.  It honestly doesn't matter

02:14:49  2   to this Court's decision on Google's motion.

02:14:52  3        Google's motion is strictly limited to what is the

02:14:56  4   appropriate termination date for the '341 patent.

02:14:59  5   VideoShare said what that was.  And now, you know, has to

02:15:03  6   live with the consequences of that.

02:15:07  7        The next point -- and this may be my last point

02:15:11  8   that I wanted to make.  I don't want to -- if this is the

02:15:14  9   last hearing Your Honor has, I certainly don't want to

02:15:17  10  stand between everybody's Friday afternoon, but --

02:15:20  11       THE COURT:  No, I'm -- I'm enjoying this.  Other

02:15:23  12  than you're making -- both making it much harder for me to

02:15:28  13  make my decision by doing such a great job, I -- as

02:15:32  14  Mr. Mann would tell you, I actually enjoy these hearings.

02:15:35  15       So you're -- please take as much time as you want.

02:15:37  16       MS. SIMMONS:  Well, thank you, Your Honor.  I

02:15:38  17  certainly don't want to overstay my welcome.

02:15:40  18       This -- this -- I confess this issue is bit like a

02:15:44  19  law school exam issue.  It is -- it is more interesting

02:15:48  20  maybe than some of those that we face on our day-to-day

02:15:52  21  cases.

02:15:52  22       But back to the germane issues.  The -- Footnote

02:15:56  23  5, I did want to address opposing counsel's argument that

02:15:59  24  Footnote 5 is -- is dicta.  I -- we obviously do not agree

02:16:04  25  with that, and we think it is clear from the opinion

02:16:06  1  itself, in addition to the dissent, that Footnote 5 is not

02:16:10  2  dicta.

02:16:11  3       Opposing counsel described the situation by saying

02:16:15  4  that the Defendant Lilly could have avoided the -- or the

02:16:21  5  Defendant argued in the appellate briefing that Lilly could

02:16:24  6  have avoided the double patenting by filing a terminal

02:16:28  7  disclaimer.  We completely agree.

02:16:30  8       And that is why the Federal Circuit had to address

02:16:31  9  that issue in this footnote because the Federal Circuit in

02:16:35  10  the footnote is essentially dealing with the issue of

02:16:40  11  whether or not it needs to go on and decide the merits of

02:16:44  12  the double patenting issue.

02:16:45  13       So had Eli Lilly had the option of being able to

02:16:51  14  file a terminal disclaimer to overcome the double patenting

02:16:56  15  issue, then at least it seems theoretical -- theoretically

02:17:01  16  possible that the Federal Circuit could have remanded the

02:17:03  17  case to give Eli Lilly the opportunity to do that, and then

02:17:07  18  the District Court could have dealt with it from there and

02:17:10  19  what the results were.

02:17:10  20       But what the Federal Circuit is saying -- this

02:17:13  21  Footnote 5 doesn't come out of nowhere.  To the contrary,

02:17:15  22  the Federal Circuit is addressing that possibility and --

02:17:20  23  and explaining why it is -- it would be futile to give Eli

02:17:24  24  Lilly that option because, as a matter of law, Eli Lilly

02:17:28  25  can't do that.  It cannot file a terminal disclaimer that

02:17:32  1   would disclaim -- or that would tie the termination of the

02:17:37  2   second patent back to the, you know, 20-year date that

02:17:43  3   previously existed for the first patent.  That's no longer

02:17:47  4   an option for them.

02:17:48  5           And so that is why we, the Federal Circuit, have

02:17:52  6   to proceed with the -- the analysis on the merits of the

02:17:56  7   double patenting issue and make a decision on that, because

02:18:01  8   it would be futile to send it back to the District Court to

02:18:05  9   give Eli Lilly that option.

02:18:06  10          And so it is absolutely material to the Federal

02:18:09  11  Circuit's opinion, and it does not come out of nowhere.

02:18:12  12          And as I mentioned, Judge Newman, at 975 of the

02:18:18  13  opinion in her dissent makes it clear.  She refers to the

02:18:22  14  fact that this was one of the holdings of the panel.  The

02:18:25  15  panel also holds that because Lilly disclaimed the Stark

02:18:31  16  patent before the trial, this bars Lilly from disclaiming

02:18:34  17  that portion of the second patent that would have extended

02:18:37  18  beyond the first patent's original life.

02:18:40  19          Judge Newman is -- she disagrees with that, but

02:18:44  20  she's clearly recognizing it as one of the holdings of the

02:18:47  21  Court that the Court had to reach.  It's not dicta.  So --

02:18:53  22          THE COURT:  Okay.  Thank you.

02:18:54  23          MS. SIMMONS:  -- I want to make sure that was -- I

02:18:58  24  think that was all that I had in my notes.

02:18:59  25          I guess what my -- my last point -- sorry to be a

02:19:01  1    little disjointed.

02:19:02  2           My last point that I wanted to make is that it

02:19:05  3    would -- the opposing counsel talked about the fact that it

02:19:08  4    would not be appropriate to allow -- and appears to agree

02:19:11  5    that it would not be appropriate to allow a patentee to use

02:19:16  6    a terminal disclaimer to go back and resurrect, you know, a

02:19:23  7    patent that -- a previous patent that had issues.

02:19:27  8           And we agree with that entirely.  And that is, in

02:19:31  9    fact, exactly what VideoShare is trying to do here.

02:19:33  10          So VideoShare is trying to say that the previous

02:19:35  11   patent had issues and was finally adjudicated as invalid,

02:19:42  12   but to extend the life of what that previous patent would

02:19:45  13   have been, we should be allowed to file this terminal

02:19:48  14   disclaimer to overcome the double patenting objection and

02:19:53  15   set the date to what the termination date would have been

02:19:57  16   for those previous patents had they not been terminated.

02:19:59  17          That is -- that is simply an improper result, and

02:20:02  18   the fact that we couldn't find cases that dealt with those

02:20:06  19   exact facts -- we found cases that we believe are

02:20:10  20   dispositive of this issue but that deal with that exact

02:20:14  21   fact pattern is -- is frankly not completely surprising

02:20:18  22   because it is, in fact, quite surprising that a patentee

02:20:21  23   would try to disclaim a second patent back to the date of a

02:20:27  24   patent that it full well knew had already been terminated

02:20:32  25   through a Federal Circuit opinion.

02:20:35  1          Ask yourself why -- why VideoShare wanted to try

02:20:39  2  to do that.  I, you know -- I can only speculate at this

02:20:43  3  point, and that may be the subject of other motions.  But

02:20:47  4  at this point, all that this Court needs to know is that

02:20:49  5  that is, in fact, what they did.

02:20:51  6          The termination date, therefore, is set as a

02:20:53  7  matter of law as the termination date of the '302 and '608

02:20:58  8  patents, and, therefore, we ask the Court to grant Google's

02:21:02  9  motion for judgment on the pleadings and dismiss

02:21:04 10  VideoShare's infringement claim.

02:21:05 11          THE COURT:  Very fine.

02:21:07 12          Mr. Ellerman?

02:21:08 13          MR. ELLERMAN:  Yes, Your Honor.  I just have a

02:21:10 14  couple of points I'd like to make, and I'll be brief.

02:21:13 15          First of all, I'm going to leave this slide up for

02:21:16 16  a second because I want to -- I want to talk about it for a

02:21:19 17  minute.

02:21:19 18          The terminal disclaimer's use of the words "full

02:21:23 19  statutory term," I mean, that has meaning.  And what I've

02:21:28 20  heard from opposing counsel is that's an ambiguous term

02:21:32 21  that, you know, could mean the full 20 years, could mean

02:21:37 22  some period less than 20 years.  It's a sliding scale that

02:21:43 23  depends on any myriad of circumstances.

02:21:44 24          But anybody looking at this document is going to

02:21:46 25  give meaning to the word "full" and "statutory."

02:21:52  1            What does that mean?  Obviously, it means Section

02:21:56  2   154.  It's the full 20-year statutory term of the patent.

02:21:58  3   And as far as serving a public notice function, that's

02:22:02  4   going to give anybody that looks at this notice that what

02:22:06  5   VideoShare intended was that the '341 patent's term would

02:22:09  6   be coextensive with the full 20-year term with any of the

02:22:13  7   prior patents on that list.

02:22:14  8            Now, at the bottom there, there's a limitation

02:22:18  9   that says:  However, if any of those prior patents are

02:22:24 10   themselves shortened by a terminal disclaimer, then the

02:22:29 11   term of the '341 patent is going to similarly be limited by

02:22:34 12   that disclaimer.

02:22:35 13            That is exactly what Footnote 5 of Eli Lilly is

02:22:39 14   talking about.  Footnote 5 said that because Eli Lilly not

02:22:49 15   just terminally disclaimed but entirely disclaimed the

02:22:52 16   prior patent, the subsequent patent was going to have to be

02:22:56 17   bound by that disclaimer, and since it was disclaimed in

02:23:00 18   its entirety, the subsequent patent had no term either.

02:23:03 19            So these -- these words have meaning, Your Honor.

02:23:08 20   "Full statutory term," I think the meaning is obvious.  I

02:23:11 21   think whoever drafted the form for the Patent Office

02:23:14 22   understood and intended that to mean the full 20-year

02:23:19 23   statutory term under Section 154.

02:23:22 24            But one other point I want to make, and I touched

02:23:25 25   on this earlier, is that the biggest difference between

02:23:28  1   this case and Eli Lilly is that Eli Lilly involved double

02:23:33  2   patenting.  That was the entire focus of the Federal

02:23:36  3   Circuit's opinion in that case is whether or not double

02:23:40  4   patenting had occurred.  And the Court held that it had.

02:23:42  5          And so in a situation with double patenting having

02:23:47  6   been found, Footnote 5 makes perfect sense, because what

02:23:53  7   the Court was saying is these two patents are identical.

02:23:57  8   And we can't have a situation where a later patent can be

02:24:04  9   terminally disclaimed in a way that's going to resurrect

02:24:08  10  the identical patent from the dead.

02:24:10  11         Here, we don't have that.  There's no finding of

02:24:13  12  double patenting.  The Court has already addressed the

02:24:16  13  issue with respect to the prior motion to dismiss, and as I

02:24:20  14  quote from the Court's prior opinion, even a cursory review

02:24:25  15  of the claim language of the two patents -- the two

02:24:28  16  VideoShare patents shows that the '341 patent uses broader

02:24:31  17  claim language, thus indicating potentially broader claim

02:24:33  18  scope.

02:24:34  19         And there's a lot more to the Court's analysis

02:24:36  20  that the Court is familiar with, but this is -- this is an

02:24:40  21  entirely different situation.

02:24:43  22         I don't know what Footnote 5 can be called if it's

02:24:45  23  not dicta, because the Court's own words were we are

02:24:52  24  focused on an analysis -- a two-step analysis for double

02:24:57  25  patenting.  And for a footnote about a terminal disclaimer

02:25:00  1   to appear out of nowhere when there was never any terminal

02:25:05  2   disclaimer filed, much less contemplated, really makes no

02:25:08  3   sense.

02:25:09  4           THE COURT:  Very good.

02:25:12  5           Anything else you wanted to add, Ms. Simmons?

02:25:15  6           MS. SIMMONS:  Again, at the risk of overstaying my

02:25:17  7   welcome, I would say that we -- just to clarify, it is not

02:25:22  8   our position that full statutory term is a -- is a phrase

02:25:26  9   that is ambiguous.  We think its meaning is abundantly

02:25:29  10  clear from Federal -- binding Federal Circuit precedent.

02:25:31  11  It is the term during which the patentee has the right to

02:25:34  12  exclude.

02:25:34  13          And here, the term "full statutory term" of the

02:25:41  14  '302 and '608 patents was modified, just as it could have

02:25:43  15  been modified by a patentee filing a terminal disclaimer as

02:25:45  16  is acknowledged in VideoShare's language and in its own

02:25:50  17  terminal disclaimer.  It also could have been modify by a

02:25:53  18  Federal Circuit opinion, which is what happened, or, as

02:25:56  19  some decisions have held, by failure to pay the fees.

02:25:59  20          Whatever happened to -- to modify that term that

02:26:02  21  the patentee has the right to exclude, that is now the new

02:26:05  22  full statutory term, and we think that meaning is clear.

02:26:09  23          And so I just wanted to clarify, we are not

02:26:11  24  arguing that that term is ambiguous.

02:26:14  25          THE COURT:  Okey-dokey.  Anything else from

02:26:18  1  anyone?

02:26:19  2           MR. ELLERMAN:  No, Your Honor.

02:26:20  3           THE COURT:  I thank you all.  I hope you all have

02:26:24  4  a terrific weekend.  I head to beautiful Del Rio, Texas,

02:26:34  5  next week.  You may have missed it on the news, but they're

02:26:38  6  having some immigration issues there.  And -- and so I'll

02:26:42  7  get to spend a week on the border handling cases down

02:26:45  8  there, which should be interesting.

02:26:46  9           So wherever you are next week will probably be

02:26:50 10  geographically better than where I am.  But I hope you all

02:26:52 11  have a good weekend.

02:26:54 12           And we are working hard on this issue, and we hope

02:26:57 13  to get something out in the -- in the very near future.

02:26:59 14           Take care.

02:27:01 15           MR. ELLERMAN:  Thank you, Your Honor.

02:27:02 16           MS. SIMMONS:  Thank you, Your Honor.

02:27:13 17           (Hearing concluded at 2:27 p.m.)

         18

         19

         20

         21

         22

         23

         24

         25

1                       <u>CERTIFICATION</u>

2

3          I HEREBY CERTIFY that the foregoing is a true and

4    correct transcript from the stenographic notes of the

5    proceedings in the above-entitled matter to the best of my

6    ability.

7

8

9    <u>/S/ Shelly Holmes         </u>          <u>9/9/2021  </u>
     SHELLY HOLMES, CSR, TCRR                  Date
10   CERTIFIED SHORTHAND REPORTER
     State of Texas No.: 7804
11   Expiration Date: 10/31/2021

12

13

14

15

16

17

18

19

20

21

22

23

24

25