**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| VIDEOSHARE, LLC | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | CIVIL ACTION No. 6:19-cv-00663-ADA |
| GOOGLE LLC and YOUTUBE, LLC | § | JURY TRIAL DEMANDED |
| | § | |
| Defendants. | § | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
<u>PARTIAL SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................ 1

II.     VIDEOSHARE IS NOT ENTITLED TO SUMMARY JUDGMENT OF
PARTIAL INFRINGEMENT.................................................................... 2

      A.    VideoShare's Request For Summary Judgment Of "Partial" Infringement
Of Independent Limitations Should Be Denied.................................... 2

           1.    VideoShare's Assertion That YouTube "Infringes" Certain
Limitations And Not Others Fails As A Matter Of Law .......................... 2

           2.    VideoShare's Requested Judgment Of "Partial Infringement"
Should Also Be Rejected As Prejudicial And Confusing To The
Jury............................................................................................ 5

      B.    Whether YouTube Comprises The "First Server System" Required By All
Claimed Steps Is Genuinely Disputed, Precluding Summary Judgment.............. 6

      C.    Summary Judgment Of Partial Infringement Is Improper Given The
Genuine Issues Of Material Fact As To Differing YouTube Functionalities...... 10

           1.    Limitations 1[a] and 1[b] ........................................................ 12

           2.    Limitation 1[c] ...................................................................... 13

           3.    Limitation 1[d]...................................................................... 13

           4.    Limitation 1[e] ...................................................................... 14

           5.    Limitation 1[g] ...................................................................... 16

III.    VIDEOSHARE IS NOT ENTITLED TO SUMMARY JUDGMENT ON
VALIDITY ............................................................................................ 17

      A.    Legal Standards For Summary Judgment On Validity ........................ 17

           1.    Priority Date........................................................................... 17

           2.    Obviousness .......................................................................... 18

           3.    Motivation to Combine........................................................... 18

      B.    Fact Disputes Preclude Summary Judgment On Validity.................... 19

           1.    ShareYourWorld Is Prior Art.................................................. 19

                a.    The '341 Patent Claims Are Not Entitled To The '029
Provisional's Priority Date............................................. 19

                b.    ShareYourWorld Was Publicly Available Before August
1999.......................................................................... 23

# TABLE OF CONTENTS
**(continued)**

**Page**

2.   There Is More Than Sufficient Evidence That Limitations 1[f] And 1[g] Are Disclosed, Precluding Summary Judgment ............................ 24

    a.   ShareYourWorld In View Of Koz Renders The '341 Patent Obvious ...................................................................................... 24

    b.   ShareYourWorld In View Of Mohan Renders The '341 Patent Obvious ............................................................................. 29

3.   The Parties' Disagreement About Motivation To Combine Is A Factual Dispute ..................................................................................... 29

IV.   CONCLUSION ............................................................................................... 31

# TABLE OF AUTHORITIES

**Page**

## CASES

*Apple Inc. v. Samsung Elecs. Co.*,
839 F.3d 1034 (Fed. Cir. 2016).......................................................................................... 30

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
876 F.3d 1350 (Fed. Cir. 2017)........................................................................................... 18

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
365 U.S. 336 (1961)............................................................................................................. 3

*Bradford Co. v. Conteyor N. Am., Inc.*,
603 F.3d 1262 (Fed. Cir. 2010)........................................................................................... 17

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)............................................................................................................ 10

*Commonwealth Sci. & Indus. Rsch. Organisation v. Cisco Sys., Inc.*,
809 F.3d 1295 (Fed. Cir. 2015)............................................................................................. 6

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*,
424 F.3d 1293 (Fed. Cir. 2005)..................................................................................... 19, 31

*ePlus, Inc. v. Lawson Software, Inc.*,
700 F.3d 509 (Fed. Cir. 2012).............................................................................................. 9

*GREE, Inc. v. Supercell Oy*,
No. 2:19-cv-00070, 2020 WL 4996766 (E.D. Tex. July 9, 2020) ........................................ 24

*In re Magnum Oil Tools Int'l, Ltd.*,
829 F.3d 1364 (Fed. Cir. 2016)........................................................................................... 20

*Intermec Techs. Corp. v. Palm Inc.*,
738 F. Supp. 2d 522 (D. Del. 2010), *aff'd*, 466 F. App'x 881 (Fed. Cir. 2012) .................... 20

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007)................................................................................................. 24, 27, 28

*L & W, Inc. v. Shertech, Inc.*,
471 F.3d 1311 (Fed. Cir. 2006)........................................................................................... 11

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
572 U.S. 915 (2014)................................................................................................... 2, 3, 5

*Malico, Inc. v. Cooler Master USA Inc.*,
594 F. App'x 621 (Fed. Cir. 2014) ...................................................................................... 10

# TABLE OF AUTHORITIES
## (continued)

Page

*Maxell, Ltd. v. Apple Inc.*,
No. 5:19-CV-00036-RWS, 2020 WL 8269548 (E.D. Tex. Nov. 11, 2020) ..................... 18, 24

*New Railhead Mfg., L.L.C. v. Vermeer Mfg. Co.*,
298 F.3d 1290 (Fed. Cir. 2002) ................................................................................. 21

*Randall Mfg. v. Rea*,
733 F.3d 1355 (Fed. Cir. 2013) ........................................................................... 24, 27

*Ruiz v. A.B. Chance Co.*,
234 F.3d 654 (Fed. Cir. 2000) ................................................................................. 19

*SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*,
225 F.3d 1349 (Fed. Cir. 2000) ............................................................................... 19

*Tech. Licensing Corp. v. Videotek, Inc.*,
545 F.3d 1316 (Fed. Cir. 2008) ............................................................................... 20

*Tinnus Enters., LLC v. Telebrands Corp.*,
No. 6:16-CV-00033-RWS, 2017 WL 8727624 (E.D. Tex. Aug. 11), *report
and recommendation adopted*, No. 6:16-CV-00033-RWS, 2017 WL 8727628
(E.D. Tex. Sept. 14, 2017) ............................................................................... 18, 29

*Trading Techs. Int'l, Inc. v. eSpeed, Inc.*,
595 F.3d 1340 (Fed. Cir. 2010) ............................................................................... 17

*TriMed, Inc. v. Stryker Corp.*,
608 F.3d 1333 (Fed. Cir. 2010) ............................................................................... 18

*TypeRight Keyboard Corp. v. Microsoft Corp.*,
374 F.3d 1151 (Fed. Cir. 2004) ............................................................................... 17

*Waldemar Link v. Osteonics Corp.*,
32 F.3d 556 (Fed. Cir. 1994) ................................................................................... 17

*Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*,
520 U.S. 17 (1997) ................................................................................................. 3

## RULES

Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment ................................ 6

## I.      **INTRODUCTION**

Defendants Google LLC and YouTube LLC (collectively, "Defendants") oppose Plaintiff VideoShare, LLC's ("VideoShare") Motion for Partial Summary Judgment because none of the issues presented in VideoShare's motion are pure questions of law and all involve underlying fact disputes.

VideoShare's motion for summary judgment of "infringement" as to certain limitations of claim 1 is both legally and factually unsupportable.  First, to infringe a claim, all claim limitations must be met.  It is improper to judge whether particular limitations are "infringed" without examining all of them—particularly where, as here, the limitations at issue include interrelated elements that are repeated throughout claim 1.  Second, there is a genuine issue of material fact as to whether a single "first server system" performs each of the claimed method steps as required by claim 1. ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████.  Because there is a genuine dispute as to whether YouTube can be understood as a single "first server system" that performs all of the claimed steps, summary judgment is inappropriate as to all claim limitations.  Third, there are numerous genuine issues of material fact as to each of the claim limitations at issue individually. ████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████

VideoShare's motion for summary judgment on validity also fails because it calls for this Court to resolve multiple fact disputes in favor of VideoShare, the movant.  First, Google contends and has produced support to show that the asserted patent claims are not entitled to the '029 Provisional's priority date because a POSITA would not have understood the '029 Provisional to

disclose the advertising limitations of the asserted claims.   Second, Google contends and documentary evidence and fact testimony confirm that ShareYourWorld was publicly available around March 1999—before VideoShare's earliest asserted priority date.   Third, contrary to VideoShare's contention, Google presented ample evidence in support of the challenged obviousness grounds demonstrating that limitations relating to sending the most compatible video file and sending advertisements with video are disclosed and obvious.   Finally, motivation to combine is a fact issue, and VideoShare's reliance on a few isolated statements in just one prior art reference to contest motivation to combine is simply inadequate for summary judgment.

## II.   VIDEOSHARE IS NOT ENTITLED TO SUMMARY JUDGMENT OF PARTIAL INFRINGEMENT

### A.   VideoShare's Request For Summary Judgment Of "Partial" Infringement Of Independent Limitations Should Be Denied

VideoShare's motion for summary judgment of partial infringement fails as a matter of law because VideoShare cannot show "partial" infringement of a claim, either as a general matter or with respect to claim 1 of the '341 Patent.   Moreover, summary judgment of "partial" infringement should be denied as highly prejudicial to Defendants because such a finding would suggest, contrary to law, that Defendants face liability for "partial" infringement of a claim.

#### 1.   VideoShare's Assertion That YouTube "Infringes" Certain Limitations And Not Others Fails As A Matter Of Law

VideoShare's motion for summary judgment of partial infringement is fundamentally flawed and should be denied.   Black letter law holds that to prove infringement, VideoShare must prove that Defendants perform each and every step of each method claim.   *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014).   If even a single step is not performed, there is no infringement.   *Id.*   VideoShare acknowledges this.   Mot. at 5 ("each and every limitation" must be present).   And, of course, this must be what is required to show infringement because a

"of the elements of the claim and . . . no element, separately viewed, is within the grant." *Limelight*, 572 U.S. at 921 (quoting *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 344 (1961)). "'Each element contained in a patent claim is deemed material to defining the scope of the patented invention,' . . . and a patentee's rights extend only to the claimed combination of elements, and no further." *Limelight*, 572 U.S. at 921 (quoting *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997)). VideoShare's attempt to obtain a judgment of "infringement" of individual limitations runs contrary to these basic principles, and should be rejected for that reason alone.

The logic behind these principles applies particularly to claim 1 of the '341 Patent. VideoShare asks the Court to hold that YouTube "infringes" claim limitations 1[pre], 1[a]-[e], and 1[g], but fails even to discuss claim limitation 1[f]. This alone precludes granting VideoShare's motion because the preamble and each of the limitations of claim 1 recite elements that are required by and further described in limitation 1[f], including *inter alia*: "structured hierarchical network," "first server system," "stored first video file," "first format," "stored second video file," "second format," and "identified video content." Specifically, limitation 1[f] requires that "the first server system" send "the stored first video file" or "the second video file" corresponding to "the identified video content" via "the structured hierarchical network" depending on a compatibility of the second server system or second client with "the first format" or "the second format." This limitation, thus, expressly requires that the recited actions be taken with respect to the elements claimed in the other limitations. And yet VideoShare fails even to discuss limitation 1[f], much less to attempt to tie any accused aspect of YouTube to the additional requirements recited in limitation 1[f]. VideoShare likewise fails to tie any of its allegations to the Court's construction of the "depending" clause of limitation 1[f] as meaning "after determining which of the first format

or second format is the most compatible with the second server system or the second client." Dkt. 69 at 2.  This failure to analyze the elements in the context of the entire claim language dooms VideoShare's motion.

As an analogy, suppose a claim recites a method comprising (1) receiving a first ball, (2) inflating the first ball with air, and (3) delivering the first ball.  Proving that a defendant "receives balls" and "delivers balls" does not show partial infringement of the claims.  The defendant may receive and deliver bowling balls, for example, but bowling balls cannot meet the "first ball" element in light of the second claimed step, because they cannot be inflated.  As a result, none of the three method steps is met.

Similarly, VideoShare cannot prove as a matter of law that YouTube has the claimed "first video file" or "second video file" because it cannot show (and does not even attempt to show) that YouTube has a "first video file" and "second video file" that can or do meet the requirements of limitation 1[f].  VideoShare asserts that merely because YouTube "receives video files uploaded by clients," it must "infringe" limitation 1[a]:  "a first server receiving a first video file in a first format from a first client via the structured hierarchical network."  Mot. at 8.  But the "first video file" claimed in limitation 1[a] must also be stored (limitation 1[c]), associated with an identifier (limitation 1[d]), and sent after determining which of the "first format" and "second format" is most compatible (limitation 1[f]).  Without undisputed evidence that YouTube performs limitation 1[f], there is no way to determine as a matter of law whether the accused uploaded video file meets all requirements of the claimed "first video file."  The same issue occurs with the claimed "second video file," the claimed "identified video content," and so on, for all the elements recited in limitation 1[f].  The claim elements in claim 1 are intertwined—it is not possible to pick out a single claim element in isolation, while ignoring others, to establish "partial infringement."

█████████████████████

Indeed, as detailed in Defendants' motion for summary judgment, YouTube does not

practice any of these limitations at least because ████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████

Given the interdependencies between each of the claim limitations, the Court should reject

VideoShare's effort to isolate certain limitations while ignoring limitation 1[f].

    2.    **VideoShare's Requested Judgment Of "Partial Infringement" Should Also Be Rejected As Prejudicial And Confusing To The Jury**

A finding of "partial infringement" of certain limitations as a matter of law, as requested

by VideoShare, is not only legally improper but would be highly prejudicial and invite error. Such

a judgment would incorrectly suggest that the Court has endorsed a finding of infringement, even

if only partially, and wrongly imply that it is possible to partially infringe a patent claim when it

is not. *Limelight*, 572 U.S. at 921. A judgment of "partial infringement" also erroneously

---

[1] References to Exs. 1-9 refer to exhibits to the Declaration of Bill Trac filed herewith. Exs. A-V refer to exhibits to the Declaration of Halima Shukri Ndai filed with VideoShare's motion for partial summary judgment.

insinuates that Defendants should pay partial damages for merely performing some steps in a patent claim, contrary to law. *See, e.g.*, *Commonwealth Sci. & Indus. Rsch. Organisation v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015) ("Under § 284, damages awarded for patent infringement must reflect the value attributable to the infringing features of the product, and no more."). Thus, even if VideoShare offered a legal basis for seeking judgment of partial infringement, the Court should not enter judgment of partial infringement given the overwhelming risk of confusion to the jury and prejudice to Defendants. As the notes to Rule 56 explain, "[e]ven if the court believes that a fact is not genuinely in dispute it may refrain from ordering that the fact be treated as established. The court may conclude that it is better to leave open for trial facts and issues that may be ***better illuminated by the trial of related facts that must be tried in any event***." Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment (emphasis added). The disputed facts critical to whether limitation 1[f] is practiced weigh heavily against a finding that Defendants "infringe" the other claim elements.

     **B.**    <u>Whether YouTube Comprises The "First Server System" Required By All Claimed Steps Is Genuinely Disputed, Precluding Summary Judgment</u>

VideoShare's motion for "partial infringement" fails in its entirety for a second, independent reason: there is a genuine dispute about whether YouTube comprises the claimed "first server system" that is required by every limitation of claim 1. VideoShare, therefore, is not entitled to a finding that YouTube practices ***any*** of the limitations of claim 1.

Defendants provided compelling evidence that YouTube does not comprise the recited "first server system."



███████████████████████

███████████████████████████████████

Faced with indisputable facts about how YouTube operates, VideoShare resorts to making claim construction arguments about the meaning of "first server system," while all the while conceding that in fact the plain and ordinary meaning applies.  VideoShare cannot belatedly attempt to construe this term in an attempt at avoiding Defendants' noninfringement arguments. *See ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 520 (Fed. Cir. 2012) (finding that "the jury was free to rely on the plain and ordinary meaning" of a term, and rejecting a party's efforts to "essentially rais[e] a claim construction argument regarding the meaning of the term [] in the guise of a challenge to the sufficiency of the evidence of infringement").

Dr. Schonfeld presented a clear opinion supported by ample evidence that YouTube is not a "first server system," as that term would be plainly understood by a POSITA.  Ex. 1, ¶¶72-87, 92-96.  As part of its improper claim construction argument, VideoShare argues, without citing any support, that Figure 1A describes a "server system" and "mirrors the understanding of the parties in their agreed constructions—namely that a server system is simply a collection of servers operating to offer a service."  Mot. at 9.  But Figure 1A actually distinguishes between a server system and other computers connected over a network.  In describing Figure 1A, the '341 Patent explains that "The host computer 60 includes one or more server computers 62, 62', 62" *that communicate via a network such as the web with other computers*, such as the computer in the user's computer system 10."  '341 Patent, 6:47-50 (emphasis added).  This confirms precisely the plain meaning understanding of "server system" offered by VideoShare's own expert—different things connected over the Internet are *not* necessarily a single server system.  Ex. 2, 68:17-69:2.

████████████████████████████████████

████████████████████████████████████

██



Because claim 1 of the '341 Patent requires a single "first server system" to perform all of the claimed method steps, and because there is a genuine issue of material fact as to whether ▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ VideoShare's motion for "infringement" of each of the claim limitations must be denied in its entirety.

### C. Summary Judgment Of Partial Infringement Is Improper Given The Genuine Issues Of Material Fact As To Differing YouTube Functionalities

VideoShare's motion for summary judgment of "partial infringement" should be denied in its entirety for a third, independent reason: there remain genuine disputes about whether the numerous distinct acts that VideoShare accuses infringe claim 1. VideoShare bears the burden of demonstrating entitlement to summary judgment. "If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence." *Malico, Inc. v. Cooler Master USA Inc.*, 594 F. App'x 621, 624 (Fed. Cir. 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 332 (1986)). Here, VideoShare bears the burden of proving every act of alleged infringement that it accuses. But VideoShare's motion ignores the undisputed

██████████████████████████████████████

fact that YouTube ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████ This is clear error.

In *L & W, Inc. v. Shertech, Inc.*, 471 F.3d 1311 (Fed. Cir. 2006), the Federal Circuit rejected a patentee's effort to assert infringement based on such sleight of hand. There, the patentee analyzed a single accused part, then declared that all sixteen accused parts also infringed. *Id.* at 1317-18. But the Federal Circuit held that "[w]hen a patentee with the burden of proof seeks summary judgment of infringement, it must make a prima facie showing of infringement as to each accused device before the burden shifts to the accused infringer to offer contrary evidence." *Id.* at 1318. The patentee "cannot simply 'assume' that all of [the defendant's] products are like the one [plaintiff's expert] tested and thereby shift to [defendant] the burden to show that is not the case." *Id.* Granting summary judgment based on a theory of infringement tied to just one product is reversible error. *Id.*

████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████ As detailed below, VideoShare's failure to meet its burden of proof and

demonstrate the absence of a genuine issue of material fact compels rejection of its entire motion.

1. **Limitations 1[a] and 1[b]**

In its analysis, VideoShare focuses myopically on uploads that it analyzed as coming from client devices (Mot. at 10-11), when uploads to YouTube occur in a variety of ways that VideoShare fails to address.  VideoShare is simply wrong when it asserts that YouTube client applications are the only source of uploaded videos on YouTube—that is just the only use case that VideoShare's expert, Dr. Sarhan, analyzed.  Ex. B, ¶23.  █████████████████

███████████████████████████████████████

2.      **Limitation 1[c]**

VideoShare similarly examines only one of the many ways YouTube operates in asserting

that YouTube stores the accused first and second video files. ██████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

3.      **Limitation 1[d]**

Defendants presented evidence that YouTube does not practice limitation 1[d], which

recites "the first server system generating an identifier for video content corresponding to the first

video file and the second video file."  '341 Patent, claim 1. ██████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████

Contrary to VideoShare's straw man, Defendants' argument is ***not*** dependent on any order of steps—it relies entirely on the express language of 1[d].  The claim language recites "***generating*** an identifier for video content ***corresponding*** to the first video file and the second video file." '341 Patent, claim 1 (emphasis added).  A POSITA would understand that at the time the identifier is generated, it must correspond to the first and second video files. Ex. 1, ¶98.  Associating an existing identifier—at some time after the identifier was generated—with a video file is not what the claim recites.  *Id.*

The '341 Patent specification confirms Dr. Schonfeld's plain meaning understanding of the claim language.  In Figure 6C, a JPEG "thumbnail" identifier is generated that corresponds to the already existing files 634, 636, and 638. '341 Patent Fig. 6C, *see also* Ex. 1, ¶99.  The '341 Patent contains no suggestion that an identifier "corresponds" to something that does not yet exist, and indeed, VideoShare's own expert presented a threadbare analysis that failed to acknowledge, let alone analyze, the consequences of ████████████████████████████████████ ███████████████████████████████████.  *See* Ex. B, ¶33.  Given the competing positions of the parties and their experts, there is at least a genuine issue of material fact as to whether YouTube practices this limitation.

### 4.   **Limitation 1[e]**

VideoShare relies on an oversimplification to assert that YouTube meets this limitation.  The question is not whether YouTube receives requests to stream "video" generally.  Rather, as required by the full claim limitation, the question is whether YouTube receives a request to stream "the identified video content."  This specific phrase has meaning.  Indeed, as part of claim construction, the parties ***agreed*** that the correct antecedent basis of the term "the identified video content" is "video content corresponding to the first video file and the second video file."  *See,*

████████████████████████████████████

*e.g.*, Dkt. 70, 11/25/2020 Markman Hr'g Tr. at 9:4-11:15.

Applying this agreed construction, there is a genuine dispute of material fact as to whether

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████  ██

████████████████████████████████████████████████████

██████████████████████████████████

        ███████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████  Thus, there is a genuine

dispute as to whether, in most instances, YouTube performs this limitation.

5.    **Limitation 1[g]**

VideoShare's motion asserting partial "infringement" of the advertising limitation also fails.  First, VideoShare has not established that YouTube sends "the stored first video file or the stored second video file."  VideoShare does not even argue that YouTube practices limitation 1[f]; and if limitation 1[f] is not met, then the accused advertisement in 1[g] is clearly not "display[ed] with" the video sent in that limitation.

Moreover, there is a genuine dispute of material fact as to which types of YouTube advertising purportedly meet this limitation.  This is a critical issue because VideoShare's damages claims rely on **all** YouTube advertising revenues and profits, notwithstanding the fact that even VideoShare acknowledges not all YouTube advertising meets the limitations.  In particular, Dr. Sarhan acknowledged in his deposition that he is not asserting that all types of advertising infringe—"I'm not trying to be inclusive of everything.  I don't want to be exhaustive."  Ex. 2, 170:15-16.  "My – like objective writing this report like was to give some specific examples as much as possible with cited evidence, without having to discuss every single possibility.  It was not my objective to discuss every single possibility."  *Id.* at 172:19-23.

Indeed, there are certain advertisements that irrefutably do ***not*** meet this limitation and are not even accused of doing so.  As Dr. Schonfeld explains, YouTube uses video and banner advertisements that do not appear in connection with videos.  Ex. 1, ¶148.  There are also masthead ads that do not appear alongside user-requested videos but rather appear on the YouTube home page.  *Id.*  And VideoShare's own invalidity expert opines that banner ads, such as those used by YouTube, do not correspond to the claimed invention, as described in further detail below.  *See infra* Section III.B.1.a.  There is a genuine issue of material fact as to whether YouTube practices this limitation.

### III.   VIDEOSHARE IS NOT ENTITLED TO SUMMARY JUDGMENT ON VALIDITY

#### A.   Legal Standards For Summary Judgment On Validity

##### 1.   Priority Date

The "determination [of] whether a priority document contains sufficient disclosure to comply with the written description aspect of 35 U.S.C. § 112, first paragraph, is a question of fact." *Bradford Co. v. Conteyor N. Am., Inc.*, 603 F.3d 1262, 1268 (Fed. Cir. 2010) (citing *Waldemar Link v. Osteonics Corp.*, 32 F.3d 556, 558 (Fed. Cir. 1994)). Therefore, summary judgment on priority date is improper if there are fact disputes about the interpretation of a priority document. *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1359 (Fed. Cir. 2010). In *Trading Technologies*, the Federal Circuit affirmed the district court's denial of summary judgment because the parties' experts had competing opinions about whether a provisional patent application adequately disclosed and described the claimed invention of the asserted patent claims. *Id.* The parties' "irreconcilable testimony created a dispute of material fact, precluding a grant of summary judgment on this issue." *Id.*

Similarly, fact disputes about whether and when a reference was publicly available also preclude summary judgment on whether the reference constitutes prior art. *See TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1158 (Fed. Cir. 2004). In *TypeRight*, the Federal Circuit reversed the district court's grant of summary judgment of invalidity because genuine issues remained about the credibility of the prior art witnesses and the date of distribution of prior art documents. *Id.* And in *Maxell, Ltd. v. Apple Inc.*, the district court found that Apple had identified evidence supporting that the prior art references were "accessible, known, used or sold before the priority date" and that granting the plaintiff's summary judgment motion of no invalidity "would necessarily require the Court to weigh the evidence and assess Apple's expert's

credibility, which is inappropriate on summary judgment." No. 5:19-CV-00036-RWS, 2020 WL 8269548, at *5 (E.D. Tex. Nov. 11, 2020).

### 2.   **Obviousness**

Under the Supreme Court's framework for obviousness, "[t]he *Graham* factors—(1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the art; and (4) objective considerations of nonobviousness—are questions of fact reviewed for substantial evidence." *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1358 (Fed. Cir. 2017). "What a reference teaches, whether there is a trend or demand in the relevant marketplace or design community, the background knowledge of one of skill in the art—these are all questions reserved for the finder of fact." *TriMed, Inc. v. Stryker Corp.*, 608 F.3d 1333, 1341 (Fed. Cir. 2010).

Disputes about the scope of disclosure in prior art references and the knowledge of a POSITA are both fact issues that preclude summary judgment. In *TriMed*, the Federal Circuit reversed the district court's summary judgment ruling on invalidity because many fact questions were in dispute, including "(1) whether either the May application or the Leibovic article discloses the claimed holes; (2) whether the May application discloses the claimed fixation pin; and (3) whether the Leibovic article shows a K-wire passing through a plate." *Id.* at 1341–42. And in *Tinnus Enterprises, LLC v. Telebrands Corp.*, the district court denied plaintiff's summary judgment motion because defendants "provided expert opinion regarding [prior art] disclosures and specifically what would have been apparent to a person of ordinary skill in the art." No. 6:16-CV-00033-RWS, 2017 WL 8727624, at *4 (E.D. Tex. Aug. 11), *report and recommendation adopted*, No. 6:16-CV-00033-RWS, 2017 WL 8727628 (E.D. Tex. Sept. 14, 2017).

### 3.   **Motivation to Combine**

"Determining whether there is a suggestion or motivation to modify a prior art reference

is one aspect of determining the scope and content of the prior art, a fact question subsidiary to the ultimate conclusion of obviousness." *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 665 (Fed. Cir. 2000) (quoting *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1356 (Fed. Cir. 2000)).

In *Cross Medical Products, Inc. v. Medtronic Sofamor Danek, Inc.*, the Federal Circuit reversed the district court's grant of summary judgment because the district court erred by discounting extrinsic evidence of motivation to combine.  424 F.3d 1293, 1322 (Fed. Cir. 2005). The Federal Circuit held that evidence of motivation to combine can come from a broad range of sources and "need not be in the form of prior art."  *Id.*  The Federal Circuit further found that drawing inferences in favor of the non-movant, the underlying prior art itself may have provided sufficient motivation to combine.  *Id.*

### B.   Fact Disputes Preclude Summary Judgment On Validity

VideoShare asks the Court to hold as a matter of law that (1) ShareYourWorld is not prior art to the '341 Patent; (2) claim 1 is not obvious in view of two of Google's obviousness combinations; and (3) there is no motivation to combine Google's prior art references.  Not only do VideoShare's requests lack merit, but none can be decided on summary judgment because there are genuine disputes of material facts underlying each issue.

#### 1.   ShareYourWorld Is Prior Art

VideoShare's request for summary judgment that ShareYourWorld is not prior art fails because it relies on two factual determinations, both of which are genuinely disputed: (1) the priority date to which the '341 Patent is entitled and (2) the date on which ShareYourWorld was publicly disclosed.

##### a.   The '341 Patent Claims Are Not Entitled To The '029 Provisional's Priority Date

VideoShare's Motion asks the Court to presume an August 1999 priority date, but

VideoShare's request fails for four reasons.

First, VideoShare does not even attempt to meet its burden that the '341 Patent is entitled to an August 3, 1999 priority date. The law is clear that once a patent challenger identifies evidence of prior art, the burden of establishing an earlier priority date falls on the patent owner. *In re Magnum Oil Tools International, Ltd.*, 829 F.3d 1364, 1376 (Fed. Cir. 2016). To satisfy that burden, the patent owner cannot merely cite to an earlier application for priority, but instead must prove that ***every element*** of the claimed invention was sufficiently disclosed in the earlier application. *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327 (Fed. Cir. 2008) (to prove entitlement to the benefit of an earlier priority date, the patent owner must "show not only the existence of the earlier application, but why the written description in the earlier application supports the claim"). Yet VideoShare offers no such analysis for its claimed entitlement to the August 1999 priority date. *See* Mot. at 3. Defendants have produced evidence of ShareYourWorld as prior art and, drawing all reasonable inferences in favor of Defendants, have established a *prima facie* case that ShareYourWorld is prior art. *Tech. Licensing*, 545 F.3d at 1329; *Intermec Techs. Corp. v. Palm Inc.*, 738 F. Supp. 2d 522, 555 (D. Del. 2010), *aff'd*, 466 F. App'x 881 (Fed. Cir. 2012). The burden is on VideoShare to prove entitlement to an earlier priority date, and VideoShare's failure to offer any arguments to support such entitlement is fatal to its motion. *Id.*

Second, VideoShare alleges priority by identifying, without explanation, a single image of a screen capture in the '029 Provisional that shows banner advertisements on a website (*see* Mot. at 3). But this image cannot support VideoShare's claimed entitlement because there is a genuine dispute about whether this disclosure discloses the advertisements claimed in the '341 Patent. In fact, VideoShare's own expert, Dr. Almeroth, opined that banner advertisements are ***not*** part of the claimed invention. Ex. 4, Almeroth Validity Report, ¶¶145-149. Dr. Almeroth contended that

in the prior art, "advertisements on the Internet traditionally consisted of banner ads embedded into an HTML." *Id.* ¶145.  He opined that banner advertisements are "associated with a particular area of a website" and "not particular files shown on the web page." *Id.*  He then contrasted the claimed invention of the '341 Patent as a "complete break" from the traditional online video because rather than serving banner ads associated with an area of a website, the claims require "associating advertisements with videos." *Id.* ¶¶148, 149.  In Dr. Almeroth's opinion, banner advertisements, like the one VideoShare cites from the '029 Provisional, cannot provide the written description disclosure for the advertisement claim elements.  Thus, VideoShare has not identified any written description in the '029 Provisional that meets its own expert's interpretation of the claims.  And it does not even attempt to argue that the '029 Provisional supports dependent claims 3, 4, and 5, which require that the advertisement be a "non-static image," "selected based on the second client," and "stored in a third video file." *See* Mot. at 3 n.2 (only contending that the banner advertisement is a "static image" and "includes an Internet link").

Third, the '029 Provisional must disclose the "manner and process of making and using [the claimed advertising limitation], in such full, clear, concise, and exact terms to enable an ordinarily skilled artisan to practice the invention claimed in the nonprovisional application." *New Railhead Mfg., L.L.C. v. Vermeer Mfg. Co.*, 298 F.3d 1290, 1294 (Fed. Cir. 2002).  But the '029 Provisional does not contain the word "advertisement" (or any variations of "advertisement") at all, much less disclose the '341 Patent claim limitation of "sending an advertisement for display with the identified video content." *See* Ex. L; Ex. A, Cl. 1.  And VideoShare cannot contend that this limitation needed no written explanation, as its own expert Dr. Almeroth asserts that the advertisement limitation was purportedly novel and inventive. *See* Ex. 4 ¶149.  Thus the '029 Provisional fails to provide sufficient written description of sending advertisements, much less

enable a POSITA to make and use the claimed "sending an advertisement for display with the identified video content." Ex. A, Cl. 1.  In fact, even the next application in the priority chain, the '587 Application filed in February 2000, lacked sufficient description of the advertisement elements.  It was not until the third application in the priority chain, U.S. Patent App. No. 09/631,583 ("'583 Application"), filed in August 2000, that VideoShare finally added descriptions of sending advertisements.  *See* Ex. 5 (redline comparison of the text of the '587 and '583 Applications showing numerous additions of paragraphs and disclosures about sending advertisements with the requested video).

Fourth, Google's expert, Dr. Schonfeld analyzed the '029 Provisional and opined that a POSITA would not have found sufficient written description of the advertisement limitations.  Dr. Schonfeld explained that a POSITA would see that there is no mention of "advertisement" in the '029 Provisional.  Ex. 6, Schonfeld Invalidity Report, ¶134.  And while the next application in the priority chain, the '587 Application, had some mention of advertisements, Dr. Schonfeld opined that it still did not describe the step of "sending an advertisement for display with the identified video content," as recited in claim 1 of the '341 Patent.  *Id.*  The '587 Application also failed to disclose any of the "advertisement" requirements recited in the '341 Patent's dependent claims. *Id.* ¶¶134, 135.  Finally, during prosecution of the third application in the priority chain, the '583 Application, the Examiner held that the claims were not supported by the '587 Application or the '029 Provisional, and VideoShare never attempted to traverse that finding.  *Id.* ¶136; *see also* Ex. 5 (redline showing addition on advertisement disclosures in '583 Application).  Based on all of this evidence and analysis, Dr. Schonfeld opined that the advertisement limitations were not disclosed until August 3, 2000, when the '583 Application was filed, and that the '341 Patent was therefore entitled to a priority date of August 3, 2000 at the earliest.  Ex. 6, ¶137.

In sum, there is a genuine dispute of material facts relating to the priority date of the '341 Patent, and VideoShare has failed to meet its burden of proof that it is entitled to judgment as a matter of law that the '341 Patent is entitled to claim priority to the '029 Provisional.

> b.   **ShareYourWorld Was Publicly Available Before August 1999**

VideoShare's disagreement about the publication date of ShareYourWorld is a dispute of fact that must be decided by the trier of fact and precludes summary judgment.  Indeed, Chase Norlin, the founder of and most knowledgeable source about ShareYourWorld, provided numerous documents and detailed testimony showing that ShareYourWorld was publicly available and online at least by March 1999:

- Mr. Norlin produced a March 29, 1999 "Zelman Moses Business Plan" that lays out his early plans for ShareYourWorld.  Ex. 7, NORLIN0000252.

- The March 1999 business plan describes an online video sharing platform that allows users to upload videos and that will generate revenues through advertising and using a "talent agency" licensing model.  *Id.*

- The March 1999 business plan says that Zelman Moses, which was later renamed ShareYourWorld, had reserved the ShareYourWorld.com URL to use for the website.  *Id.*

- Mr. Norlin testified that he distributed this March 1999 business plan to members of the public in connection with his efforts to obtain investment to fund his company.  Ex. 8, Norlin Dep. Tr. 80:15–81:1.

- Mr. Norlin produced a document titled "ShareYourWorld Business Plan" with a last revision date of November 22, 1999.  Ex. 9, NORLIN0002129.

- He testified that earlier versions of this ShareYourWorld business plan were also sent to potential investors "many months" before November 22, 1999.  Ex. 8, Norlin Dep. Tr. 76:23–77:6, 80:5–14.

- Mr. Norlin testified that the ShareYourWorld.com website was online and publicly available at least six months before he demonstrated it at TechViews in October 1999.  *Id.* at 73:13–74:10.

- He described the version of ShareYourWorld that he presented at TechViews in October 1999 as an "Alpha 2.0," which followed "pre-pre-alpha, pre-alpha, [and] alpha" iterations that were online at a live URL at least six months before

TechViews.  *Id.*; *see also id.* at 89:16–90:11 (testifying that the website was at a
live URL available to the public at least six months before TechViews).

Each of these facts alone defeats summary judgment, and collectively demonstrates that
there is ample evidence demonstrating that ShareYourWorld was publicly available by at least
March or April 1999.  As in *Maxell*, 2020 WL 8269548, at *5, and *GREE, Inc. v. Supercell Oy*,
No. 2:19-cv-00070, 2020 WL 4996766, at *3–4 (E.D. Tex. July 9, 2020), disputes about the
credibility of a prior art witness's testimony and the dates on his documents, such as these, are
triable issues of fact.  VideoShare's request for summary judgment on ShareYourWorld fails.

> ### 2.  There Is More Than Sufficient Evidence That Limitations 1[f] And 1[g] Are Disclosed, Precluding Summary Judgment

VideoShare's request for summary judgment that the combinations of ShareYourWorld
with Koz and ShareYourWorld with Mohan do not render obvious the asserted claims of the '341
Patent also fails because there exist clear disputes about material facts.  Obviousness is a legal
question based on underlying factual determinations.  *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398,
406 (2007).  The underlying facts that must be decided include "the scope and content of the prior
art, differences between the prior art and the claims at issue, the level of ordinary skill in the
pertinent art, and any objective indicia of non-obviousness."  *Randall Mfg. v. Rea*, 733 F.3d 1355,
1362 (Fed. Cir. 2013) (citing *KSR*, 550 U.S. at 406). VideoShare's motion improperly asks the
Court to ignore the competing evidence offered by the parties and define the scope of the prior art
as a matter of law.

> ### a.  ShareYourWorld In View Of Koz Renders The '341 Patent Obvious

Although VideoShare fails to provide a clear analysis of the combination of
ShareYourWorld with Koz, instead criticizing each reference individually as allegedly failing to
disclose certain limitations (even though Google does not assert either as a § 102 reference), the

only elements it appears to contend are lacking from both references are elements 1[f] and 1[g].[2]

*See* Mot. at 18–21.  But VideoShare's arguments as to both elements ignores documents, fact testimony, and expert opinions that clearly demonstrate that both elements were well known and would have been obvious to a POSITA in light of ShareYourWorld and Koz.

First, Koz describes a system that converts video files into various formats to serve the video in a format compatible with the viewer's device, as required by 1[f], which recites "the first server system sending the stored first video file or the stored second video file corresponding to the identified video content to the second server system or the second client via the structured hierarchical network depending on a compatibility of the second server system or a compatibility of the second client with the first format or the second format."  Ex. A, Cl. 1.  Koz expressly teaches that "if video data stored in the random access data storage subsystem in accordance with one compression standard . . . is being converted frequently, . . . the video data [can] also be stored in the random access data storage subsystem compressed in accordance with the second compression standard so it need not be converted repetitively in responding to future requests from subscriber systems."  Ex. T, 9:30–10:3; 18:18–29; *see also id.* at 7:9–12, 8:10–12, 9:35–10:2, 10:4–10, 17:31–18:5, 18:12–17, 18:30–19:6, 29:36–30:4 (describing other details of the components for converting, storing, and serving video files).  Google's expert, Dr. Schonfeld, explained that a POSITA would read Koz as teaching receiving a first video file, converting the first video file into a second file, storing both files, and then serving the second video file when it

---

[2] In particular, VideoShare argues that Koz failed to teach 1[a], 1[b], and 1[d], but it is uncontested that ShareYourWorld disclosed elements 1[a], 1[b], and 1[d].  *See* Mot. at 18 (alleging that ShareYourWorld is deficient except for elements 1[a], 1[b], 1[c] and 1[d]).  VideoShare also argues that ShareYourWorld failed to teach 1[e], but again, it is uncontested that Koz taught element 1[e].  *See id.* (alleging that Koz is deficient except for elements 1[c] and 1[e]).  Therefore, the combination of ShareYourWorld and Koz rendered these elements obvious, and it is irrelevant whether each reference, standing alone, anticipated claim 1.

is determined that the second format is most compatible for the viewer.  Ex. 6, ¶¶290–293, 294–298, 310.  Google has offered more than sufficient evidence for a reasonable jury to find that Koz discloses claim element 1[f].

VideoShare's remaining assertions—that Koz's "primary goal" differs from the embodiment Google relies on and that Koz sends analog video signals instead of video files—are attorney argument divorced from the facts.  Contrary to VideoShare's assertion (Mot. at 20–21), Koz never states that its "primary goal" is to perform on-the-fly transcoding.  On the contrary, Dr. Schonfeld opined that Koz teaches a server that converts video between different compression standards so that it can serve video in a format compatible with a requesting subscriber.  Ex. 6, ¶231.  But regardless of Koz's "primary goal," Koz explicitly teaches an embodiment that stores converted video in a second format and serves that stored second file when it is the compatible format for the requesting viewer.  *See* Ex. T, 9:30–10:3, 18:18–29; *see also id.* at 7:9–12, 8:10–12, 9:35–10:2, 10:4–10, 17:31–18:5, 18:12–17, 18:30–19:6, 29:36–30:4.

As for VideoShare's contention that Koz "does not transmit video files at all"—it is simply false.  *See* Mot. at 20.  VideoShare points to a single statement that the Koz invention "***may*** also include video data decompression subsystems," and based on this, contends that Koz transmits only "analog video signal."  *See id*. at 20–21.  VideoShare's argument ignores the repeated disclosures that the "video file server" in Koz stores compressed video files and serves compressed video data.  *See, e.g.*, Ex. T, 10:14–16 ("retrieve the compressed video data for transmission to a subscriber system"), 37:4–8 ("retrieve compressed video data and to supply such data to said communication system for transmission to said subscriber system"), 22:20–24 ("transmits compressed video data from the random access data storage subsystem 78 to the subscriber system 66"); 9:35–10:3 (disclosing storing and serving video in the "second compression standard so it

need not be converted repetitively").  A POSITA would know that compressed video data refers to video files, not analog signals, and Dr. Schonfeld opined that Koz teaches sending video files. *See, e.g.*, Ex. 6, ¶¶237, 310.

Second, as to 1[g], Google presented substantial evidence that serving an advertisement along with a requested streamed video would have been obvious to a POSITA in view of ShareYourWorld, Koz, and the POSITA's knowledge.  VideoShare's motion improperly asks the Court to ignore this evidence and perform a strict anticipation-type analysis on each reference in contravention of *KSR*.

"In *KSR*, the Supreme Court criticized a rigid approach to determining obviousness based on the disclosures of individual prior-art references, with little recourse to the knowledge, creativity, and common sense that an ordinarily skilled artisan would have brought to bear when considering combinations or modifications."  *Randall Mfg.*, 733 F.3d at 1362 (citing *KSR*, 550 U.S. at 415–22).  The Supreme Court specifically "reject[ed] a blinkered focus on individual documents" and required the obviousness analysis to consider factors such as demands of the design community, background knowledge of a POSITA, and inferences and creative steps that a POSITA would employ.  *Id.* (citing *KSR*, 550 U.S. at 418).

Google presented substantial evidence and analysis to support that a POSITA would have found the advertising limitation obvious based on ShareYourWorld, Koz, and the knowledge of a POSITA, each of which defeats summary judgment:

- ShareYourWorld's early business plans described various advertising models to monetize the ShareYourWorld system, including by showing targeted ads based on subject matter "verticals" and showing video ads before a requested video. *See, e.g.*, Exs. 7, NORLIN0000252 at 262 ("PHASE I – ADVERTISING . . . ZM will sell advertising against the entire site, top submissions, and streaming media files (insertion of advertising message before the clip begins") and Ex. 9, NORLIN0002129 at 2145 ("5. Advertising . . . SYQ can place a video advertisement at the beginning of the most popular clips.").

- Mr. Norlin testified about these plans and that he presented his plan to include advertisements to members of the public as he sought funding for his ShareYourWorld startup. *See, e.g.*, Ex. Q, 76:23–77:6, 80:5–14, 80:15–81:1, 116:14–18. He testified that he contemplated serving advertisements in many formats, including text, banner, and video ads. Ex. 8, Norlin Dep. Tr. 64:15–65:4.

- ShareYourWorld served advertisements and generated revenues from banner ads at some point. Ex. Q, 59:13–17, 117:13–15.

- Mr. Norlin explained that it was natural to incorporate advertisements as a way of generating revenue, stating that he thought at the time, "why can't . . . how do we capture television advertising revenue . . . take a TV ad that's 30 seconds or whatever that could be closely similar to that video clip?" Ex. 8, 64:15–65:4.

- Koz teaches that a user that requested video "relating to travel" might have their presentation "augmented" with video and images from a "travel supplier such as an airline, hotel, etc." Ex. T, 30:16–31:18.

- Dr. Schonfeld opined that a POSITA would have known that showing advertisements was possible and desirable in the context of streaming videos. *See, e.g.*, Ex. 6, ¶¶105, 183, 200, 202, 218, 222.

- Beyond ShareYourWorld and Koz, Dr. Schonfeld also cited Amazon.com, eBay.com, Yahoo!, Altavista, POPcast, and YourVideoOnTheWeb as examples of prior art Internet systems that displayed advertisements alongside requested content in order to generate revenues. *Id.* ¶¶105, 183, 202.

- Dr. Schonfeld cited testimony from individuals who worked on Internet video streaming systems, including one of the named inventors on the '341 Patent, Mr. Guillaume Boissiere, and the creator of YourVideoOnTheWeb, Ms. Nancy Miracle, as supporting that advertising was well known before 1999 and that it would have been "natural" to include advertising in online streaming systems. *Id.* ¶202.

- Dr. Schonfeld opined that showing advertisements with streamed Internet videos was simply a conventional, well-known, and natural progression from showing TV advertisements during TV programs. *Id.* ¶¶105, 200, 218, 222; *see KSR*, 550 U.S. at 401. He further opined that market forces would have prompted translating TV ads to streaming videos online because advertisements were one of the handful of known ways to monetize video presentation systems. *Id.* ¶¶105, 200, 321, 466.

In view of *KSR*, there is ample evidence for a reasonable jury to find that it would have been obvious to a POSITA to include advertisements in an Internet streaming system, regardless of whether ShareYourWorld implemented advertisements before the priority date of the '341 Patent.

Google's expert opinions about the prior art disclosures and "what would have been apparent to a person of ordinary skill in the art" create triable questions of fact that preclude summary judgment. *See Tinnus Enters.*, 2017 WL 8727624, at *4.

        b.    **ShareYourWorld In View Of Mohan Renders The '341 Patent Obvious**

With respect to ShareYourWorld in view of Mohan, VideoShare's only real dispute is that the advertising limitation, element 1[g], is missing; VideoShare admits that Google relied on Mohan for element 1[f] and does not attempt to argue that Mohan lacks element 1[f] (Mot. at 21) and Mohan indeed discloses converting an original file into additional formats and sending the file most compatible with a client. *See, e.g.*, Ex. 6, ¶¶249-261, 381. As for element 1[g], VideoShare's only argument is again based on ShareYourWorld. For the same reasons addressed in the prior section, the combination of ShareYourWorld, Mohan, and the knowledge of a POSITA renders limitation 1[g] obvious. *See supra* Section III.B.2.a. And, for the same reasons, this issue is not ripe for summary judgment.

        3.    **The Parties' Disagreement About Motivation To Combine Is A Factual Dispute**

Finally, VideoShare's argument that there is no motivation to combine ***any*** of Google's prior art references also fails. VideoShare's only putative support for this argument is its expert's assertion that two statements from one paper—a paper that is only in three of Google's six combinations—contradict the motivations to combine identified by Google's expert. But Google's expert identified other motivations expressly stated in the underlying prior art references and further grounded in the background knowledge of a POSITA.

"What a prior art reference teaches and whether a skilled artisan would have been motivated to combine references are questions of fact." *Apple Inc. v. Samsung Elecs. Co.*, 839 F.3d 1034, 1051 (Fed. Cir. 2016). VideoShare's motion ignores this and asks the Court to interpret

one of the prior art documents, Mohan II, and construe statements therein as "more in line with the state of the art . . . during the relevant time period." *See* Mot. at 22. This argument fails at summary judgment.

As a preliminary matter, VideoShare's motion does not identify which combinations of references it contends lack motivation to combine. Instead, VideoShare appears to broadly ask this Court to interpret Mohan II as teaching away from ***all*** of Google's asserted combinations, despite the fact that Mohan II is not relied on in three of Google's § 103 grounds. *See, e.g.*, Ex. 6 at 4 (listing three § 103 combinations that do not rely on Mohan). VideoShare has not carried its burden on any of Google's obviousness grounds, but certainly not on the grounds that do not contain Mohan II.

More fundamentally, summary judgment is improper because VideoShare's motion merely presents the Court with disputed issues of fact—first, as to what Mohan II teaches, and second, as to whether its teachings are or are not "more in line with the state of the art" than other documents and evidence. Google's expert supported his opinions on motivation to combine with explanations, analysis, and citations to prior art. Dr. Schonfeld explained that there is motivation to combine Koz and Mohan because they "both teach improved methods of streaming video to viewers, including by converting video into different formats" (Ex. 6, ¶346) and they both teach the importance of implementing server-side collection of information and decision-making (*id.*, ¶348). As another example, Dr. Schonfeld opined that there is motivation to combine ShareYourWorld and Mohan for reasons including (1) the substantial overlap in functionality between the two taught systems (*id.* ¶471), (2) "the creators of ShareYourWorld recognized the benefits of converting video into different formats . . . and Mohan teaches the benefits of converting and storing video in different video files of different formats" (*id.* ¶ 486), and (3) the

creators of ShareYourWorld worked on a transcoding system that could convert video into many different formats and bandwidths, and Mohan specifically taught the importance of serving different formats to a diversity of clients at a diversity of bandwidths (*id*. ¶504).  The underlying prior art itself thus contains support for motivation to combine.  *See Cross Med.*, 424 F.3d at 1322. VideoShare merely presents competing facts via its expert's opinion that certain evidence taught away from Google's proposed combinations.  *See* Ex. K, ¶¶168, 169 (citing two statements from Mohan II and opining that they are more in line with the state of the art).  Weighing the credibility of each expert's opinions and explanations should be left to the jury.

## IV.    CONCLUSION

For the reasons above, Google respectfully requests the Court deny VideoShare's Motion for Partial Summary Judgment.

Dated:  September 8, 2021

*/s/ Luann L. Simmons*

J. Mark Mann
State Bar No. 12926150
G. Blake Thompson
State Bar No. 24042033
MANN | TINDEL | THOMPSON
300 West Main Street
Henderson, Texas 75652
(903) 657-8540
(903) 657-6003 (fax)

Luann L. Simmons (*Pro Hac Vice*)
lsimmons@omm.com
David S. Almeling (*Pro Hac Vice*)
dalmeling@omm.com
Brad N. Garcia (*Pro Hac Vice*)
bgarcia@omm.com
Bill Trac (*Pro Hac Vice*)
btrac@omm.com
Amy K. Liang (*Pro Hac Vice*)
aliang@omm.com
Sorin G. Zaharia (*Pro Hac Vice*)
szaharia@omm.com
Daniel Silverman (*Pro Hac Vice*)
dsilverman@omm.com
**O'MELVENY & MYERS LLP**
Two Embarcadero Center
28th Floor
San Francisco, CA 94111-3823
Telephone: 415-984-8700
Facsimile: 415-984-8701

***Attorneys for Defendants Google LLC and
YouTube, LLC***

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on September 8, 2021, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

*/s/ Luann L. Simmons*
Luann L. Simmons
