# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| VIDEOSHARE, LLC, | CIVIL ACTION NO. 6:19-CV-00663-ADA |
| Plaintiff, | |
| v. | |
| | JURY TRIAL DEMANDED |
| GOOGLE LLC and YOUTUBE, LLC, | |
| Defendants. | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY FOR LACK OF PATENTABLE SUBJECT MATTER UNDER 35 U.S.C. § 101**

Plaintiff VideoShare, LLC ("VideoShare") files this Response to Defendants' (collectively "Google") Motion for Summary Judgment of Invalidity for Lack of Patentable Subject Matter Under 35 U.S.C. § 101 (Dkt. 103, the "Motion"), and respectfully shows as follows:

## I. INTRODUCTION

Google's Motion should be denied for three main reasons. First, Google oversimplifies the claimed invention, and it thus completely disregards material differences in the asserted claims over the previously invalidated claims. For example, Google distills independent claim 1 down to only "receiving (and storing)," "converting," "identifying," and "sharing (transmitting)" content with an advertisement (Dkt. 103 at 7), and thereby improperly eliminates the limitation that requires a determination of compatibility before sending a file, namely: "depending on a compatibility of the second server system or a compatibility of the second client with the first format or the second format." The Court construed this very term, and it is a key aspect of Google's summary judgment motion on noninfringement. Therefore, although Google's noninfringement motion acknowledges that this limitation is an important part of the claim, the present Motion conspicuously overlooks it.

Second, Google's Motion misinterprets the law since it is based on the flawed logic that a combination of elements is not patentable if certain elements were known. That is not the law. The Federal Circuit has long held that "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). Google's failure to consider and analyze the invention as a whole is fatal to its Motion.

Finally, there is a genuine issue of material fact that precludes summary judgment regarding whether the combination of the claimed elements were well-known and conventional at the time of invention as Google contends. *Aatrix Software, Inc. v. Green Shades Software, Inc*., 890 F.3d 1354, 1356 (Fed. Cir. 2018) (affirming that "[w]hether a claim element or combination of elements would

have been well-understood, routine, and conventional to a skilled artisan in the relevant field at a particular point in time" is question of fact); *see also Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018), *cert. denied*, 140 S. Ct. 911 (2020).[1]

Because the evidence, including undisputed expert testimony, supports a finding that the asserted claims of U.S. Patent No. 10,362,341 ("'341 patent") are directed toward patentable subject matter, Google's Motion must be denied.

## II.     RESPONSE TO GOOGLE'S STATEMENT OF UNDISPUTED FACTS

VideoShare disputes many of the facts Google identifies as "uncontested," including its claim comparison chart. Dkt. 103 at 3-4. First, VideoShare objects to the legal arguments that Google attempts to characterize as "undisputed" facts. *See id.* at 2-3 (statement of facts 1 and 2); *see also* FED. R. CIV. P. 56(c). Second, Google's statement of fact 3 lacks citations to any proper summary judgment evidence and should be ignored. FED. R. CIV. P. 56(c).

Third, as VideoShare previously stated in response to Google's motion to dismiss, whether or not VideoShare disputed the examiner's nonstatutory double patenting rejection is irrelevant because "the filing of a terminal disclaimer simply serves the statutory function of removing the rejection of double patenting, and raises neither presumption nor estoppel on the merits of the rejection." Dkt. 77 at 2 (citing *Quad Envtl. Techs. Corp. v. Union Sanitary Dist.*, 946 F.2d 870, 874 (Fed. Cir. 1991); *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 941 (Fed. Cir. 1992)).

Fourth, as shown below, claim 1 of the '341 patent and claim 1 of U.S. Patent No. 8,464,302 ("'302 patent") are materially different. For example, the asserted claims of the '341 patent provide

---

[1] Google's Motion does not address or cite either of these cases. Moreover, the prior ruling (including the Federal Circuit affirmance) that Google relies on predates the Federal Circuit's decisions in *Aatrix* and *Berkheimer*. *See VideoShare, LLC v. Google, Inc.*, No. 13-CV-990 (GMS), 2016 WL 4137524 (D. Del. Aug. 2, 2016), *aff'd*, 695 Fed. App'x. 577 (Fed. Cir. 2017) ("*VideoShare I*").

for the creation of a plurality of video file formats, which allows multiple viewers to stream video content depending upon compatibility with their particular client devices.

| '302 Patent: Claim 1 | '341 Patent: Claim 1 |
|---|---|
| A method of sharing a streaming video and associated advertisement over a network, comprising:<br>executing, by a first computer: | A method for sharing video over a structured hierarchical network comprising: |
| receiving an advertisement; | |
| storing the advertisement; | |
| receiving a video file; | a first server system receiving a first video file in a first format from a first client via the structured hierarchical network; |
| converting the video file into a streaming video file comprising a streaming video format, independent from receiving a command to perform such conversion; | the first server system creating a second video file in a second format by converting at least a portion of the first video file from the first format to the second format, independent from receiving a command from the first client to perform such conversion; |
| storing the streaming video file to a storage device; | the first server system storing the first video file and the second video file; |
| generating an identification tag identifying the stored streaming video file; | the first server system generating an identifier for video content corresponding to the first video file and the second video file; |
| associating the streaming video file with the advertisement; | |
| embedding the identification tag into a web page accessible to a plurality of users on the network; | |
| receiving, via a web page, a request to transmit the streaming video file; and | the first server system receiving a request to stream the identified video content to a second server system or a second client via the structured hierarchical network; |
| transmitting, via a web page, the streaming video file and | the first server system sending the stored first video file or the stored second video file corresponding to the identified video content to the second server system or the second client via the structured hierarchical network depending on a compatibility of the second server system or a compatibility of the second client with the first format or the second format;[2] and |

---

[2] The Court construed the term "depending on a compatibility of the second server system or a compatibility of the second client with the first format or the second format" to mean "after

| '302 Patent: Claim 1 | '341 Patent: Claim 1 |
|---|---|
| [transmitting, via a web page,] the advertisement to a second computer on the network. | the first server system sending an advertisement for display with the identified video content sent in the stored first video file or the stored second video file. |

Finally, contrary to Google's assertion, only the '302 patent is in the same patent family as the '341 patent, i.e., both patents claim priority to U.S. Provisional Patent Application No. 60/147,029, whereas U.S. Patent No. 8,438,608 claims priority to U.S. Provisional Patent Application No.60/188,082. Therefore, Google's statement that the "District of Delaware held that *two patents in the same family* as the '341 patent were patent ineligible under *Alice*" is wrong. See Dkt. 103 at 1(emphasis added).

### III. STATEMENT OF ADDITIONAL FACTS

The '341 patent "relates generally to the distribution of video segments," more particularly, distributing video segments in a "streaming video format over a network" along with an advertisement. '341 patent at 1:24-28. It addressed the problems associated with video distribution in the late 1990s and provided a marked improvement over the prior art. *Id.* at 1:31-54; *see also id.* at 1:58–61 (identifying the object of the invention). For example, although it was possible to send a video over a computer network as an attachment to an electronic mail message, that method required the entire video file to be transmitted and received before the recipient could view the video, which could take longer than the playing time of the video for large files and/or low-bandwidth networks. *Id.* at 1:32–45. Additionally, it was difficult to share or forward the received video. *Id.* Inventor testimony and expert opinions consistently confirmed these problems, which were solved by the '341 patent:

---

*determining which of the first format or second format is most compatible* with the second server system or the second client." Dkt. 69 at 2 (emphasis added). Google proposed this term for construction. Ex. A (Google's Identification of Claim Terms). Unless otherwise specified, all exhibits are attached to the Declaration of Halima Shukri Ndai.

4

> REDACTED

Ex. B (Boissiere Tr.) at 82:25-83:23(emphases added).



Ex. C (Dodge Tr.) at 29:4-10; *see also* Ex. D (Almeroth Rpt.) ¶¶ 56-57, 125-147, 373-374 (discussing the state of the art and the technological challenges at the time of invention).

The inventors and VideoShare's expert repeatedly testified that certain claim elements and combinations were not well-known at the time of invention, and they confirmed that the invention of the '341 patent relates to all of the elements as a whole:



Ex. B (Boissiere Tr.) at 72:20-73:5 (emphasis added).



**REDACTED**

*Id*. at 75:2-76:3 (emphases added).

**REDACTED**

*Id*. at 79:3-17 (emphasis added); *id*. at 80:9-18 ("So I wouldn't use the term 'well known' here.").

**REDACTED**

Ex. C (Dodge Tr.) at 233:21-234:5 (emphasis added).

**REDACTED**

Ex. E (Liwerant Tr.) at 159:15-21 (emphasis added).

**REDACTED**

REDACTED

*Id.* at 161:17-162:6 (emphasis added).

REDACTED

Ex. F (Almeroth Tr.) at 25:22-26:7 (emphasis added).

REDACTED

*Id.* at 28:10-23 (emphasis added).

REDACTED

REDACTED

*Id*. at 31:13-32:7 (emphasis added).

REDACTED

*Id*. at 166:1-10.

## IV.    LEGAL STANDARD

Summary judgment is appropriate when, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," such as a fact necessary to prove a claim or defense. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a rational juror to decide in favor of the nonmoving party. *Id*. The moving party has the initial burden of proving the absence of a genuinely disputed material fact. *Celotex*, 477 U.S. at 323.

When ruling on a motion for summary judgment, a court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

## V.    ARGUMENT

As articulated by the Supreme Court, the analysis of patent eligibility under Section 101 entails two steps. Step one requires that the Court "determine whether the claims at issue are directed to a patent-ineligible concept" such as an abstract idea. *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). If so, the Court proceeds to step two, which requires the Court "to consider the

8

elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent eligible application." *Id.* (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78–79 (2012)). In that step, the Court searches "for an 'inventive concept'—i.e., an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (alteration in original) (quoting *Mayo*, 566 U.S. at 72–73).

As the patent challenger, Google bears the burden to show by clear and convincing evidence that (1) the asserted claims are directed at an abstract idea, and if so, (2) the claim is devoid of any inventive concept that adds to the abstract idea. *See Alice*, 573 U.S. at 219-227. In this case, Google cannot meet that burden.

### A. The '341 Patent Claims Are Patentable Under *Alice* Step One

As an initial matter, Google's reliance on the *VideoShare I* decision is misplaced because the '341 patent claims are materially different from the '302 patent claims, as shown above and further discussed below. In order to support its baseless argument, Google reduces the '341 patent claims to oversimplified groupings, which eliminate key aspects of the claim language. But this is exactly what the Supreme Court and the Federal Circuit caution against. *See Alice*, 573 U.S. at 217 ("At some level, 'all inventions…embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'"); *McRO, Inc. v. Bandai Namco Games America, Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) (declaring "courts must be careful" in step one of the analysis "to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims."); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) ("[D]escribing the claims at [a] high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to §101 swallow the rule.").

9

Indeed, claim 1, in part, mandates a consideration of compatibility when providing a file for playback:

> the first server system sending the stored first video file or the stored second video file corresponding to the identified video content to the second server system or the second client via the structured hierarchical network ***depending on a compatibility of the second server system or a compatibility of the second client with the first format or the second format***.

'341 patent at 26:4-10 (emphasis added).³ Google distills this entire limitation to simply "sending," and it then lumps together the determination step with the conversion step—completely rewriting the claim since the determination step is tied to the sending limitation. Despite this wordplay, the fact remains that the previously invalidated patents lacked a critical portion of this claim element: "depending on a compatibility of the second server system or a compatibility of the second client with the first format or the second format," i.e., determining which of multiple formats is most compatible with the second client or system which requests video content. Google's oversimplification is readily shown in the following excerpt from its Motion, reproduced below:

| '341 Patent-in-Suit | '302 Patent Held Ineligible in *VideoShare* I | Substantial Similarity |
|---|---|---|
| [1f] the first server system sending the stored first video file or the stored second video file corresponding to the identified video content to the second server system or the second client via the structured hierarchical network depending on a compatibility of the second server system or a compatibility of the second client with the first format or the second format;⁵ and | [1k] transmitting, via a web page, the streaming video file and the advertisement to a second computer on the network. | Both recite transmitting/ sending the video file. |

Dkt. 103 at 5.

---

³In its Section 101 Motion, Google pretends this claim element does not exist. However, Google's noninfringement motion for summary judgment is based ***solely upon this limitation***. *See* Dkt. 99.

10

Based on the excerpt above, it is readily apparent that Google has completely restructured the claim of the '341 patent, essentially treating the determination step as superfluous so as to create the false impression that the claim more closely mirrors the language of the '302 patent claim than it actually does, even though *Google* proposed *that very term* for construction at the outset of this case. *See* Ex. A (Google's Identification of Claim Terms). This begs the obvious question—why bother wasting resources to construe a term that Google believes is meaningless? As discussed below, the determination step is a key element of the claimed invention that improves the fundamental functioning of the computerized system as a whole. In particular, it improves the claimed first server system delivers files in multiple formats specifically optimized for particular given client devices (or server systems), while making more efficient use of network resources in the process.

As stated in the specification, the '341 patent addressed the problems associated with video distribution in the late 1990s and provided a marked improvement over the prior art. '341 patent at 1:24-54; *see also id*. at 1:58–61 (identifying the object of the invention). For example, because networks during the late 1990s had significantly lower bandwidth, and video streaming was not a well-established technology, viewing a video file could take such a long time that users could not enjoy reliable, prompt access to such content. *Id*. at 1:32–45. The inventors confirmed these problems by, for example, describing bandwidth limitations and format incompatibility between existing devices:

REDACTED

11



Ex. B (Boissiere Tr.) at 82:25-83:23(emphases added).



Ex. C (Dodge Tr.) at 29:4-10; *see also* Ex. D (Almeroth Rpt.) ¶¶ 56-57, 125-147, 373-374 (discussing the state of the art and the technological challenges at the time of invention). Thus, the limitation "sending the stored first video file or the stored second video file… depending on a compatibility of the second server system or a compatibility of the second client with the first format or the second format" directly relates to a critical problem the inventors were trying to solve (technological hurdles to distributing streaming video content) and the '341 patent's solution to that problem (sending the stored first or second video file after determining which of the first format or the second format is most compatible with second server system or the second client).

Consistent with the goal of the '341 patent, the claimed invention improved the systems and methods for "sharing video segments over a network, to which video segments a sender of a video segment can attach an advertisement," by ensuring that the ***most compatible*** format is determined in order to optimize both the client's experience and the variety of clients that can receive and view video content and associated advertisements. *See* '341 patent at 1:58-61. As described in the '341 patent specification, users may connect to a video platform using a number of devices such as "a television, a computer, a PDA, a video camera, or a video console [or] also a wireless handheld device such as a PDA or a cellular telephone." *Id*. at 10:42-45. These various devices may all be subject to different restrictions which influence what video files they can play (as in the case of devices which only support a narrow set of codecs), or how large of a file can be delivered and played without

12

excessive buffering (as in the case of devices connected to a slow network). By ensuring that the optimal format is selected, VideoShare's invention improves the performance of a practicing system overall, ensuring that more users can enjoy the system, while providing a high-quality experience with minimal latency.

Quite simply, the claimed invention enables and results in improved system performance, providing a better user experience over prior art systems. '341 patent at 1:24-54. In doing so, it provides a technical solution to a longstanding problem: how to receive and share video over a network while optimizing performance depending on a client device. *Id.* Indeed, inventor testimony confirms that while certain elements may have existed before, the system as a whole was revolutionary. For example, Gad Liwerant describes VideoShare's invention as an " REDACTED ," and he notes that VideoShare garnered attention for innovating in the field of video streaming. Ex. E (Liwerant Tr.) at 43:14-25, 45:16-46:2. Similarly, Guillaume Boissiere testified that he understood the work he and his co-inventors did to be notably novel in the field. Ex. B (Boissiere Tr.) at 72:20-73:5.

Thus, the asserted claims of the '341 patent are directed to specific improvements in computer functionality, which result from a number of technical steps executed by a server in a particular combination in order to yield a novel method for sharing video content with clients worldwide, and not an abstract idea. *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) (declaring claims that "improve the functioning of the computer itself" or "improv[e] an existing technological process" are not directed to abstract ideas, and are therefore patentable.).

Recent caselaw further bolsters VideoShare's opposition to Google's baseless Motion. In *TecSec, Inc. v. Adobe, Inc.*, the Federal Circuit found claims directed to "solving a problem specific to computer data networks" as not directed to an abstract idea because they improved the "basic

13

function of a computer data-distribution network." 978 F.3d 1278, 1297 (Fed. Cir. 2020). While the technological improvements related to specifically data security, the advancements taught by the claims in *TecSec* were focused on "improving such a data network used for broadcasting a file to a large audience," much like the asserted claims. *Id.* Claim 1 of the '341 patent is directed to improving the functionality of a sever system for broadcasting video files over a network to a large audience both by improving its bandwidth efficiency and broadening the range of client devices to which it can serve content. *See e.g.*, '341 patent at 16:42-44; Ex. B (Boissiere Tr.) at 82:25-83:23; Ex. C (Dodge Tr.) at 29:4-10. Like the patent eligible claims in *TecSec*, the '341 patent achieves these improvements by a specific technique: one which presents particular engineering advantages but also presents challenges. Storing multiple versions of the same video content may allow broader access and bandwidth efficiency, but it necessitates greater computing power to perform video file conversion as well as allocation of additional storage to accommodate the various video files created. *See* '341 patent at Fig. 1A (depicting the multiple servers and storage array used to achieve the claimed benefit). Even Google's corporate representative acknowledge the counterbalance of costs and benefits presented by transcoding which "[REDACTED]." Ex. H (Foucu Tr.) at 74:10-12. Far from broadly claiming an abstract idea, as Google contends, the '341 patent provides developers with a specific technical solution to a technical problem to which other solutions, with different associated expenses, exist. *See* Dkt. 103 at 20.

Because the asserted claims are not directed toward an abstract idea but are instead directed to specific improvements in computer functionality which result from a number of technical steps executed by a server in a particular combination in order to yield a novel method for sharing video content with clients worldwide, no further analysis is necessary. *See CardioNet*, 955 F.3d at 1368 ("If

14

the claims are not directed to a patent-ineligible concept under *Alice* step 1, 'the claims satisfy § 101 and [courts] need not proceed to the second step.'"). Google's Section 101 challenge fails step 1 of *Alice*.

### B. The '341 Patent Claims Are Patentable Under *Alice* Step Two

Even if the '341 patent claims were directed toward an abstract idea, which is not the case, the asserted claims contain an inventive concept. Indeed, as the Court previously recognized in this case, an "additional limitation may—individually or in conjunction with the other claim limitations (*i.e.*, 'as an ordered combination' of elements)—'transform the nature of the claim' into a patent-eligible application" and thus, may "provide the inventive concept that transforms the abstract idea in a patentable invention." Dkt. 30 at 12 (internal citations omitted). That is exactly the case here. The limitation "depending on a compatibility of the second server system or a compatibility of the second client with the first format or the second format" represents an inventive concept closely connected to the objective of the claimed invention, as discussed above. Unsurprisingly, Google improperly minimizes this claim element (and in doing so tacitly acknowledges that it is fatal to its Motion) and asks this Court to do the same.

Moreover, Google's analysis and arguments are focused on oversimplified groupings that purportedly encompass the individual limitations of the asserted claims, and none of Google's arguments address the combination of the elements recited in the '341 patent claims, aside from four conclusory sentences. Dkt. 103 at 16 (arguing the sequence of steps is not inventive). That is because Google cannot demonstrate that the combination of elements do not contain an inventive concept. Ample admissible evidence—including expert opinions, inventor testimony, and the patent specification—confirms that the combination of the elements recited in each of the asserted claims was neither routine nor conventional at the time of invention; rather, the '341 patent teaches a novel, non-obvious solution to problems of its era which run contrary to the conventional wisdom and

15

accepted paradigms in the late 1990s. *See, e.g.,* Ex. B (Boissiere Tr.) at 72:20-73:5 [REDACTED] ") (emphasis added); Ex. C (Dodge Tr.) at 233:21-234:5 ( [REDACTED] .); Ex. D (Almeroth Rpt.) ¶¶ 121-124, 151-361, 394-95; Ex. E (Liwerant Tr.) at 161:17-162:6 [REDACTED] ."); Ex. F (Almeroth Tr.) at 166:1-10.

Indeed, the Federal Circuit's ruling in *Berkheimer* further compels denial of Google's Motion. In *Berkheimer*, the Federal Circuit confirmed that "whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact." 881 F.3d at 1368; *see also Aatrix*, 890 F.3d at 1355–56. In *Berkheimer*, the Federal Circuit held that the district court erred in concluding there are no underlying factual questions to the Section 101 inquiry at the summary judgment stage when portions of the specification created a factual issue as to whether the claimed invention was well-understood, routine, and conventional. 881 F.3d at 1369. Similarly, in *Vaporstream, Inc. v. Snap Inc.*, No. 2:17-cv-00220, 2018 WL 1116530, at *6 (C.D. Cal. Feb. 27, 2018), the court noted that competing expert testimony as to whether a claim element is well-understood, routine, and conventional to a skilled artisan in the relevant field is sufficient to preclude summary judgment on the issue. *Id*.

The same result must follow here, because the question of whether the combination of the claimed elements was well-known, routine, and conventional is a material issue of disputed fact. *Compare* Ex. D (Almeroth Rpt.) ¶ 395 [REDACTED]

REDACTED .") (emphasis added), *with* Ex. G (Schonfeld Rpt.) ¶ 205 (" REDACTED

"). The inventors and VideoShare's expert have all provided substantial evidence that the invention of the '341 patent was a revolutionary leap in the field of video streaming—indeed, practicing the patent's combination of steps is what has made YouTube the most successful and profitable video sharing platform in the world. Google can hardly overcome this evidence with nothing more than a contrary and conclusory opinion from its expert.

Google has not established by clear and convincing evidence that the '341 patent claims fail step two the *Alice* inquiry. Its Motion must be denied.

## VI. CONCLUSION

The Court should deny Google's Motion because it is based on a misrepresentation of the claimed invention and the law, and because genuine issues of material fact remain that preclude summary judgment concerning whether the combination of the claimed elements was well-known and conventional when filed.

Dated: September 8, 2021                    Respectfully submitted,

                                            By: */s/ William D. Ellerman*
                                                Charles L. Ainsworth (Texas 00783521)
                                                Robert C. Bunt (Texas 00787165)
                                                PARKER, BUNT & AINSWORTH P.C.
                                                100 E. Ferguson Suite 418
                                                Tyler, Texas 75702
                                                Tel: (903) 531-3535
                                                charley@pbatyler.com
                                                rcbunt@pbatyler.com

                                                Michael W. Shore (Texas 18294915)
                                                Alfonso G. Chan (Texas 24012408)
                                                William D. Ellerman (Texas 24007151)
                                                Ari Rafilson (Texas 24060456)
                                                Halima Shukri Ndai (Texas 24105486)
                                                SHORE CHAN LLP
                                                901 Main Street, Suite 3300
                                                Dallas, Texas 75202
                                                Tel: (214) 593-9110
                                                Fax: (214) 593-9111
                                                mshore@shorechan.com
                                                achan@shorechan.com
                                                wellerman@shorechan.com
                                                arafilson@shorechan.com
                                                hndai@shorechan.com

                                                **COUNSEL FOR PLAINTIFF
                                                VIDEOSHARE, LLC.**

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on September 8, 2021, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

                                            */s/ William D. Ellerman*
                                            William D. Ellerman