# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| VIDEOSHARE, LLC | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION No. 6:19-cv-00663-ADA |
| | § | JURY TRIAL DEMANDED |
| GOOGLE LLC and YOUTUBE, LLC | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE DAMAGES OPINIONS OF MR. STEPHEN HOLZEN UNDER *DAUBERT* AND FEDERAL RULE OF EVIDENCE 702 (DKT. 98)**

███████████████ -i- ███████████████

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ......................................................................................................... 1
II.   MR. HOLZEN'S ALLOCATION OF THE ENTIRE *INCREMENTAL* PROFIT TO LICENSOR IS IMPROPER ....................................................................................... 2
III.  MR. HOLZEN'S ASSESSMENT OF TECHNICAL COMPARABILITY AND MARKET ROYALTY RATE OPINIONS ARE IMPROPER .......................................... 5
IV.  CONCLUSION ............................................................................................................ 7

I.      INTRODUCTION

VideoShare fails to justify in its opposition two irredeemably flawed aspects of Mr. Holzen's report.

First, VideoShare fails to disprove that Mr. Holzen allocates the entire *incremental* profit allegedly obtained from the patented invention to VideoShare, as the hypothetical licensor, in contravention of the Federal Circuit's *VirnetX* decision.  VideoShare attempts to distract from this fundamental error by relying on a series of misleading calculations it calls apportionment. But none of those calculations addresses the issue at hand—Mr. Holzen's failure to explain his allocation of the entire *incremental* profit to VideoShare.  And neither are they apportionment—rather, they are basic steps needed to carve out revenues that VideoShare is not entitled to. Excluding extraterritorial revenues is not apportionment, as VideoShare is not permitted under applicable law to obtain such revenues.  Excluding revenues that flow to content creators in YouTube is not apportionment, as Defendants do not receive that money.  And so on with each attempt, as detailed below.  In short, after Mr. Holzen calculates an incremental profit purportedly attributable to VideoShare's technology, he assigns *all* of it—100%—to VideoShare, without providing a basis for doing so.  Federal Circuit authority confirms this is improper.

Second, VideoShare concedes that Mr. Holzen is not qualified to offer technical comparability opinions.  But it then attempts to rewrite history by claiming that Mr. Holzen set aside Google's licenses on "economic" grounds.  Record evidence disproves this.  Mr. Holzen did not discuss the technical aspects of the ▮▮▮▮ and ▮▮▮▮ licenses with a technical expert before submitting his report and states instead that he relied on his own understanding to "exclude[] from further consideration the Google-produced [license] agreements because it is unclear if the technical aspects of the inventions covered by those agreements are comparable to the technology claimed by the '341 Patent."  Opp. (Dkt. 117) at 15 (quoting Rpt. ¶ 141).

Because he obtained his market approach royalty rate by improperly disregarding Google licenses on technical grounds, that rate should be excluded.

## II.  MR. HOLZEN'S ALLOCATION OF THE ENTIRE *INCREMENTAL* PROFIT TO LICENSOR IS IMPROPER

There is no dispute that for his "income approach," Mr. Holzen calculated his royalty rate by allocating—without explanation—100% of the incremental profits Google obtained from the accused YouTube platform as compared to non-accused Google products to VideoShare, as the hypothetical licensor, and 0% to Google, as the hypothetical licensee.  In its opening brief (Dkt. No. 98 ("Mot.") at 2), Google detailed the formulas Mr. Holzen used that show this allocation, VideoShare does not dispute these formulas, and Mr. Holzen confirmed they were accurate.  *Id.* Ex. B at 77:23–78:2.  These formulas show that Mr. Holzen calculates an "incremental" profit margin as the difference between the profit margin of the allegedly infringing product and a product VideoShare admits does not infringe.  *See id.*  And VideoShare does not even attempt to deny that Mr. Holzen allocated all those incremental profits to VideoShare: "Mr. Holzen . . . chose a royalty rate . . . that isolated the value of the '341 Patent's contributions to YouTube and apportioned only that value *to VideoShare*."  Opp. at 13 (emphasis added).  This is error.  A reasonable royalty is the amount a person would pay as a royalty while still making a reasonable profit.  Mot. at 5.  It would not be reasonable for Defendants to take a patent license while surrendering *all* of the profit allegedly associated with the invention.  *Id.*  The Federal Circuit has rejected such tactics in *VirnetX Inc. v. Cisco Systems, Inc.*, 767 F.3d 1308, 1331 (Fed. Cir. 2014).  Mr. Holzen's opinion plainly violates Federal Circuit precedent.

VideoShare first attempts to justify Mr. Holzen's deficient methodology by comparing its damages request of ▇▇▇▇▇▇ against a supposed YouTube operating profit of ▇▇▇▇▇▇—a number that is wildly misleading and irrelevant.  Opp. at 9-10.  That figure goes beyond the

actual damages period, because it includes the totality of July 2019 to February 2020. Dkt. 98 Ex. A (Holzen Rpt.) ¶ 84. That figure also represents worldwide profit, which necessarily includes profits for which there is no claim to damages for infringement under applicable law. *Id.*; *see* 35 U.S.C. § 271.

Refusing to discuss *VirnetX* and the issue at hand—the impropriety of Mr. Holzen's splitting the *incremental* profit 100/0 in licensor's favor—VideoShare then pursues a red herring regarding Mr. Holzen's purported "numerous levels of apportionment." Opp. at 15. In so doing, VideoShare misdescribes several of Mr. Holzen's calculations as "apportionment." *Id.* at 10-13. But the identified calculations are neither apportionment nor do they change the result under *VirnetX*. These additional calculations are directed to making his primary calculation more accurate, **not** to assigning any portion of the alleged value of the invention back to Google.

First, VideoShare's statement that "Mr. Holzen apportioned 55% of the value of [the] advertising revenue *to Google*" (Opp. at 10) is false. That 55% represents the portion of the total ad revenue that goes **to the content creators, not to Google**. *See* Dkt. 117 Ex. C (Holzen Rpt.) ¶ 74. Google does not see a penny of that amount, and thus Mr. Holzen necessarily subtracts it.

Second, Mr. Holzen's adjustment of Google's YouTube operating profit margin for annualization and seasonality from ▮▮▮ to ▮▮▮ (Opp. at 11) is not apportionment either; it is an adjustment to arrive at an annualized royalty rate. As Mr. Holzen explains, because revenue tends to be higher during the October–December period, he sought to "minimize the effect of seasonality and avoid an upward bias in profitability." Holzen Rpt. ¶ 85. Eliminating such bias is not an "apportionment back to Google."

Third, Mr. Holzen's use of operating margin rather than gross margin is simply accounting for costs, not apportionment. *See* Opp. at 12.

-3-

Fourth, the two income approach methodologies Mr. Holzen uses do not represent an "allocation" of the *incremental* profits back to Google, contrary to VideoShare's assertion (Opp. at 12). Under his "profit-sharing" analysis, Mr. Holzen determines that ▮ of YouTube's profits are additional profits attributable to the alleged invention and assigns *all (100%) of those incremental profits* to VideoShare. Similarly, Mr. Holzen concludes with his "pricing premium" analysis that ▮ of YouTube's profits are additional profits attributable to the alleged invention and assigns *all (100%) of that increment* to VideoShare. As in *VirnetX*, Mr. Holzen's failure to provide a rationale "about how the parties would split those incremental profits"—100/0 under Mr. Holzen's theory—requires excluding his opinions under *Daubert*. *VirnetX*, 767 F.3d at 1331.

Fifth, neither VideoShare nor Mr. Holzen explains how using a "simple" as opposed to a "weighted" average in Mr. Holzen's "pricing premium" analysis has anything to do with distilling patented from non-patented features. (*See* Opp. at 12–13). Notwithstanding Mr. Holzen's lack of explanation for his averaging choice, it does not constitute apportionment.

Finally, Mr. Holzen's choosing the ▮ royalty rate (Opp. at 13) is not apportionment either—that is simply the rate he obtained from his pricing premium calculation, one of his two income approaches at issue in this motion.

With VideoShare's attempts to mislabel its actions as apportionment now laid bare, VideoShare presents no rationale for why Mr. Holzen allocated the entire *incremental* profit to licensor VideoShare when calculating his income approach royalty rates. None of the actions listed by VideoShare provides such a rationale, and VideoShare's cited authority is inapposite. VideoShare cites three cases for the proposition that one can apportion the royalty base, the rate, or both. Opp. at 10. That is neither controversial nor the issue at bar. Nor is there a dispute as

to whether damages can be based on "incremental profit" instead of "incremental value." *Id.* Whether labeled profit or value, Mr. Holzen's opinion is improper because, as the expert in *VirnetX*, Mr. Holzen allocated the incremental profit in a fashion "insufficiently grounded in the specific facts of the case." 767 F.3d at 1331. By splitting the incremental profit 100/0 in the licensor's favor without providing a fact-based rationale, Mr. Holzen's income approach contravenes *VirnetX* and should be excluded.

### III. MR. HOLZEN'S ASSESSMENT OF TECHNICAL COMPARABILITY AND MARKET ROYALTY RATE OPINIONS ARE IMPROPER

Contrary to VideoShare's contention (Opp. at 15), Mr. Holzen opines on **both** economic **and technical** comparability of two Google licenses. VideoShare's statement that "Mr. Holzen offered no opinions in his opening report regarding whether the patents covered by those [████ and ████] licenses were technically comparable to the invention of the '341 Patent" (*id.* at 7) is demonstrably false. What Mr. Holzen wrote in his report is clear and demonstrates he excluded the ████ and ████ licenses based in part on technical comparability:

> ████ "I have reviewed the ████ Licensed Patents and based on that review it is my understanding that these patents relate to processing signals to remove redundant information related to video compression systems
> …
> Based on the above facts and circumstances, I have concluded that the ████ License Agreement does not grant rights that are comparable to the rights that would be granted in the hypothetical negotiation. The ████ Licensed Patents are not in the same patent family as the Patent-in-Suit and it is unclear if the technical aspects of the invention are comparable. For instance, the patented technology covered by the ████ License Agreement does not relate to delivering advertisements with video content over a network."

Holzen Rpt. ¶¶ 121, 123.

> ████ "I reviewed the ████ Licensed Patents and based on that review it is my understanding that these patents relate to selecting content to be presented to viewers.
> …

-5-

> Based on the above facts and circumstances, I have concluded that the ▓▓ License Agreement does not grant rights that are comparable to the rights that would be granted in the hypothetical negotiation.  For instance, it is unclear if the technical aspects of the invention are comparable to the technology covered by the Patent-in-Suit.  The ▓▓ Licensed Patents relate to the selection of content, but not the functionality that enables computers to more efficiently transfer video content, reduce bandwidth necessary downloaded videos, reduce errors that cause playback stoppage when video encoding for the file received cannot be read quickly enough, and delivering advertisements with video content over a network."

*Id.* ¶¶ 124, 126.

Neither in Mr. Holzen's technical discussion in the passages above nor anywhere else in his report does Mr. Holzen provide any other basis for technical comparability other than his own review of the patents.  By discussing the issue and excluding the licenses based on technical comparability, Mr. Holzen is not relying on anything else besides his unqualified opinion.

VideoShare tries to excuse Mr. Holzen's improper technical opinion by arguing that Mr. Holzen met with VideoShare's technical expert Dr. Sarhan *after* submitting his report.  Courts do not permit this trick, reasoning that "an expert may not reach his conclusion first and do the research later." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 550 (S.D.N.Y. 2004) (citing cases).  Mr. Holzen cannot justify his unsupported opinion by pointing to later conversations.  *See* Fed. R. Civ. P. 26(a)(2)(B)(i) (expert report "must contain a complete statement of all opinions the witness will express and the basis and reasons for them"); *Wills v. Amerada Hess Corp.*, 98 Civ. 7126 (RPP), 2002 U.S. Dist. LEXIS 1546, at *29 (S.D.N.Y. Jan. 31, 2002) (excluding expert opinion and noting that "[t]he paucity of support for [expert's] opinion in his . . . [r]eport demonstrates that [expert] was ready to form a conclusion first, without any basis, and then try to justify it").

First, Mr. Holzen's result-driven methodology showcases its unreliable and prejudicial nature.  In his analysis, Mr. Holzen relies on Dr. Sarhan to *include* the licenses that VideoShare claims are technically comparable (Dkt. 98 Ex. B (Holzen Dep. Tr.) at 188:14–18), yet he

*excludes* licenses produced by Google based only on his non-expert say-so without even discussing them with Dr. Sarhan. *Id.* at 142:2–143:6, 148:23–149:11.

Second, nowhere in his deposition did Mr. Holzen say that Dr. Sarhan told him the licenses were *not* comparable. The excerpts VideoShare cites simply state that Mr. Holzen discussed the licenses (Dkt. 117 Ex. D (Holzen Dep. Tr.) at 12:22–25) and their "technical comparability" after Mr. Holzen submitted his report. *Id.* at 143:2–6. But even if that discussion took place, it would not matter, as nowhere in Dr. Sarhan's report did he offer any opinions at any point regarding whether or not the ▓▓▓ and ▓▓▓ licenses are or are not comparable, or the reasons for that conclusion. Thus, there remains no basis for Mr. Holzen to exclude the ▓▓▓ or ▓▓▓ licenses based on any purported lack of technical comparability.

In line with VideoShare's statement that "Mr. Holzen offers no opinions on the technical comparability of the patent license agreements produced by Google" (Opp. at 15), Mr. Holzen should not be allowed to testify at trial regarding the technical comparability of the Google licenses—an issue to which VideoShare should have no objection, given its response position. And given that Mr. Holzen obtained his rate by excluding the two Google licenses as not comparable, Mr. Holzen's market royalty rate is unreliable and must also be excluded. *Id.*

## IV. CONCLUSION

For the foregoing reasons, Defendants' *Daubert* motion should be granted in its entirety.

Dated: September 15, 2021

/s/ Luann L. Simmons

J. Mark Mann
State Bar No. 12926150
G. Blake Thompson
State Bar No. 24042033
MANN | TINDEL | THOMPSON
300 West Main Street

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Henderson, Texas 75652
(903) 657-8540
(903) 657-6003 (fax)

Luann L. Simmons (*Pro Hac Vice*)
lsimmons@omm.com
David S. Almeling (*Pro Hac Vice*)
dalmeling@omm.com
Bradley N. Garcia (*Pro Hac Vice*)
bgarcia@omm.com
Bill Trac (*Pro Hac Vice*)
btrac@omm.com
Amy K. Liang (*Pro Hac Vice*)
aliang@omm.com
Sorin G. Zaharia (*Pro Hac Vice*)
szaharia@omm.com
Daniel Silverman (*Pro Hac Vice*)
dsilverman@omm.com
**O'MELVENY & MYERS LLP**
Two Embarcadero Center
28th Floor
San Francisco, CA 94111-3823
Telephone: 415-984-8700
Facsimile: 415-984-8701

*Attorneys for Defendants Google LLC and YouTube, LLC*

## **CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on September 15, 2021, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

                                                     */s/ Luann L. Simmons*
                                                    Luann L. Simmons