# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | |
|---|---|
| VIDEOSHARE, LLC,<br><br>Plaintiff,<br>v.<br><br>GOOGLE LLC and<br>YOUTUBE, LLC,<br><br>Defendants. | CIVIL ACTION NO. 6:19-CV-00663-ADA<br><br><br>JURY TRIAL DEMANDED<br><br>████████████████ |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTIONS *IN LIMINE*

Plaintiff VideoShare, LLC ("VideoShare") files its Response to Defendants Google LLC and YouTube, LLC's (collectively "Google" or "Defendants") Motions *in Limine* ("Motion"). Most of Google's issues should be addressed, if at all, in limiting instructions or the jury instructions.

**A.     Defendants' Disputed MIL 1: Exclude testimony, argument, evidence, or reference to the "clear and convincing" standard as applied under the Texas Family Code.**

Google's arguments relating to juror confusion are overblown. First, comparison of the standard of proof under 35 U.S.C. § 282 to the Texas Family Code is factually accurate because both make use of the "clear and convincing" standard consistently. *See* Tex. Fam. Code § 101.007 ("'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."); Tex. Fam. Code § 161.001(b) (requiring elements be established by clear and convincing evidence to terminate a parent-child relationship).

Furthermore, any reference to the Texas Family Code itself is unnecessary. The use of examples of when the clear and convincing evidence standard applies will aid the jury in understanding the place on the spectrum of certainty "clear and convincing" occupies between a preponderance and beyond reasonable doubt. It is commonly accepted in civil cases that the jury may be instructed that the burden of proof is *not* the "beyond a reasonable doubt" standard the jurors may be familiar with from other contexts. Reference to the clear and convincing standard being used to involuntarily commit a person to a psychiatric hospital, place a person into a conservatorship, remove a child from parental custody, or similar contexts conveys to the jury the weight of the burden in a way to which jurors can relate.

**B.     Defendants' Disputed MIL 2: Exclude evidence, testimony, argument, or reference to expert opinions and analysis that goes beyond an expert's report served in this case, including documents cited, but not analyzed in the expert's report.**

Google's Motion makes cross-examination an exercise in arguing over the content of an

expert report. There is a lot more to a good cross-examination. Documents regarding what an expert failed to analyze goes to the soundness of the factual foundation of an expert's opinions. Documents used on cross-examination often go into impeaching the expert on materials they excluded from their analysis, which necessarily are not going to be in their reports.

As to direct examinations, the limitation is nonsensical and should be denied because it attempts to exploit general practices regarding how source code is written to improperly restrict VideoShare's ability to discuss how YouTube works. It would be absurd to preclude a plaintiff from referring to parts of a machine not specifically referenced in an analysis and insist that those parts be hidden from the jury's view—the resulting assembly would be confusing to jurors and difficult to understand without reference to a hidden portion. This concern is amplified in the context of software because code often depends on functionality packaged away in one or more other source files which are included by reference. Google's Motion asks the Court to punish plaintiffs for zeroing in on the most relevant, smoking-gun lines in the YouTube codebase.

VideoShare does not intend to unnecessarily explore the depths of YouTube's codebase. Nonetheless, Google has gone to great lengths to mischaracterize the small portion of material (485 pages) upon which VideoShare intends to rely at trial. *See* Dkt. 156 at 2. But this set of materials must be placed into perspective with the volume of source code Google produced. VideoShare's expert reviewed over ***thirteen thousand*** files, many consisting of multiple pages, and reduced those to a mere 485 pages spread across 42 total files, a nearly 99.7% reduction from the initial list.

VideoShare should be free to reference documents which show the actual inner workings of YouTube because VideoShare's expert has reviewed the entirety of the produced source code, and whether or not he cites to each file in that code, he does rely on all of the code reviewed to draw his conclusions—just as the cited source code files depend on the rest of the source code files. VideoShare

would be prejudiced were this Court to further limit the realm of available material for trial.

**C.     Defendants' Disputed MIL 3: Exclude any testimony or arguments that are contrary to the Court's Claim Construction Order.**

Google's Motion is essentially a motion to strike or a motion for summary judgment of noninfringement. To the extent Google's Motion overlaps issues it raises in its motion for summary judgment of noninfringement (Dkt. 99), this Motion is unnecessary.

VideoShare further notes that in Google's motion for summary judgment, Google makes an argument that is clearly contrary to this Court's claim construction: "The Court's construction requires a comparison of *which of those two files is most compatible* . . . ." Dkt. 99 at 8 (emphasis added). But the Court rejected Google's argument during claim construction and instead held that a file must be sent after determining *which of* the *first or second format* is most compatible with a client device, as opposed to whether the *first or second file* is most compatible.

| Claim Term | Videoshare's Proposed Construction | Google & YouTube's Proposed Construction | Court's Preliminary Construction |
|---|---|---|---|
| "depending on a compatibility of the second server system or a compatibility of the second client with the first format or the second format" | "by selecting one of a first format or second format based on the software, hardware, and/or network capability of the second server system and/or the software, hardware, and/or network capability of the second client" | "after determining which of the first video file or second video file is most compatible with the second server system or the second client" | "after determining which of the first format or second format is most compatible with the second server system or the second client" |

Dkt. 69 at 2 (emphases added).

Google's Motion is based on its mistaken premise that "VideoShare's technical expert … testified that his infringement opinion rested on an interpretation of this claim limitation that directly contradicts [the Court's] construction." This is doubly wrong because in his cited testimony, Dr. Sarhan testifies only as to his understanding of the term, not how that affects his infringement read.

3

Moreover, Google has not established that Dr. Sarhan's expert opinion is inconsistent with the Court's construction. That construction is presented below, along with select portions of Claim 1:

1.   A method for sharing video over a structured hierarchical network comprising:

a first server system receiving a **first video file in a first format** from a first client …

the first server system **creating a second video file in a second format** by converting at least a portion of the first video file from the first format to the second format …

the first server system sending the stored first video file or the stored second video file corresponding to the identified video content to the second server system or the second client via the structured hierarchical network

**depending on a compatibility of the second server system or a compatibility of the second client with the first format or the second format**

**[Court's construction: after determining which of the first format or the second format is most compatible with the second server system or the second client]** …

(emphases added).

The Court's construction requires sending a first or second file after determining which format (the first or second format) is most compatible. Importantly, both the claim language and the Court's construction use the term "*or*." The claim states that a file is sent to a client depending on a compatibility of a client (or server) with the first format *or* second format. Similarly, the Court's construction requires sending (or streaming) a file "after determining which of the first format *or* the second format" is most compatible. Thus, the claim limitation is met based on a determination that the ***second file is in the most compatible format*** for the client. So long as the second file is in the most compatible format, the limitation is satisfied.

The Court's construction does not recite "after determining which of the first format ***and*** the second format is most compatible" with the second client (or server). Yet on the eve of trial, Google urges the Court to adopt this very construction, or to adopt its prior rejected construction, as described above (Dkt. 99 at 8).

Google's revised construction is further at odds with the specification. Figure 6C shows a case in which transcoding occurs solely on a first client. More specifically, the user creates an initial video

4

file. That file is never streamed and is instead converted or transcoded into three files, each having its own format that is "optimally configured for [a] user's hardware." '341 Patent 20:18-22. Because each of these files is created on a client, each is a "first video file," each in its own format. *See* Claim 1 (reciting "a first video file in a first format ***from a first client***") (emphasis added).

Claim 1 differs from Figure 6C in that Claim 1 requires that the conversion (or transcoding) occurs ***on the server***. '341 Patent Claim 1 (reciting "the first server system creating a second video file in a second format by converting at least a portion of the first video file …"). Consistent with this, the patent teaches that conversion to streaming video formats "can be accomplished at the host computer." '341 Patent 19:4-8. In such a case, using the example from Figure 6C, the initial video file (a "first video file in a first format") would be uploaded but would never be streamed, as it was not optimized for streaming. Instead, three transcoded files would be created on the server (each a separate "second video file in a second format"). One of those files would be streamed to a particular client depending upon which is in a format that is most compatible with the client device. The uploaded file used to create those transcodes (the "first video file") is never streamed and is in fact not optimized for streaming to a device. VideoShare should not be precluded from arguing, as Dr. Sarhan has done, that a selection among files optimized for viewing on different devices infringes. Indeed, Dr. Sarhan explained during his deposition that his understanding of the claim term is based on both the Court's construction and the specification.

> Like in this Figure 6C, which refers to a certain embodiment, it only has -- like it actually in this case -- like it actually needs to compare just these three bandwidth levels with the one that's actually by the client, and then select one of these three which is most suitable to the client. …
>
> I've thought about it a lot, and the understanding that I'm like telling you is based on like the totality, how I can harmonize everything together. We have the specification, which speaks of different embodiments. We have a certain criteria in the claim, like we have the claim language and that aspect. We have the Court construction, so I considered everything and tried to harmonize everything together, and technically, this is the only way it would actually make sense for me.

5

Ex. 1 (Sarhan Tr.) at 98:15-25; 98:25-99:11.[1]

**D.      Defendants' Disputed MIL 4: Exclude fact/lay witnesses from offering opinions regarding whether or not any accused product or asserted prior art reference reads on the asserted claims.**

VideoShare only opposes this Motion to the extent it limits a witness from responding to a question on cross-examination that invites or "opens the door" to such opinion testimony.

**E.      Defendants' Disputed MILs 5 and 6:**

1.   **MIL 5: Exclude testimony, argument, evidence, or reference relating to (a) any claims, causes of action, defenses, or forms of relief previously asserted in this action that have been dismissed, abandoned, or dropped, including to the fact of any such claim's withdrawal/exclusion or that it was previously asserted.**

2.   **MIL 6: Exclude testimony, argument, evidence, or reference to (a) VideoShare withdrawing or narrowing the claims of the patent-in-suit asserted against Defendants; (b) any suggestion that Defendants infringe any non-asserted patent claim; or (c) Defendants withdrawing or narrowing the asserted prior art references.**

Google's MILs 5 and 6 are misleading, overbroad, and not based in fact. First, the parties have an agreed MIL directly on point with respect to VideoShare's withdrawn indirect infringement claim. *See* Ex. 2 (agreed MIL No. 9 "exclude[ing] evidence, testimony, argument, or reference regarding alleged ***indirect infringement***.") (emphasis added). Based on that agreement, VideoShare has no intention of reclaiming indirect infringement in this case. Nor does VideoShare intend to assert unelected patent claims at trial. The simple fact is that because only one patent and six (6) claims are at issue, the number has remained unchanged throughout this case: claims 1, 3, 4, 5, 6, and 7. *Compare* Dkt. 1, *with* Dkt. 96. As such, Google's Motion is baseless.

Second, as addressed in VideoShare's MIL No. 6, which seeks to "exclude references to any prior art not specifically listed in the parties' joint report filed on August 20, 2021 (Dkt. 96)," ***it is Google (and not VideoShare)*** that refuses to agree to withdrawn claims and defenses. Indeed,

---

[1] All exhibits cited herein are attached to the declaration of Halima Shukri Ndai filed concurrently herewith.

VideoShare's motion asks this Court to hold Google to its word with respect to withdrawn prior art. As Google admits and clearly recognizes, "arguments and evidence about … unelected … prior art or other defenses not asserted at trial would serve only to confuse the jury and inject side issues into the trial. Fed. R. Evid. 402, 403." Dkt. 156 at 6. Thus, Google's own Motion supports granting VideoShare's MIL No. 6. This Court should reject Google's attempt at misdirection and limit Google to the prior art references specifically identified in the parties' Joint Report (Dkt. 96).

Third, aside from indirect infringement and the reduced prior art, Google fails to specifically identify or substantively discuss the "claims, causes of action, defenses, or forms of relief" that it asserts have been "dismissed, abandoned, or dropped." Because Google cannot even articulate with specificity what it seeks to exclude, VideoShare cannot blindly agree. To the extent Google is attempting to limit cross-examination of an expert who opined certain art was invalidating, but Google abandoned such art, it is fair game to point out that Google did not have enough faith in its expert's views on prior art to even offer them to the jury.

## F.    Defendants' Disputed MIL 7: Exclude evidence, testimony, argument, or reference relating to the filing of or this Court's ruling on any pre-trial motions, including the fact that this Court denied a party's motion to dismiss, motion for summary judgment, Daubert motion, motion to strike, motion *in limine*, or other motion.

VideoShare has moved to exclude evidence relating to any prior litigation involving VideoShare. *See* Dkt. 157 at MIL No. 1. Google has refused to agree to exclude this evidence. To the extent Google seeks to introduce evidence relating to any prior litigation, including any determinations relating to validity of patents asserted in those litigations, it is necessary for VideoShare to explain to the jury the differences between the patents asserted in prior litigation and the '341 Patent; including this Court's determination that validity determinations relating to the previously asserted patents are not preclusive upon the '341 Patent.

There is another independent reason why this testimony is relevant. Google's economic expert

████████████████████████

repeatedly states that Google could have designed around the '341 Patent for ████ and that a reasonable royalty would be ████████████. It is probative that Google has literally spent millions of dollars to litigate a case it claims it could have entirely avoided for ████. The fact that Google has expended such resources is certainly relevant in the cross-examination of an expert who claims the worst-case scenario for Google to avoid all liability is a ████ design around.

To the extent the Court grants VideoShare's MIL No. 1, VideoShare will withdraw the Order denying Defendants' Motion to Dismiss Based on Claim Preclusion (P067) from its exhibit list.

## G.   Defendants' Disputed MIL 8: Exclude evidence, testimony, argument, or references to IPRs and/or CBMs filed by Defendants against the '341 Patent, including any PTO decisions regarding those filings.

Citing generic *in limine* orders from various cases, Google argues that any evidence regarding the IPR and CBM proceedings that it filed against the '341 Patent should be excluded as a matter of course. However, this case is not like any of those cases—here, Google's IPR proceeding is highly relevant for at least two reasons. First, Google has challenged VideoShare's ownership of the '341 Patent, despite never filing a motion contesting VideoShare's standing. But when it filed its IPR and CBM petitions against the '341 Patent, Google had no problem whatsoever identifying VideoShare as the patent owner. Indeed, Google identified VideoShare as the "Patent Owner" in its IPR Petition, it served VideoShare as the "Patent Owner" through its counsel of record, and it referred to VideoShare as the "Patent Owner" at least 26 times in the IPR Petition. *See, e.g.,* Ex. 3 (IPR Petition) at 1. And that was by necessity—Title 35, which provides the IPR framework, explicitly ***requires participation by the "patent owner."*** For example, 35 U.S.C. § 312(a)(5) requires the petitioner to provide a copy of the petition and other documents "to the patent owner," and the remaining provisions of that section require participation of the patent owner in numerous aspects of the proceedings. *Id.* at §§ 313-316. Google cannot identify VideoShare as the patent owner when it furthers Google's goal of prosecuting an IPR, and then pretend that VideoShare is not the patent

owner in this lawsuit. Google's admissions in the IPR regarding VideoShare's ownership are critically relevant in this lawsuit.

The second reason the IPR is relevant to this case is that Google's own expert has made it relevant. Although Google's MIL acknowledges that one of the references at issue in the IPR (the Mohan reference) is also at issue in this case, Google neglects to inform the Court that its own technical expert in this case *relies on the PTAB's institution decision to support his opinions regarding that reference*. Specifically, in his report, Google's expert states the following: "I further believe that the PTAB's finding that Mohan had the goal of 'modifying web content for specific devices' supports my opinion and understanding that Mohan teaches storing content in multiple formats and serving files in different formats depending on the capabilities of the requesting device." Ex. 4 (Schonfeld Report) ¶ 664. Google's own expert has thus directly injected the PTAB's institution decision into this case by specifically relying on it, and VideoShare is absolutely entitled to cross-examine him at trial regarding how that decision allegedly supports his opinions. *See* Fed. R. Evid. 705. Contrary to Google's assertions, VideoShare (not Google) would be severely prejudiced if evidence regarding the IPR is excluded.

Further, Google's expert on economics can be cross-examined on why she depended entirely on Google's expert as to the '341 Patent's invalidity and limited scope and did not consider the IPR claims construction scope, the outcome of the IPR or the fact that Google spent hundreds of thousands of dollars on an IPR when it supposedly could have designed around the '341 Patent for ███████ with a software patch so simple it would only take ██████ to complete, test and install.

**H.    Defendants' Disputed MIL 9: Exclude any testimony, argument, evidence, or suggestion that Alphabet, Google, and/or YouTube undermine the patent system, do not respect patent rights, or otherwise engage in a pattern of alleged misconduct relating to patents or intellectual property.**

First, as a threshold matter, Google's Motion is overly broad. As phrased, this Motion could

exclude substantial testimony regarding Google's intellectual property, patent clearance, and licensing policies that are relevant to understanding Google's positions in a hypothetical negotiation. Google's past patent practices are relevant to a hypothetical negotiation.

Furthermore, Google's plan to disrespect patent rights supports VideoShare's claim of willful infringement. "The rules of patent infringement are rules of business ethics, and require prudent commercial actions in accordance with law. . . . The tort of willful infringement arises upon deliberate disregard for the property rights of the patentee." *Vulcan Eng'g Co., Inc. v. Fata Aluminium, Inc.*, 278 F.3d 1366, 1378 (Fed. Cir. 2002). Testimony from Google's James Maccoun shows that Google has



Ex. 5 (Maccoun Tr.) at 93:25–95:17. A disregard for the patent rights of others or failure to undertake competent patent due diligence prior to launching a new product may support willful infringement. *See Kaufman Co., Inc. v. Lantech, Inc.*, 807 F.2d 970, 979 (Fed. Cir. 1986) (finding willful infringement when an infringer's president stated "that he would copy any machine that his customers

10

requested, regardless of whether or not a patent was issued"); *Minnesota Min. & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1580 (Fed. Cir. 1992) (explaining an infringer's duty to obtain competent legal advice before infringing or continuing to infringe).

Furthermore, evidence of Google's past patent practices is a permitted use of character evidence because it shows a plan and intent to disrespect patent rights, which is relevant to determining willful infringement. *See* Fed. R. Evid. 404(b)(2); *Gustafson, Inc. v. Intersystems Indus. Products, Inc.*, 897 F.2d 508, 510–11 (Fed. Cir. 1990) ("Whether an act is 'willful' is by definition a question of the actor's intent, the answer to which must be inferred from all the circumstances.").

## I.     Defendants' Disputed MIL 10: Exclude any testimony, argument, evidence, or reference to Defendants' proposed noninfringing alternative as infringing the '341 Patent.

Claim 1 of the '341 Patent requires "the first server system creating a second video file in a second format by converting at least a portion of the first video file from the first format to the second format, independent from receiving a command from the first client to perform such conversion." Claim 1, '341 Patent (emphasis added). Google's supposed "noninfringing alternative" amounts to a modification in which YouTube's transcoding processes are made dependent on a "command." *See* Ex. 4 (Schonfeld Rpt.) ¶ 724 ("[S]ystem that functions exactly the same as the Accused Product, except that it only converts the uploaded video file from the original to a different format upon receiving a command from the uploading client to perform the conversion"). Since the modification is defined as a logical contradiction of a claimed step, it would necessarily not practice Claim 1. However, to the extent that Google has characterized such a modification as simple, or practical, VideoShare maintains that Google is describing a different modification entirely—one which is a perfunctory exchange of signals that carry no "command."

VideoShare's expert made this deficiency clear in his Rebuttal Expert Report, which Google's Motion ignores. *See* Ex. 6 (Sarhan Rebuttal Rpt.) ¶ 7 ("[I]f the command is to always perform

11

transcoding, includes no parameters, and this command happens to be issued every time without fail, then it is not really a command at all"). During his deposition, VideoShare's expert further explained that "a command is a request, a request like to do something, and the request should carry some information that the server does not know about before." Ex. 1 (Sarhan Tr.) at 83:10-12; *see generally id.* at 82:15-92:13 (discussing commands at length).

Because VideoShare disputes that Google's noninfringing alternative either (1) is actually noninfringing, or (2) could serve as a practical alternative to YouTube's currently-infringing functionality, Google's Motion should be denied.

**J.      Defendants' Disputed MIL 11: Exclude any testimony, argument, evidence, or reference to any revenues or profits earned by YouTube outside of the United States.**

Google's sole basis for this MIL is that because the patent infringement statute imposes liability only for infringement "within the United States," VideoShare should be precluded from making any references to YouTube's worldwide revenues. Dkt. 156 at 10. But avoiding references to YouTube's global revenues is impossible because the financial documents that Google produced in this case are **based upon YouTube's worldwide revenues**. *See, e.g.*, Ex. 7 (GOOG-VS-00039836); Ex. 8 (June 23, 2021 email from Bill Trac) (confirming that Google's YouTube P&Ls "represent worldwide numbers"). These documents form the basis of VideoShare's damages expert's reasonable royalty calculation, and therefore cannot be excluded from evidence in this case. If Google was afraid of disclosing YouTube's worldwide revenues, then it should have produced documents limited to U.S. revenues (which would have also made VideoShare's expert's job easier). But for whatever reason, it chose not to. Google's expert also relies upon Google's SEC filings and other materials that reference global revenue. Accordingly, this MIL must be denied.[2]

---

[2] If Google wants to include a jury instruction limiting consideration of damages to U.S. revenues, VideoShare will not object.

**K.     Defendants' Disputed MIL 12: Exclude testimony, argument, evidence, or reference to Stephen Holzen testifying regarding conversations with other experts that were not relied upon in creating his report.**

This MIL must be denied because it would have the effect of preventing VideoShare's damages expert from responding to the rebuttal opinions of Google's damages expert. On July 2, 2021, VideoShare served the report of its damages expert, Stephen Holzen. On July 30, Google served the rebuttal report of its expert, Lauren Kindler. In her rebuttal report, Ms. Kindler offered opinions that two prior Google license agreements (out of the many that Google produced in discovery) were technically comparable to the hypothetical license at issue in this case.

The Court's Scheduling Order includes no provision for reply expert reports; therefore, any responses or counter-rebuttals by Mr. Holzen to Ms. Kindler's report must have been adduced during his deposition. After receipt of Ms. Kindler's report, and prior to his deposition, Mr. Holzen had a conversation with VideoShare's technical expert to discuss the technical comparability (or lack thereof) of the two Google licenses identified by Ms. Kindler. During his August 13, 2021 deposition, Google's counsel asked Mr. Holzen about that conversation:

> Q. Other than your staff and counsel, did you speak with anyone besides Mr. Sarhan?
> A. I spoke with just Dr. Sarhan in preparation for this deposition.
> …
> Q. What did you discuss with him?
> A. We discussed Ms. Kindler's proposed design-around. We discussed *the* ▮▮▮▮▮ *patent license* that was entered into with Google, plus ***the*** ▮▮▮▮▮ *patent license* in particular, those underlying patents. And we also discussed the point raised by Ms. Kindler in her report as it relates to international processing of data.

Ex. 9 (Holzen Tr.) at 12:13-14:2 (emphases added). Google's counsel then asked ***no follow-up questions*** regarding that topic. Later in the deposition, the subject came up yet again:

> Q. What did [Dr. Sarhan] tell you during that conversation before you submitted your expert report? ***And to be clear, I'm separating this from the recent conversation that you had*** with Mr. Sarhan [about the two license agreements]?
> A. It was about the scope of the patent, what does it cover, the technical aspects of the patent ….

*Id*. at 40:11-19 (emphasis added).

As is clearly apparent, Google's counsel consciously chose not to explore Mr. Holzen's pre-deposition conversation with Dr. Sarhan, even going so far as to specifically instruct Mr. Holzen to exclude the substance of that conversation from his answers. The Court should not condone what is essentially a manufactured ground for exclusion of evidence—Google had full disclosure of Mr. Holzen's conversation with Dr. Sarhan, yet deliberately chose not to discover the substance of it. And in any event, Mr. Holzen cannot be precluded from hearing testimony at trial (including Dr. Sarhan's testimony regarding the lack of technical comparability of Google's licenses) and then using that testimony to support his rebuttals of Ms. Kindler's opinions. This MIL must be denied.

**L.     Defendants' Disputed MIL 13: Exclude evidence, testimony, argument, or reference relating to Alphabet, Google, and/or YouTube's overall revenues or profits or implied or express suggestion that sought damages are relatively small compared to Alphabet, Google, and/or YouTube's overall revenues or profits.**

This MIL should be denied for the same reasons Google's MIL No. 11 should be denied. Because Google produced only worldwide revenue numbers for YouTube, and because VideoShare's damages expert had to use those figures as the basis for his reasonable royalty analysis, they cannot be excluded, which this MIL would require. Additionally, VideoShare's damages expert relied upon public documents, including Alphabet's Form 10-K for the years 2017 through 2020, as well as an Alphabet Q1 2021 Earnings Call. *See* Ex. 10 (Holzen Report, Ex. B). Similarly, Google's own damages expert relies upon Alphabet's Form 10-K for the years of 2019 and 2020, and she also relies upon multiple Google Earnings Conference Calls in her report. *See* Ex. 11 (Kindler Report, Appendix B). Attempting to shield the jury from hearing any references to Alphabet's, Google's, and/or YouTube's overall revenues or profits is a practical impossibility here.

Google's economic expert also uses the fact that VideoShare did not have a competing product or successful commercial business as a reason to reduce the reasonable royalty rate. The size

of Google and YouTube go directly to this issue. To develop a competing product in the months the '341 Patent was in force would have required hundreds of millions in investment and sustained losses of billions of dollars to take on the behemoths that control 90% or more of the relevant markets addressed. Google's economist implicitly, perhaps expressly, states that VideoShare was not commercially successful because its technology was not valuable or competitive. If she is going to be allowed to make that argument, she should be subjected on cross-examination regarding all of the other factors that would keep VideoShare (or any other nascent competitor) from being able to meaningfully compete against a company that has revenues during the relevant period of $15 billion and a parent company that reported over $150 billion in revenue.

Similarly, it is impossible to avoid the fact that VideoShare's claimed damages are miniscule in the grand scheme of Google's overall revenues. Google's size and its profitability are simply inescapable facts that the jury will undoubtedly be aware of. Neither VideoShare nor the jury should be forced to pretend otherwise.

**M.      Defendants' Disputed MIL 14: Exclude evidence, testimony, argument, or reference relating to the amount Google paid to acquire YouTube.**

This MIL should be denied. Google's argument that neither party's damages expert relies on this fact in computing damages is misleading. While Plaintiff's expert does not expressly rely on the purchase price in calculating royalties, he cites it four times as background for his opinions. Ex. 12 (Holzen Report) ¶¶ 35, 48, 155, 168.

Google argues that YouTube has other subscription products, such as YouTube Premium, YouTube Music, and YouTube TV. But those products are wholly irrelevant to the purchase price as they were not even introduced until several years *after* Google acquired YouTube. Ex. 13 (stating YouTube Premium was launched in 2018 and its first paid subscription service was offered in 2015); Ex. 14 (stating YouTube Music launched in 2018); Ex. 15 (stating YouTube TV launched in 2017).

15

Google also argues that it did not introduce advertisements, which are required by the claims of the '341 Patent, until a year after Google acquired YouTube. Thus, it argues that the acquisition "has no relationship to the issues in this case." That is nonsense, as Google repeatedly justified its acquisition of YouTube based on the potential for billions in annual advertising revenue. Google's introduction of advertisements made it more, not less valuable. The purchase price provides helpful insight into the value Google placed on its entry into the video streaming business and what it planned from the outset to do -- make billions through advertising on YouTube in a manner that evidence will show directly infringes the '341 Patent.

**N.    Defendants' Disputed MILs 15-16**

1.   **MIL 15: Exclude testimony, argument, or reference to document retention policies, or the fact that a party delayed in its production of documents and things during the discovery process, or otherwise failed to meet its discovery obligations in this case.**

2.   **MIL 16: Exclude evidence, testimony, argument, or reference relating to any discovery dispute between the parties during this case, including either party's positions and the Court's rulings on any dispute.**

From the outset of this case, Google was obligated to produce technical and financial documents pursuant to the Court's Order Governing Proceedings (Dkt. 31). However, on July 17, 2020, Google produced only two (2) financial documents[3] even though the Court's Order required production of "summary, annual sales information for the accused product(s) for the prior two years." Dkt. 31 at 1-2. Further, although the Court's Order specifically provided that for "expired patents, the sales information shall be provided for the ***two years preceding expiration***," the two documents that Google produced were limited to July 2019 to February 2020. *Id.* at 2 (emphasis added). Google refused to supplement that production until after numerous discovery requests and conferences, and it did not produce key financial documents until June 17, 2021—***the day before*** VideoShare deposed

---

[3] GOOG-VS-00001171 (worldwide core business financials for July 2019 to February 2020) and GOOG-VS-00001172 (YouTube financials geographic breakdown). *See* Exs. 16 & 17.

Google's corporate representative on financial issues. The additional documents slightly broadened the relevant period to January 2019 to February 2020, but the figures contained in the documents for the overlapping time period (July 2019 to February 2020) contained material discrepancies.

Despite the discovery delays and obstruction, Google has sought to disparage the documents it has produced in this case. For example, Google's corporate representatives stated that ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See, e.g.*, Ex. 18

(Cook. Tr.) at 56:19-59:2. Moreover, as shown below, Google's damages expert even criticized VideoShare's damages expert for relying on the financial documents Google produced to satisfy its obligation under the Court's Order:



Ex. 19 (Kindler Report) ¶ 110(b).

In light of the opinions of Google's damages expert regarding the financial records that VideoShare's damages expert relies on and the deposition testimony of Google's corporate representatives concerning the technical documents that VideoShare's infringement expert relies on, Google's MIL 15 and 16 must be denied. Defendants should not be allowed to obstruct discovery and then use their obstruction to attack the basis of opposing experts' opinions.

**O.      Defendants' Disputed MIL 17: Exclude evidence, testimony, or argument that Defendants' continued offering of YouTube after being sued by VideoShare constitutes willful infringement.**

First, as a threshold matter, VideoShare contends that Google was placed on notice of the '341 Patent and its alleged infringement on November 1, 2019, when it received VideoShare's notice letter. *See* Ex. 20. Accordingly, VideoShare alleges all infringement after November 1, 2019 was willful, especially when it could have been avoided, per Google, for ███████ Inherently, part of this period includes time *after* Google was sued for patent infringement. Google's Motion seeks to exclude evidence that Google continued infringing after it was placed on notice of its infringement through the November 1, 2019 notice letter.

Furthermore, continuing infringement during the course of an infringement suit can support a finding of willful infringement when the infringer has failed to show that it investigated the patent in good faith or failed to present plausible defenses during the case, to support a contention that it held a good faith belief during the case that its conduct was justified. *EagleView Techs., Inc. v. Xactware Sols., Inc.*, 522 F. Supp. 3d 40, 53 (D.N.J. 2021).

**P.      Defendants' Disputed MIL 18: Exclude testimony, argument, evidence, or reference to the number of attorneys (or personnel) representing any party, the size of any firm, and/or counsel's geographic origin. This exclusion does not apply to questions in the juror questionnaire and voir dire about whether the jurors know the attorneys or law firms.**

Google cannot have it both ways. Just weeks ago in the *Profectus Technology LLC v. Google LLC* trial, during opening statements, Google's counsel introduced himself and co-counsel ***including identifying his and co-counsel's current and previous locations of residence, their marital status, and how many children they have***. *See* Ex. 21 (Profectus Trial Tr.) at 11:18–12:19. Google's own contradictory conduct alone should be enough reason to deny this Motion.

Moreover, courts routinely allow counsel to engage in basic trial advocacy to form a personal connection with jurors. This includes introducing themselves and providing basic background

information about themselves, including place of origin. Google cannot identify any reason that such basic foundational information about counsel or their firms would prejudice jurors. And again, how much Google is spending to defend the suit, the number of lawyers it has hired, and the size of the parties goes to discredit its experts' █████ work around opinion, helps emphasize failures by Google to hire truly qualified experts, and failures to provide proof within its power to gather and present.

**Q.    Defendants' Disputed MIL 19: Exclude pejorative remarks about Alphabet, Google, and/or YouTube, including references to "Big Tech."**

This MIL should be denied for two reasons. First it is overly broad and vague as it provides insufficient guideposts regarding its scope. Without such guideposts it will be difficult if not impossible for VideoShare's counsel to ensure compliance.

Second, there is nothing inherently pejorative about the term "Big Tech," upon which Google's MIL is based. "Big Tech" simply refers to Facebook, Amazon, Apple, Microsoft, and Alphabet. *See* Ex. 22. As such, the term is similar to the "Big Three" automakers (General Motors, Ford, and Fiat/Chrysler) and the "Big Four" accounting firms (Deloitte, EY, PWC, and KPMG). *See* Ex. 23 (describing "The Big Four"); Ex. 24 (describing "The Big Three"). Thus, the term can and is used in a positive light. *See e.g.,* Ex. 22 (describing Big Tech COVID relief efforts).

Google's cited cases do not compel a different result. More specifically, Google relies on *California v. Kinder Morgan Energy Partners, L.P.*, No.: 07-cv-1883, 2016 WL 6269716, at *3 (S.D. Cal. May 16, 2016) as an example of a case where a court precluded the use of the term "big oil." But in that case the defendant pointed out that it "is not BP, Exxon, Mobil, or Chevron," and is therefore not "big oil." *California v. Kinder Morgan Energy Partners, L.P.*, No.: 07-cv-1883, Dkt. 345 at 17. Here Google does not and cannot argue that it is not considered "Big Tech." And as Google readily admits, the other cases it cites do not prohibit the term, but instead prohibit clearly pejorative terms such as "goliath," "monopolist," and "bully."

19

**R.      Defendants' Disputed MIL 20: Exclude any testimony, argument, evidence, or reference suggesting that Alphabet, Google and/or YouTube violates, does not respect, or intrudes on the privacy of its customers, users of its products and services, or the public.**

Although VideoShare does not intend to conduct a smear campaign against Google, it does intend to present evidence to prove its infringement case. Claim 4 of the '341 Patent specifically requires "[t]he method of claim 1, wherein the advertisement is selected based on the second client." Claim 4, '341 Patent (emphasis added). This means that the selection of an advertisement is based on information gathered or determined about the second client/user in order to better target that advertisement to a client or user. To prove infringement of at least Claim 4, VideoShare intends to present evidence that ███████████████████████████████████████████ ████████████████████████████████████████ *See e.g.*, Ex. 1 (Sarhan Tr.) 175:5-176:6.

Google has phrased its Motion to exclude evidence which may "suggest" that Google violates customer and/or public privacy. This is overly broad. VideoShare cannot help it if the actual activities which Google conducts (for example, targeting ads at individuals) may seem violative or intrusive to some jurors, and Google surely understands this. The only purpose Google's Motion could serve would be to prevent VideoShare from presenting its case in the most straightforward way possible and to restrict discussion of YouTube's ***infringing*** functionality throughout the trial.

**S.      Defendants' Disputed MIL 21: Exclude evidence, testimony, argument, or reference regarding alleged infringement under the doctrine of equivalents.**

This Motion is unnecessary and duplicative. As Google points out, it has a pending motion to strike VideoShare's reliance on the doctrine of equivalents. Dkt. 134 (the "DOE Motion"). Any concerns Google has regarding VideoShare's assertion of the doctrine of equivalents will be addressed by the Court in its ruling on the DOE Motion.

Dated: October 12, 2021                Respectfully submitted,


                                        By: */s/ William D. Ellerman*
                                             Charles L. Ainsworth (Texas 00783521)
                                             Robert C. Bunt (Texas 00787165)
                                             PARKER, BUNT & AINSWORTH P.C.
                                             100 E. Ferguson Suite 418
                                             Tyler, Texas 75702
                                             Tel: (903) 531-3535
                                             charley@pbatyler.com
                                             rcbunt@pbatyler.com

                                             Michael W. Shore (Texas 18294915)
                                             Alfonso G. Chan (Texas 24012408)
                                             William D. Ellerman (Texas 24007151)
                                             Ari Rafilson (Texas 24060456)
                                             Halima Shukri Ndai (Texas 24105486)
                                             SHORE CHAN LLP
                                             901 Main Street, Suite 3300
                                             Dallas, Texas 75202
                                             Tel: (214) 593-9110
                                             Fax: (214) 593-9111
                                             mshore@shorechan.com
                                             achan@shorechan.com
                                             wellerman@shorechan.com
                                             arafilson@shorechan.com
                                             hndai@shorechan.com

                                        **COUNSEL FOR PLAINTIFF
                                        VIDEOSHARE, LLC.**

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify

that, on October 12, 2021, all counsel of record who have appeared in this case are being served

with a copy of the foregoing via the Court's CM/ECF system.

                                        */s/ William D. Ellerman*
                                        William D. Ellerman