**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| VIDEOSHARE, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | CIVIL ACTION No. 6:19-cv-663-ADA |
| GOOGLE LLC and YOUTUBE, LLC | § | JURY TRIAL DEMANDED |
| | § | |
| Defendants. | § | |

## JURY CHARGE



1

# Instructions at the Close of Evidence

**JURY INSTRUCTION NO. 1:  JURY CHARGE**

MEMBERS OF THE JURY:

It is my duty and responsibility to instruct you on the law you are to apply in this case.  The law contained in these instructions is the only law you may follow.  It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

If I have given you the impression during the trial that I favor either party, you must disregard that impression.  If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression.  You are the sole judges of the facts of this case.  Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence.  The statements of counsel are not evidence; they are only arguments.  It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest.  What the lawyers say or do is not evidence.  You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the arguments.  You must determine the facts from all the testimony that you have heard and the other evidence submitted.  You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom.  You may not be influenced by passion, prejudice, or sympathy you might have for VideoShare or Google and YouTube in arriving at your verdict.

A verdict form has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form.

Answer each question on the verdict form from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. With respect to each question asked, your answers and your verdict must be unanimous.

## JURY INSTRUCTION NO. 2:  EVIDENCE

The evidence you are to consider consists of the testimony of the witnesses, the documents, and other exhibits admitted into evidence, the stipulations to which the lawyers agreed, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven. Nothing else is evidence. The lawyers' statements and arguments are not evidence. The lawyers' questions and objections are not evidence. My legal rulings are not evidence. My comments and questions are not evidence. The notes taken by any juror are not evidence.

During the trial I may not have let you hear the answers to some of the questions the lawyers asked. I may also have ruled that you could not see some of the exhibits that the lawyers wanted you to see. Further, sometimes I may have ordered you to disregard things that you saw or heard, or struck things from the record. You must follow my rulings and completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Generally speaking, there are two types of evidence. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence. Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you determine the facts from all the evidence that you hear in this case, whether direct, circumstantial, or any combination.

As I instructed you before the trial began, in judging the facts, you must consider all the evidence, both direct and circumstantial. That does not mean you have to believe all of the evidence. It is entirely up to you to give the evidence you receive in this case whatever weight you individually believe it deserves. It will be up to you to decide which witnesses to believe, which witnesses not to believe, the weight you give any testimony you hear, and how much of any witness's testimony you choose to accept or reject.

You should never be influenced by my ruling on any objection. If I sustained an objection, then just pretend the question was never asked. If there was an answer given, ignore it. If I overruled the objection, act like the objection was never made. If I gave you instructions that some item of evidence was received for a limited purpose, you must follow my instruction. If I gave any limiting instruction during trial, you must follow it. Any testimony I tell you to exclude or disregard is not evidence and may not be considered.

You must not conduct any independent research or investigation. You must make your decision based only on the evidence here, and nothing else.

4

**JURY INSTRUCTION NO. 3:  WITNESSES**

You alone are to determine the questions of credibility or truthfulness of the witnesses.  In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances.  Has the witness been contradicted by other credible evidence? Has he or she made statements at other times and places contrary to those made here on the witness stand?  You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides.  Witness testimony is weighed; witnesses are not counted.  The test is not the relative number of witnesses, but the relative convincing force of the evidence.  The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

In determining the weight to give to the testimony of a witness, consider whether there was evidence that at some time the witness said or did something or failed to say or do something that was different from the testimony given at trial.

A simple mistake by a witness does not necessarily mean that a witness did not tell the truth as he or she remembers it. People may forget some things or remember other things inaccurately. If a witness has made a misstatement, consider whether that was an intentional falsehood or simply an innocent mistake. The significance of that may depend on whether it has to do with something important fact or with only an unimportant detail. This instruction applies to the testimony all witnesses.

**JURY INSTRUCTION NO. 4:  DEPOSITION TESTIMONY AND REMOTE LIVE TESTIMONY**

Certain testimony has been presented to you through a deposition.  A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial.   Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition.  Some time before this trial, attorneys representing the parties in this case questioned this witness under oath.  A court reporter was present and recorded the testimony.  The questions and answers have been shown to you.  This deposition testimony is entitled to the same consideration and is to be weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

In addition, certain testimony has been presented to you through a remote live video.  These witnesses have been permitted to testify by remote live video due to travel restrictions.  This remote live video testimony is entitled to the same consideration and is to be weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

Some of the video recordings and live remote video of witnesses you have seen may have been of lower quality because the witnesses testified from home.  This was due to travel restrictions in place at the time and in the location where the witness was located.  You should not hold the quality of the video, the location of the witness, or any other circumstances arising from travel restrictions against either party.

## JURY INSTRUCTION NO. 5:  EXPERT TESTIMONY

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business.  This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness.

Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are not required to accept the opinion of any expert, rather, you are free to accept or reject the testimony of experts, just as with any other witness.

**JURY INSTRUCTION NO. 6:  NO INFERENCE FROM FILING SUIT**

The fact that a person brought a lawsuit and is in Court seeking damages creates no inference that the person is entitled to a judgment.  The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.

## JURY INSTRUCTION NO. 7:  STIPULATIONS OF FACT

A "stipulation" is an agreement.  When there is no dispute about certain facts, the parties may agree or "stipulate" to those facts.  You must accept a stipulated fact as evidence and treat that fact as having been proven here in court.

**JURY INSTRUCTION NO. 8:  LIMITING INSTRUCTION**

When testimony or an exhibit is admitted for a limited purpose, you may consider that testimony or exhibit only for the specific limited purpose for which it was admitted.

**JURY INSTRUCTION NO. 9: CHARTS AND SUMMARIES**

Certain charts and summaries have been shown to you solely to help explain or summarize the facts disclosed by the books, records, and other documents that are in evidence. These charts and summaries are not evidence or proof of any facts. You should determine the facts from the evidence.

**JURY INSTRUCTION NO. 10:  DEMONSTRATIVE EXHIBITS**

Certain exhibits shown to you, such as PowerPoint presentations, posters, or models, are illustrations of the evidence, but are not themselves evidence.  We call these types of exhibits "demonstrative exhibits."  Demonstrative exhibits are a party's description, picture, or model used to describe something involved in this trial.  If your recollection of the evidence differs from the exhibit, rely on your recollection.

## JURY INSTRUCTION NO. 11:  BIAS – CORPORATE PARTY INVOLVED

Do not let bias, prejudice, or sympathy play any part in your deliberations.  A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

**JURY INSTRUCTION NO. 12:  NATURE OF PARTIES**

A party does not waive the right to exclude others by not commercializing or manufacturing the invention disclosed in the patent.  At the same time, a large corporation is entitled to the same fair trial as a private individual.

## JURY INSTRUCTION NO. 13:  PREPONDERANCE OF THE EVIDENCE

In any legal action, facts must be proved by a required amount of evidence known as the "burden of proof."

VideoShare has the burden of proving patent infringement by a preponderance of the evidence. VideoShare further has the burden of proving damages for any alleged patent infringement by a preponderance of the evidence.

A preponderance of the evidence means evidence that persuades you that a claim is more probably true than not true.  Sometimes this is talked about as being the greater weight and degree of credible testimony.

**JURY INSTRUCTION NO. 14:  CLEAR AND CONVINCING EVIDENCE**

Google and YouTube have the burden of proving that the claims involve only technology that is well-understood, routine, and conventional by clear and convincing evidence.

Clear and convincing evidence is evidence that produces in your mind a firm belief or conviction as to the truth of the matter sought to be established.  It is evidence so clear, direct, weighty and convincing as to enable you to come to a clear conviction without hesitancy.

These standards are different from what you have heard about in criminal proceedings, where a fact must be proven beyond a reasonable doubt.  On a scale of the various standards of proof, as you move from preponderance of the evidence where proof need be only sufficient to tip the scales in favor of the party proving the fact, to at the other end, beyond a reasonable doubt, where the fact must be proven to a very high degree of certainty, you can think of clear and convincing evidence as being between these two ends of the spectrum or these two different standards.

**JURY INSTRUCTION NO. 15: SUMMARY OF CONTENTIONS**

As I did at the start of the case, I will first give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

As I previously told you, VideoShare seeks money damages from Google and YouTube for allegedly infringing the '341 patent by making, using, selling, and offering for sale methods that VideoShare argues are covered by claims 1, 3, 4, 5, 6, and 7 of the '341 patent. These are the "Asserted Claims" of the '341 patent. VideoShare alleges that the YouTube service infringes each of the Asserted Claims.

Google and YouTube deny that they have infringed the Asserted Claims of the '341 patent and argue that, in addition, the elements of the Asserted Claims, when taken individually and when taken as an ordered combination, involve only technology which a person of ordinary skill in the art would have considered to be well-understood, routine, and conventional as of the date of invention.

Your job is to decide whether Google and YouTube have infringed each of the Asserted Claims of the '341 patent and whether each of the Asserted Claims of the '341 patent are well-understood, routine and conventional. If you decide that a claim of the '341 patent has been infringed, you will then need to decide any money damages to be awarded to VideoShare to compensate it for the infringement.

## JURY INSTRUCTION NO. 16:  PATENT CLAIMS

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

To know what a claim covers, a claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. The requirements of a claim are often referred to as "claim elements" or "claim limitations." The coverage of a patent is assessed claim- by-claim. When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim only involves elements that were well-understood, routine, and conventional. The first step is to understand the meaning of the words used in the patent claim.

The law says that it is my role to define the terms of the claims and it is your role to apply my definitions of the terms I have construed to the issues that you are asked to decide in this case. Therefore, as I explained to you at the start of the case, I have determined the meaning of certain claim terms and I have provided to you my definitions of certain claim terms. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and whether the claim is well-understood, routine, and conventional.

The beginning portion, also known as the preamble, of a claim often uses the word "comprising." The word "comprising," when used in the preamble, means "including but not limited to" or "containing but not limited to." When "comprising" is used in the preamble, if you decide that an accused product includes all of the requirements of that claim, the claim is infringed. This is true even if the accused product contains additional elements.

For any words in the claim for which I have not provided you with a definition, you should apply the ordinary meaning of those terms in the field of the patent. You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and conventionality. These issues are yours to decide.

| Term | Construction |
|---|---|
| "format" | Plain and ordinary meaning, where the plain and ordinary meaning comprises at least container and codec. |

| Term | Construction |
|---|---|
| "the identified video content" | Plain and ordinary meaning, where the plain and ordinary meaning means that the "identified video content" must have a corresponding identifier. |
| "depending on a compatibility of the second server system or a compatibility of the second client with the first format or the second format" | "after determining which of the first format or second format is the most compatible with the second server system or the second client." |
| "second server system" | "other servers used for video delivery" |
| "first client" | "sharing device or user" |
| "second client" | "viewing device or user" |

**JURY INSTRUCTION NO. 17:  INDEPENDENT AND DEPENDENT CLAIMS**

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim.  Thus, it is not necessary to look at any other claim to determine what an independent claim covers.  In this case, claim 1 of the '341 patent is an independent claim.

The remainder of the claims in the '341 patent (claims 3, 4, 5, 6, and 7) are "dependent claims." A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements.  In this way, the claim "depends" on another claim.  A dependent claim incorporates all of the requirements of the claim(s) to which it refers.  The dependent claim then adds its own additional requirements.  To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers. A process that meets all of the requirements of both the dependent claim and the claim(s) to which it refers is covered by that dependent claim.

**JURY INSTRUCTION NO. 18:  INFRINGEMENT GENERALLY**

I will now instruct you how to decide whether or not VideoShare has proven that Google and YouTube have infringed the '341 patent.  Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another.

A patent owner has the right to prevent others from using the invention covered by his or her patent claims in the United States during the life of the patent. If any person makes, uses, sells, or offers to sell within the United States or imports into the United States what is covered by the patent claims without the patent owner's permission, that person is said to infringe the patent.

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed. You must compare the asserted patent claims, as I have defined each of them, to the accused system or process, and determine whether or not there is infringement. You should not compare the accused system or process with any specific example set out in the patent or with the prior art in reaching your decision on the issue of infringement. The only correct comparison is with the language of a claim itself, as I have explained its meaning to you. You must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties.

In this case, VideoShare has alleged that Google and YouTube directly infringe the '341 patent.

In order to prove direct infringement, VideoShare must prove that the requirements for infringement are met by a preponderance of the evidence, that is, that it is more likely than not that all of the requirements of infringement have been proved.

I will now explain direct infringement in more detail.

**JURY INSTRUCTION NO. 19:  DIRECT INFRINGEMENT BY "LITERAL INFRINGEMENT"**

In order to prove direct infringement by literal infringement, VideoShare must prove by a preponderance of the evidence, i.e., that it is more likely than not, that Google and YouTube made, used, sold, or offered for sale within the United States a process that meets all of the requirements of a claim and did so without the permission of VideoShare during the time the '341 patent was in force.  For each asserted claim, you must compare the accused process with each and every one of the requirements of that claim to determine whether all of the requirements of that claim are met.

You must determine, separately for each asserted claim, whether or not there is infringement.  There may be infringement as to one claim but no infringement as to another claim.  For dependent claims, if you find that a claim to which a dependent claim refers is not infringed, there cannot be infringement of that dependent claim.  On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the process meets the additional requirement(s) of any claims that depend from the independent claim to determine whether those dependent claims have also been infringed.  A dependent claim includes all the requirements of any of the claims to which it refers plus additional requirement(s) of its own.

**JURY INSTRUCTION NO. 20:  PRIOR ART**

Prior art refers to what came before the invention.  Prior art is considered in determining whether the Asserted Claims involve only technology that is well-understood, routine, and conventional. Prior art may include information that was publicly known, items that have been used or offered for sale, or references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention.

**JURY INSTRUCTION NO. 21:  DATE OF INVENTION – PRIORITY TO
PROVISIONAL APPLICATION**

A patent application can be provisional or nonprovisional.  A provisional application is a
temporary placeholder for a more substantive nonprovisional application to follow.  The
provisional application serves the purpose of setting a priority date for the claimed invention
provided it contains a written description of the invention, and of the manner and process of
making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in
the art to make and use the claimed invention.  This priority date is then used to determine what
qualifies as prior art for evaluating the question of whether the '341 Patent claims involve only
technology that was well-understood, routine, and conventional.

In this case, the nonprovisional application filing date for the '341 patent was January 23, 2019.
It also claims priority to earlier-filed applications, including an application filed on August 3, 2000,
and provisional application No. 60/147,029, filed on August 3, 1999.

The parties agree that the priority date for claim 4 is no earlier than the date of the August 3, 2000
application.  Google and YouTube contend that the priority date for the other Asserted Claims is
also no earlier than August 3, 2000.  VideoShare contends that the priority date for the other
Asserted Claims is the filing date of the earlier filed provisional application, August 3, 1999.

For the '341 patent—with the exception of claim 4—to be entitled to the priority date of the
provisional application, VideoShare has the burden of providing evidence that the provisional
application satisfies both the written description and enablement requirements.  If VideoShare does
so, Google and YouTube have the burden of showing by clear and convincing evidence that the
provisional application does not meet those two requirements.  I will now talk a little about each
of these two requirements.

### *(1) Written Description*

The written description requirement is designed to ensure that the inventor was in possession of
the full scope of claimed invention as of the patent's effective filing date.  In deciding whether the
provisional application satisfies this written description requirement, you must consider the
description from the viewpoint of a person having ordinary skill in the field of technology of the
patent as of the effective filing date.  The provisional application must describe the full scope of
the claimed invention, including each element thereof, either expressly or inherently.  A claimed
element is disclosed inherently if a person having ordinary skill in the field as of the effective filing
date would have understood that the element is necessarily present in what the provisional
application discloses.  It is not sufficient that the provisional application discloses only enough to
make the claimed invention obvious to the person having ordinary skill.

The written description does not have to be in the exact words of the claim.  The requirement may
be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc.,
contained in the patent specification.  Adequate written description does not require either
examples or an actual reduction to practice of the claimed invention.  However, a mere wish or
plan for obtaining the claimed invention is not adequate written description.  Rather, the level of
disclosure required depends on a variety of factors, such as the existing knowledge in the particular

field, the extent and content of the prior art, the maturity of the science or technology, and other considerations appropriate to the subject matter.

### (2) Enablement

A patent application, whether provisional or nonprovisional, must also disclose sufficient information to enable one skilled in the field of the invention, at the time the application was filed, to make and use the claimed invention. This requirement is known as the enablement requirement. Each claim must be analyzed for compliance with the enablement requirement.

## JURY INSTRUCTION NO. 22:  PATENT ELIGIBILITY

Google and YouTube contend that the '341 patent is invalid for failure to claim patent-eligible subject matter.  Google and YouTube must show by clear and convincing evidence that the elements of the Asserted Claims, when taken individually and when taken as an ordered combination, involve only technology which a person of ordinary skill in the art would have considered to be well-understood, routine, and conventional as of the date of invention.  In determining whether a patent claim involves well-understood, routine, and conventional technology to a person of ordinary skill in the art, you may consider statements made in the patent's specification, as well as evidence of the prior art.

Whether a particular technology was well-understood, routine, and conventional goes beyond what was known in the prior art.  The mere fact that something is disclosed in a piece of prior art does not mean that it was well-understood, routine, and conventional.  At the same time, the specification of the asserted patent may be such evidence, if you find that the specification shows that the elements of the Asserted Claims involve only technology which a person of ordinary skill in the art would have considered as well-understood, routine, and conventional.

**JURY INSTRUCTION NO. 23:  PERSON OF ORDINARY SKILL IN THE ART**

The parties have agreed that a person of ordinary skill in the art at the time of the invention is someone with a bachelor's degree in computer science, computer engineering, or the equivalent, and approximately two years of experience, including research and development or engineering in the field of video streaming and computer systems. With more education, for example, post-graduate degrees and/or study, less work experience is needed to attain an ordinary level of skill, and vice versa.

**JURY INSTRUCTION NO. 24:  DAMAGES—INTRODUCTION**

If you find that Google and YouTube infringed any claim of the '341 patent, you must then consider what amount of damages to award to VideoShare.  I will now instruct you about the measure of damages.  By instructing you on damages, I am not suggesting which party should win this case, on any issue.  If you find that Google and YouTube have not infringed any claim of the patent, then VideoShare is not entitled to any damages.

The damages you award must be adequate to compensate VideoShare for the infringement.  They are not meant to punish an infringer.  Your damages award, if you reach this issue, should put VideoShare in approximately the same financial position that it would have been in had the infringement not occurred.

VideoShare has the burden to establish the amount of its damages by a preponderance of the evidence.  In other words, you should award only those damages that VideoShare establishes that it more likely than not has suffered.  While VideoShare is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty.  You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

In this case, VideoShare seeks a reasonable royalty.  A reasonable royalty is defined as the money amount VideoShare and Google and YouTube would have agreed upon as a fee for use of the invention at the time just prior to when infringement began.  But, regardless of the type of damages you may choose to award, you must be careful to ensure that award is no more and no less than the value of the patented invention.

I will give more detailed instructions regarding damages shortly.  Note, however, that VideoShare is entitled to recover no less than a reasonable royalty for each infringing act.

## JURY INSTRUCTION NO. 25:  REASONABLE ROYALTY—ENTITLEMENT

If you find that a patent claim is infringed, VideoShare is entitled to at least a reasonable royalty to compensate it for that infringement.

**JURY INSTRUCTION NO. 26:   REASONABLE ROYALTY—DEFINITION**

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention.  A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began.  In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations.  In determining this, you must assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement.  The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.  Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement.

Although evidence of the actual profits an alleged infringer made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.

In determining a reasonable royalty, you may also consider evidence concerning the availability and cost of acceptable non-infringing substitutes to the patented invention.  An acceptable substitute must be a product/method that does not infringe the patent and that is equally acceptable to customers.

## JURY INSTRUCTION NO. 27: REASONABLE ROYALTY—RELEVANT FACTORS

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

(1)  The value that the claimed invention contributes to the accused product.

(2)  The value that factors other than the claimed invention contribute to the accused product.

(3)  Comparable license agreements or other transactions, such as those covering the use of the claimed invention or similar technology.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

The so-called "*Georgia-Pacific*" factors, which can be considered to inform the hypothetical negotiations, include the following:

(1)  The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty

(2)  The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

(3)  The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4)  The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5)  The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6)  The duration of the patent and the term of the license.

(7)  The established profitability of the product made under the patents, its commercial success, and its current popularity.

(8)  The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(9)     The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(10)    The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(11)    The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(12)    The opinion and testimony of qualified experts.

(13)    The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

**JURY INSTRUCTION NO. 28:  REASONABLE ROYALTY—TIMING**

Damages are not based on a hindsight evaluation of what happened, but on what the parties to the hypothetical license negotiations would have agreed upon. Nevertheless, evidence relevant to the negotiation is not necessarily limited to facts that occurred on or before the date of the hypothetical negotiation. You may also consider information the parties would have foreseen or estimated during the hypothetical negotiation, which may under certain circumstances include evidence of usage after infringement started, license agreements entered into by the parties shortly after the date of the hypothetical negotiation, profits earned by the infringer, and non-infringing alternatives.

**JURY INSTRUCTION NO. 29:  DAMAGES – COMPARABLE AGREEMENTS**

Comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood.

Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope.  If there are differences between a license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination.

The hypothetical license is deemed to be a voluntary agreement.  When determining if a license agreement is comparable to the hypothetical license, you may consider whether the license agreement is between parties to a lawsuit and whether the license agreement was a settlement influenced by a desire to avoid further litigation.

**JURY INSTRUCTION NO. 30:  DATE OF COMMENCEMENT OF DAMAGES**

In determining the amount of damages, you must determine when the damages began.  If you find that Google and YouTube have infringed, damages commence on the date the patent issued, July 23, 2019, and damages end on February 3, 2020.

**JURY INSTRUCTION NO. 31:  ROYALTY—ATTRIBUTION/APPORTIONMENT**

The amount you find as damages must be based on the value attributable to the patented technology, as distinct from other, unpatented features of the accused product, or other factors such as marketing, or Google's size or market position. In determining the appropriate royalty base and the appropriate royalty rate, the ultimate combination of both the royalty rate and the royalty base must reflect the value attributable to the patented technology.  The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment.  When the accused infringing products have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features, and no more.

In other words, the royalty base must be closely tied to the invention. It is not sufficient to use a royalty base that is too high and then adjust the damages downward by applying a lower royalty rate. Similarly, it is not appropriate to select a royalty base that is too low and then adjust it upward by applying a higher royalty rate. Rather, you must determine an appropriate royalty rate and an appropriate royalty base that reflect the value attributable to the patented invention alone.

**JURY INSTRUCTION NO. 32:  DUTY TO DELIBERATE; NOTES**

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors.  During your deliberations, do not hesitate to reexamine your own opinions and change your mind if you are convinced that you were wrong.  But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts.  You have been allowed to take notes during this trial.  Any notes that you took during this trial are only aids to memory.  If your memory differs from your notes, you should rely on your memory and not on the notes.  The notes are not evidence.  If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors.  Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes.  You must select a jury foreperson to guide you in your deliberations and to speak for you here in the courtroom.

Your verdict must be unanimous.  After you have reached a unanimous verdict, your jury foreperson must fill out the answers to the written questions on the verdict form and sign and date it.  After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the jury foreperson should write the inquiry and give it to the court security officer.  After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom.  Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

**JURY INSTRUCTION NO. 33:  SOCIAL MEDIA**

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case.  You may not use any electronic device or media, such as the telephone, a cell phone, smartphone, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog or website such as Facebook, LinkedIn, YouTube, Instagram or Twitter to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case.  You can only discuss the case in the jury room with your fellow jurors during deliberations.

You may now proceed to the jury room to begin your deliberations.

## GLOSSARY OF PATENT AND TECHNICAL TERMS

Some of the terms in this glossary will be defined in more detail in the legal instructions you are given. The definitions in the instructions must be followed and must control your deliberations.

**Abstract**: A brief summary of the technical disclosure in a patent to enable the U.S. Patent and Trademark Office and the public to determine quickly the nature and gist of the technical disclosure in the patent.

**Amendment**: A patent applicant's change to one or more claims or to the specification either in response to an office action taken by an Examiner or independently by the patent applicant during the patent application examination process.

**Anticipation**: A situation in which a claimed invention is described in a single piece of prior art and, therefore, is not considered new and is not entitled to be patented.

**Assignment**: A transfer of patent rights to another called an "assignee" who, upon transfer, becomes the owner of the rights assigned.

**Claim**: Each claim of a patent is a concise, formal definition of an invention and appears at the end of the specification in a separately numbered paragraph. In concept, a patent claim marks the boundaries of the patent in the same way that a legal description in a deed specifies the boundaries of land, i.e., similar to a landowner who can prevent others from trespassing on the bounded property, the inventor can prevent others from using what is claimed. Claims may be independent or dependent. An independent claim stands alone. A dependent claim does not stand alone and refers to one or more other claims. A dependent claim incorporates whatever the other referenced claim or claims say.

**Conception**: The complete mental part of the inventive act when the inventor forms a definite and permanent idea of an invention someone else could make without undue experimentation. Conception must be capable of proof, as by drawings, disclosure to another, etc.

**Drawings**: The drawings are visual representations of the claimed invention contained in a patent application and issued patent, and usually include several figures illustrating various aspects of the claimed invention.

**Elements**: The required parts of a device or the required steps of a method. A device or method infringes a patent if it contains each and every requirement of a patent claim.

**Embodiment**: A product or method that contains the claimed invention.

**Enablement**: A description of the invention that is sufficient to enable persons skilled in the field of the invention to make and use the invention without undue experimentation. The specification of the patent must contain such an enabling description.

**Examination**: Procedure before the U.S. Patent and Trademark Office whereby an Examiner reviews the filed patent application to determine if the claimed invention is patentable.

**Filing Date**: Date a patent application, with all the required sections, has been submitted to the U.S. Patent and Trademark Office.

**Infringement**: Violation of a patent occurring when someone makes, uses, or sells a patented invention, without permission of the patent holder, within the United States during the term of the patent. Infringement may be direct, by inducement, or contributory. Direct infringement is making, using, or selling the patented invention without permission. Inducing infringement is intentionally causing, urging or encouraging another to directly infringe a patent.

**Limitation**: A required part of an invention set forth in a patent claim. A limitation is a requirement of the invention. The word "limitation" is often used interchangeably with the word "requirement."

**Nonobviousness**: One of the requirements for securing a patent. To be valid, the subject matter of the invention must not have been obvious to a person of ordinary skill in the field at the time of the invention.

**Office Action**: A written communication from the Examiner to the patent applicant in the course of the application examination process.

**Patent**: A patent is an exclusive right granted by the U.S. Patent and Trademark Office to an inventor to prevent others from making, using, or selling an invention for a term of 20 years from the date the patent application was filed (or, in some cases, 17 years from the date the patent issued). When the patent expires, the right to make, use, or sell the invention is dedicated to the public. The patent has three parts, which are a specification, drawings and claims. The patent is granted after examination by the U.S. Patent and Trademark Office of a patent application filed by the inventor which has these parts, and this examination is called the prosecution history.

**Patent and Trademark Office (PTO)**: An administrative branch of the U.S. Department of Commerce that is charged with overseeing and implementing the federal laws of patents and trademarks. It is responsible for examining all patent applications and issuing all patents in the United States.

**Prior Art**: Evidence that the claimed invention was already known or would have been obvious. This evidence includes items that were publicly known or that have been used or offered for sale, or references such as publications or patents.

**Prosecution History**: The prosecution history is the complete written record of the proceedings in the PTO from the initial application to the issued patent. The prosecution history includes the office actions taken by the PTO and the amendments to the patent application filed by the applicant during the examination process.

**Reads On**: A patent claim "reads on" a device or method when each required part (requirement) of the claim is found in the device or method. **Reduction to Practice**: The invention is "reduced to practice" when it is sufficiently developed to show that it would work for its intended purpose or when a patent application describing the invention is filed.

**Requirement**: A required part or step of an invention set forth in a patent claim. The word "requirement" is often used interchangeably with the word "limitation."

**Royalty**: A royalty is a payment made to the owner of a patent by a nonowner in exchange for rights to make, use, or sell the claimed invention.

**Specification:** The specification is a required part of a patent application and an issued patent. It is a written description of the invention and of the manner and process of making and using the claimed invention.