███████████████████████

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| VIDEOSHARE, LLC | § | |
| | § | |
| Plaintiff, | § | Civil Action No. 6:19-cv-00663-ADA |
| | § | |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| GOOGLE LLC and YOUTUBE, LLC | § | |
| | § | |
| Defendants. | § | ████████████████ |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW AND ALTERNATIVE MOTION FOR
REMITTITUR OR A NEW TRIAL UNDER RULES 50(b) AND 59**

████████████████████████

## **TABLE OF CONTENTS**

I.     Introduction.................................................................................................................1

II.    Legal Standards..........................................................................................................1

III.   Argument ....................................................................................................................2

    A.    Google's motion for JMOL of noninfringement or a new trial should be denied.....................................................................................................................2

        1.    YouTube always sends the first or the second video file in the most compatible format. ...............................................................5

        2.    YouTube's server makes the compatibility determination, ████ ████████████████...............................................................5

        3.    YouTube determines the most compatible of the first format or second format and sends the file in the most compatible format.................7

    B.    Google's motion for JMOL of no damages, remittitur, or a new trial should be denied. .................................................................................10

        1.    VideoShare's infringement theory does not rely solely on the situations where the first format appears in the second formats; in the alternative, VideoShare still used a permissible royalty base. .................................................................................................10

        2.    Google's argument regarding foreign uploads is logically flawed and unsupported by evidence...................................................12

        3.    Google's alternative motion for remittitur should be denied....................13

    C.    Google's motion for JMOL of patent invalidity due to § 101 should be denied.....................................................................................................14

        1.    The '341 patent passes muster under *Alice* step one.................................14

        2.    The '341 patent is eligible under *Alice* step two.......................................16

    D.    Google's motion for JMOL based on claim preclusion should be denied. .................................................................................................19

    E.    Google's motion for JMOL of unenforceability due to terminal disclaimer should be denied...................................................................20

IV.    Conclusion ...............................................................................................................20

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bayer AG v. Carlsbad Tech., Inc.*,
   298 F.3d 1377 (Fed. Cir. 2002)............................................................................20

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018)...............................................................16, 17, 18

*BSG Tech LLC v. BuySeasons, Inc.*,
   899 F.3d 1281 (Fed. Cir. 2018)............................................................................17

*C.P. Interests, Inc. v. Calif. Pools, Inc.*,
   238 F.3d 690 (5th Cir. 2001) ...............................................................................11

*Cristain v. Hunter Bldgs. & Mfg., L.P.*,
   908 F.3d 962 (5th Cir. 2018) .................................................................................1

*Dahlen v. Gulf Crews, Inc.*,
   281 F.3d 487 (5th Cir. 2002) .................................................................................2

*Eli Lilly & Co. v. Barr Lab'ys, Inc.*,
   222 F.3d 973 (Fed. Cir. 2001)..............................................................................20

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016)............................................................................14

*KAIST IP US LLC v. Samsung Elecs. Co.*,
   439 F. Supp. 3d 860 (E.D. Tex. 2020) ...................................................................2

*KCJ Corp. v. Kinetic Concepts, Inc.*,
   223 F.3d 1351 (Fed. Cir. 2000)..............................................................................3

*Longoria v. Hunter Express, Ltd.*,
   932 F.3d 360 (5th Cir. 2019) ...........................................................................2, 13

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009).......................................................................12, 13

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
   837 F.3d 1299 (Fed. Cir. 2016)............................................................................15

*Mformation Techs., Inc. v. Rsch. in Motion Ltd.*,
   764 F.3d 1392 (Fed. Cir 2014)...............................................................................7

*NTP, Inc. v. Rsch. in Motion, Ltd.*,
    418 F.3d 1282 (Fed. Cir. 2005) ............................................................................13

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    711 F.3d 1348 (Fed. Cir. 2013) ..............................................................................2

*Reeves v. Sanderson Plumbing Prods., Inc.*,
    530 U.S. 133 (2000) ................................................................................................2

*SimpleAir, Inc. v. Google LLC*,
    884 F.3d 1160 (Fed. Cir. 2018) ............................................................................19

*TecSec, Inc. v. Adobe Inc.*,
    978 F.3d 1278 (Fed. Cir. 2020) ............................................................................14

*The Boeing Co. v. United States*,
    69 Fed. Cl. 397 (2006) ..........................................................................................20

*Unisplay, S.A. v. Am. Elec. Sign Co.*,
    69 F.3d 512 (Fed. Cir. 1995) ...........................................................................12, 13

*Weisner v. Google LLC*,
    51 F.4th 1073 (Fed. Cir. 2022) .........................................................................17, 18

**Statutes**

35 U.S.C. § 154(a)(2) ..................................................................................................20

**Other Authorities**

Merriam-Webster, https://www.merriam-webster.com/dictionary/determine ...............................6

## I.     INTRODUCTION

After a five-day trial, a unanimous jury reached three conclusions: (1) VideoShare had proved by a preponderance of the evidence that defendants Google LLC and YouTube, LLC ("Google") infringed every asserted claim of the '341 patent; (2) VideoShare had proved by a preponderance of the evidence that Google owed $25.9 million in damages for that infringement; and (3) Google had failed to show by clear and convincing evidence that any asserted claim contained only well-understood, routine, and conventional elements.  Dkt. 217.

Google now seeks to upend those jury findings by taking an overly narrow interpretation of the "sending" limitation and adding requirements that are absent from the Court's construction of the "depending" qualifier; by speculating without evidence that VideoShare's damages expert may have included non-infringing activity in his analysis; and by simply disregarding the jury's factual finding in assessing inventiveness.

The Court should deny Google's motions in full.  When viewed considering the claims as construed by the Court—as opposed to how Google wishes they were written—the jury's findings on infringement and damages are supported by the evidence.  The patent's claims are inventive, as confirmed by the jury.   And Google's final drive-by legal arguments—based on claim preclusion and the terminal disclaimer—lack merit.

## II.     LEGAL STANDARDS

Judgment as a matter of law is appropriate only where "a reasonable jury would not have a legally sufficient evidentiary basis" to reach a particular finding.  *Cristain v. Hunter Bldgs. & Mfg., L.P.*, 908 F.3d 962, 964 (5th Cir. 2018).  "The court must draw all reasonable inferences in favor of the nonmoving party[] and may not make credibility determinations or weigh the evidence."  *Id.* (internal quotations, citation, and ellipses omitted).   Further, the court "must

disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).  By contrast, a court deciding whether to grant a motion for a new trial for insufficiency of evidence may weigh the evidence, but it should grant the motion only when "the verdict is against the great weight of the evidence, not merely against the preponderance of the evidence."  *Dahlen v. Gulf Crews, Inc.*, 281 F.3d 487, 497 (5th Cir. 2002).

The standard of review for setting aside patent infringement damages is determined by the law of the regional circuit, though issues of what types of damages are legally compensable are determined according to Federal Circuit law.  *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1356 (Fed. Cir. 2013).  Remittitur is only appropriate upon a finding that the damages award was excessive.  *See Longoria v. Hunter Express, Ltd.*, 932 F.3d 360, 364 (5th Cir. 2019).  The Fifth Circuit sets the amount of remittitur using the "maximum recovery" rule, awarding the "highest amount the jury could have awarded."  *Id.* at 364–65; *see also KAIST IP US LLC v. Samsung Elecs. Co.*, 439 F. Supp. 3d 860, 886–87 (E.D. Tex. 2020) (applying the maximum recovery rule in a patent infringement case).

## III.     ARGUMENT

### A.     Google's motion for JMOL of noninfringement or a new trial should be denied.

Far from being against the great weight of the evidence—much less unsupportable except by an unreasonable jury—the verdict of infringement is supported by substantial evidence in the record.  Thus, the Court should grant neither JMOL of noninfringement nor a new trial.

Google disputes infringement only for the "sending" limitation, which requires, in relevant part, "the first server system sending the stored first video file or the stored second video file . . . depending on . . . a compatibility of the second client with the first format or the second format."

██████████████████████████████████████████

'341 patent, at 22:4–10.  The Court construed the "depending" limitation as "after determining

which of the first format or second format is most compatible with the . . . second client."  Dkt.

69, at 2.  The open-ended "comprising" transition indicates that the claims permit the creation of

multiple second video files, each in a different second format.  *See* Tr. 400:1–17, 435:2–436:13;

*KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1355–57 (Fed. Cir. 2000).  ████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

Substantial evidence supports the jury's finding that Google performs the requisite action:

when a client requests a video from YouTube, ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████   ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

Through that process, the server determines the most compatible format of the first and

second formats.  ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████ ██████████████████████████

████████████████████████████████████████████████

---

[1]      After Google insisted at trial that the Court construe the term "format," Tr. 459:20–24, the
Court construed it as "plain and ordinary meaning, where the plain and ordinary meaning
comprises at least container and codec."  Tr. 1314:1–4.

█████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████ That

means that the first format is offered as an option to the client.

And Dr. Sarhan's example involves just one of the transcoded formats. ███████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████

   █████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████

   █████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ Google thus

practices every element of the claimed "sending" limitation, and the verdict of infringement should

be sustained.

████████████████████████████████████

Google's challenges to the infringement finding fail.  Rather than being grounded in the plain meaning of the claim language and the Court's constructions, each of Google's challenges relies on additional purported requirements that do not appear in the claims.

### 1. YouTube always sends the first or the second video file in the most compatible format.

The claim language does not, as Google contends, require sending the first video file whenever the first format is determined to be the most compatible.  To be sure, the claims would be met by a system that did send the first video file when the first format is determined to be the most compatible.  But that is not the only possibility.  As Dr. Sarhan explained, the claim language only requires sending a file that is in the most compatible format.  Tr. 300:6–22; Tr. 442:23–443:1.

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████  So, a file in the most compatible format—a format that is both a first format and a second format—is sent, meeting the claim limitation.  And that makes sense: when there are two video files in the same compatible format, the claims do not require both to be sent. It suffices to send a video file in the most compatible format, and the YouTube server does so.

### 2. YouTube's server makes the compatibility determination, ████████ ██████

VideoShare presented evidence that the YouTube server determines the most compatible format ████████████████████████████████████ That is a determination according to

███████████████████████████████

the ordinary meaning of the word "determine," which means "to find out or come to a decision about by investigation, calculation, or reasoning."   Merriam-Webster, https://www.merriam-webster.com/dictionary/determine.  The server may determine compatibility based on information it has about the various formats or by requesting information from the client, *i.e.*, through investigation.   For example, Fig. 8 in the patent is described as "interactive screen used to *determine* the desires of the individual," '341 patent, at 5:34–35 (emphasis added), and the described embodiment determines those desires by asking the individual, see *id.* at Fig. 8.

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████   The entire process is initiated by the server, and even though the client participates in that process by communicating to the server which format is most compatible from its perspective, the server determines the most compatible format.

Google's argument relies on a constricted interpretation of the Court's construction.  The Court construed the "depending" limitation as "after determining which of the first format or second format is most compatible with the second server system or the second client," but it did not require that determination to be made by the first server alone.  Dkt. 69, at 2.  To the extent that such a requirement may be inferred from the implicit subject of "determining" being the "first server system," such a requirement would be erroneous.  The original claim language ("depending on a compatibility . . .") is silent as to which entity must "determine" the compatibility—indeed,

the word "determine" is absent from the claim language altogether.  The heart of the dispute over construction of the "depending" limitation involved whether to define compatibility, whether the "most compatible" format need be used, and the timing of the assessment of compatibility, not over which specific entity or entities needed to perform the assessment.  *See*, *e.g.*, Dkt. 53, at 4 (summarizing the "three main disputes").  Moreover, in its claim construction arguments, Google acknowledged that "this determination is done by the 'first server system' either alone *or in conjunction with something else* [*i.e.*, the client]."  Dkt. 59, at 7 (emphasis added).  Finally, even if the client could be said to determine the most compatible format through its selection, the server also determines the most compatible format through its collaboration with the client.

The jury credited Dr. Sarhan's testimony showing that the YouTube server determines the most compatible format through its communications with the client.  *See* Tr. 444:5–445:3.  To the extent that an overly narrow reading of the Court's construction would exclude that collaborative determination, the Court may clarify that, consistent with the claim language, the construction does not exclude such a means of determination.  *See Mformation Techs., Inc. v. Rsch. in Motion Ltd.*, 764 F.3d 1392, 1397 (Fed. Cir 2014) (recognizing that a district court may "adjust constructions post-trial if the court merely elaborates on a meaning inherent in the previous construction").

### 3.    YouTube determines the most compatible of the first format or second format and sends the file in the most compatible format.

Google contends that the first format is never considered by the first server because the client is not sent "any information about the format of the originally uploaded file."  *See* Mot. at 5 (citing Tr. 420:12–18).  But the fact that the client does not know what format the uploaded file used does not mean that that format is not considered in the compatibility determination.

For one, in the usual case where the first format is one of the common transcoding formats, the YouTube server presents the first format as one of the options that the client may select,

██████████████████████████████████████

because the first format is the same as one of the second formats. *See supra* at III-A; Tr. 370:16–20; Tr. 437:2–9.  In that situation, the compatibility of the first format is determined at the second stage of the determination, when it is presented as an option to the client.  It is irrelevant that the client does not know that the format it considered was that of the uploaded file: the claims require determining only the compatibility of the first and second formats, not that of the first and second files.  Dkt. 69, at 2.

But even when the first format is not the same as any of the second formats, the compatibility of the first format is determined by the server at the first stage of the determination.

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████  Therefore, the server does not present those first formats as an option to the client.  The result is that the *server* determines the most compatible format among both the first and the second formats, even though the *client* was not given the first format as an option.

Google relies on a phantom requirement that "determining" which of the first and second formats is most compatible requires offering all of them as options to the client.  But that ignores that the first format is considered at the first stage of the determination, when the server decides which formats to offer to the client.  Tr. 433:24–434:9; Tr. 444:5–445:3.  The determination is a collaborative process, and it is not limited to the client's selection of a format from the menu.

Dr. Sarhan's testimony regarding the first formats being considered when they are the same as one of the second formats was not a new infringement theory; rather, it was a response to one of Google's non-infringement arguments. ██████████████████████████

████████████████████████████████████████



Thus, Dr. Sarhan's testimony was not improper: it was a defense of the infringement theory he had presented in his report.

Moreover, Dr. Sarhan did not somehow disclaim in his expert report the possibility that a transcoded video file could be in the same format (such as MP4/H.264) as the uploaded file. Indeed, Dr. Sarhan specifically noted that video files could be uploaded in that format, Sarhan Rep. ¶ 31,

Dr. Sarhan's testimony was properly allowed at trial upon careful consideration by the Court.  After an extended bench conference discussing the propriety of Dr. Sarhan's testimony, Tr. 353:24–361:15, the Court overruled Google's objection and permitted Dr. Sarhan to explain why a video file uploaded in the MP4/H.264 format would also result in a transcoded file in that format, Tr. 370:2–20.  For the foregoing reasons, that overruling was correct.

Additionally, the Court correctly construed "format" as definable by just two parameters, the container used to package the video content and the codec used to encode it.  *See* Tr. 1314:1–

██████████████████████████████████████

4 ("plain and ordinary meaning, where the plain and ordinary meaning comprises at least container and codec").  That construction recognizes the inherent ambiguity in the word "format," ████ ████████████████████████ the specification show is used in an overloaded fashion, sometimes including additional parameters like bitrate, but often not.  *See* Dkt. 193.

At trial, Google attempted to counter Dr. Sarhan's testimony by arguing that a format was defined by its container, codec, and bitrate; thus, the uploading format and the transcoded format were not the same because they had different bitrates.  *See* Tr. 953:18–23; 973:18–974–25.  But that testimony directly contravened the Court's construction of "format."  Applying the construction as given, the jury validly concluded that at least when the video is uploaded in a certain container/codec combination, like the MP4/H.264 format, a transcoded video would also be created in that format, and the compatibility of that format would be considered by the server.

Google's final point, Mot. at 8, about the patent not describing a second file in a first format similarly ignores the Court's construction: a format may be defined by container and codec.  A format is not tied to a particular file.  Thus, when the first format is the same as a second format, and a file is sent in that second format, the file is also being sent in the first format because those formats are the same.

**B.  Google's motion for JMOL of no damages, remittitur, or a new trial should be denied.**

**1.  VideoShare's infringement theory does not rely solely on the situations where the first format appears in the second formats; in the alternative, VideoShare still used a permissible royalty base.**

First, substantial evidence supports that the YouTube server always determines the compatibility of the first format, ███████████████████████████████ ███████████████████████████████████████████.  *See supra* at III-

██████████████████████████████████████████████

A-3. Thus, Google's argument that VideoShare failed to prove damages because Mr. Holzen did not exclude uploads in a first format that was not one of the second formats is entirely misplaced.

Google contends that the theory that "YouTube has already considered all 'first formats' when deciding which formats to convert a file into" was an "ultra-belated" infringement theory. *See* Dkt. 261 ("Mot.") at 12. ███████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████  Moreover, Dr. Sarhan supported that theory at trial when he testified repeatedly—without objection from Google—that the YouTube server limited the choices available to the transcoded formats.  Tr. 433:24–434:9; Tr. 444:5–445:3.  Google has forfeited any challenge to the admissibility of that testimony.  *See C.P. Interests, Inc. v. Calif. Pools, Inc.*, 238 F.3d 690, 696–97 (5th Cir. 2001).

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████

Second, even if the Court agrees with Google that there is no infringement when the first format happens to be different from all the second formats, substantial evidence supports the jury's damages award.  ██████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████

████████████████████████   *See supra* at III-A.   And Google, in possession of the

technical data, has produced no evidence quantifying how often its hypothetical situation occurs,

instead relying on attorney argument to rebut VideoShare's reasoned expert testimony.

Further, even if some video uploads occur in a format that is not one of the transcoded

formats, Mr. Holzen's royalty base was appropriate.  In a hypothetical-negotiation analysis, the

Federal Circuit has "never laid down any rigid requirement that damages in all circumstances be

limited to specific instances of infringement proven with direct evidence."  *Lucent Techs., Inc. v.

Gateway, Inc.*, 580 F.3d 1301, 1334 (Fed. Cir. 2009); *see also Unisplay, S.A. v. Am. Elec. Sign

Co.*, 69 F.3d 512, 517 (Fed. Cir. 1995) (noting that the reasonable royalty analysis "necessarily

involves an element of approximation and uncertainty").  This is particularly true in the "high-tech

computer industry" where companies "often strike licensing deals in which the amount paid for a

particular technology is not necessarily limited to the number of times a patented feature is used

by a consumer," in part because of the "administrative cost of monitoring usage."  *Lucent Techs.*,

580 F.3d at 1334.  That reasoning applies here with strong force: the similar Viddler and Vimeo

licenses that Mr. Holzen considered also used their entire U.S. revenues as a royalty base.  *See* PX-

77, at 2 (Viddler); PX-78, at 3 (Vimeo).  They did not attempt to exclude revenue attributable to

uploads based on whether the uploaded format matched a transcoding format.  Thus, those licenses

provide a "factual basis," *Unisplay*, 69 F.3d at 517, that supports Mr. Holzen's use of Google's

entire U.S. advertising revenue from YouTube as a starting point for the hypothetical negotiation.

### 2.    Google's argument regarding foreign uploads is logically flawed and unsupported by evidence.

Each step of the infringed method is performed in the United States.  Google asserts that

VideoShare's damages testimony includes non-infringing activity because of foreign uploads to

U.S. servers.  *See* Mot. at 13.  But the claims do not recite an "uploading" step, only a "receiving"

step.  '341 patent, at 21:16–18.  That means that an upload of a video by a foreign user results in infringing activity when the uploaded video is *received* by a server in the United States.  Tr. 718:8–23.  Mr. Holzen's analysis carefully distinguishes between use of the infringed method domestically and overseas and excludes overseas revenue.  Tr. at 628:7–14.  Even if part of the United States revenue is attributable to videos uploaded from a foreign user, that revenue is attributable to the patented method, not non-infringing activity.  That YouTube's overall process might include a step performed overseas—the uploading of the video, under Google's hypothetical scenario—does not prevent Google from infringing when "each of the steps" of the claimed method is "performed within this country."  *NTP, Inc. v. Rsch. in Motion, Ltd.*, 418 F.3d 1282, 1318 (Fed. Cir. 2005).

Google's presentation at trial merely acknowledged that some videos were uploaded by users outside the United States and watched in the United States.  Tr. 693:11–694:8.  It presented no evidence to support its theory that those videos were not *received* by servers in the United States before being viewed in the United States.  *See* Mot. at 13 (speculating that when the uploading user is located overseas, "the first server may be as well").  Moreover, despite being in possession of all the relevant evidence, Google again cited no data from its records or its expert's analysis indicating that Mr. Holzen's analysis incorporated improper non-infringing activity.  *See id.*  And for the same reasons explained above, the Viddler and Vimeo licenses demonstrate that it was industry practice to not distinguish between foreign and domestic uploads in computing U.S. advertising revenue.  *Lucent Techs.*, 580 F.3d at 1334; *Unisplay*, 69 F.3d at 517.  The jury's damages verdict, based on Mr. Holzen's thorough analysis, is supported by substantial evidence.

### 3.    Google's alternative motion for remittitur should be denied.

The standard for establishing remittitur requires showing excessiveness of the verdict, a "distinct" inquiry from determining sufficiency of the evidence.  *Longoria*, 932 F.3d at 364.

Google's excessiveness argument here is that "VideoShare failed to present a damages model aligning with its infringement theory"—the same argument it makes for JMOL of no damages or a new trial. *See* Mot. at 13–14. Thus, Google's motion for remittitur should be denied for the same reason that its motions for JMOL of no damages and for a new trial should be denied: substantial evidence supports the jury's damages award.

### C. Google's motion for JMOL of patent invalidity due to § 101 should be denied.

The '341 patent satisfies *Alice* step one and is directed to patent-eligible subject matter because it addresses a problem specific to computer technology—how to share video files efficiently across a computer network—and claims a specific solution—receiving and storing the original file, automatically converting it into a variety of formats, and sending it to a client depending on the client's compatibility with the formats. But regardless of the step one outcome, the '341 patent satisfies step two: The jury resolved the fact issue and found that the elements of the claims of the '341 patent, taken individually or as an ordered combination, contain more than just conventional, well-understood, and routine steps. That finding, supported by expert testimony, resolves the patent-eligibility issue in favor of VideoShare.

### 1. The '341 patent passes muster under *Alice* step one.

The '341 patent is directed at addressing a specific problem presented by computer technology: sharing digital video files over a computer network. The claimed solution is a "specific asserted improvement in computer capabilities," not an "'abstract idea' for which computers are invoked merely as a tool." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335–36 (Fed. Cir. 2016).

The "directed to" inquiry examines "what the patent asserts to be the focus of the claimed advance over the prior part." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1292 (Fed. Cir. 2020) (internal quotation marks and citation omitted). That inquiry focuses on the language of the claims

themselves, "considered in light of the specification." *Id.* at 1292–93. "[C]ourts 'must be careful to avoid oversimplifying the claims' by looking at them generally and failing to account for the specific requirements of the claims." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) (quoting *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016)).

The '341 specification highlights problems encountered in the prior art that the invention overcomes. In 1999, one of the most basic prior art methods of sending a video over a computer network was attaching a video as an email attachment. '341 patent, 1:32–45. But this approach was limited because it was slow and required separate programs for email and for playing the video. *Id.* Another approach was to post a video on a web site. *Id.* at 1:46–54. But this was a difficult task at the time, requiring "at least a detailed knowledge of various computer communication protocols," *id.* at 1:52–54, and, again, there were problems in the prior art: specifically, viewers with different internet connection speeds would have suboptimal experiences if they tried to view a video formatted for a different connection speed, *id.* at 19:67–22.

The claim language focuses on addressing those problems in a specific way. Claim 1 describes storing a received video, automatically converting it into different formats and storing those variations, using a single identifier to identify the different variations, and, upon request by a client to stream the identified video content, sending the appropriate file depending on the compatibility of the client with the various formats. *Id.* at 25:14–26:13 (claim 1). This reflects a specific solution to a technical problem that does not, contrary to Google's assertion, encompass all implementations of the "abstract idea of preparing a video file in a streaming format for sharing over a computer network and sending the most compatible between the original and the converted files," Mot. at 14. The claims require converting the video file into multiple formats independent

of a request to do so by the uploader; but a system could reasonably be designed to incur the computational and storage of such a conversion only upon request, or only for certain requested formats.  The claims require use of a single identifier for the video content corresponding to all the formatted files; but a system could reasonably be designed to use separate identifiers for each file and rely solely on the viewer to select which file to be sent.  And finally, the claims require determining a compatibility of the requesting viewer with the various formats and sending an appropriate file.  Each of those limitations demonstrates why the '341 patent is directed to a specific improvement to the functionality of sharing video files over a computer network, not merely an abstract idea.

> **2.**     **The '341 patent is eligible under *Alice* step two.**

"The second step of the *Alice* test is satisfied when the claim limitations 'involve more than performance of well-understood, routine, [and] conventional activities previously known to the industry.'"  *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018) (quoting *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014)) (alteration in original).  That is precisely what the jury found, and it resolves *Alice* step two in this case.[2]

Though Google uses rhetorical flourishes like "But even assuming [the jury finding] was supported by the record" and "Even if the jury properly found that [Google] did not meet [its] burden on Question 2 on the Verdict Form," Google does not actually dispute the jury's finding. *See* Mot. at 16–18.  Nor could it: the trial was replete with credited testimony by Dr. Almeroth that the '341 patent involved an ordered combination of technology that was not "well-understood,

---

[2]     To the extent that Google argues it was error to submit this factual finding to the jury, Mot. at 14, the Court may cure any potential error by determining for itself that the '341 patent claims involve more than the performance of well-understood, and conventional activities.

routine, and conventional" in 1999. *See, e.g.*, Tr. 1245:17–1246:25; Tr. 1251:22–1252:13; Tr. 1255:6–20; Tr. 1256:2–1258:3; *see generally* Tr. 1242:14–1260:17 (direct examination of Dr. Almeroth).

Instead, Google argues that the Court should find the '341 patent invalid even though the jury properly found unconventionality in the claims because, in Google's view, "a distinct legal inquiry is required into whether any allegedly unconventional feature of the patent offers an 'inventive concept' beyond the abstract idea itself." That argument is wrong.

First, *Berkheimer* is clear that the inquiry into unconventionality is, practically speaking, the same as the inquiry into whether the elements of the claim, either individually or as an ordered combination, "'transform the nature of the claim' into a patent eligible application." 881 F.3d at 1367. Google's expert testimony repeatedly tried to demonstrate that the '341 patent did not represent a technological "innovation" or contain an "inventive concept." *See* Tr. 994:15–23; Tr. 999:1–1003:13. Granted, "not every § 101 determination contains genuine disputes over the underlying facts material to the § 101 inquiry," but here, Google *is not disputing* the propriety of the factual finding itself, and the jury rejected Dr. Schoenfeld's testimony. Nor is *BSG Tech LLC v. BuySeasons, Inc.* controlling precedent here: that case did not involve an uncontested factual finding of unconventionality by a jury. 899 F.3d 1281, 1290 (Fed. Cir. 2018) (distinguishing *Berkheimer* because the current case lacked a genuine dispute of material fact).

Second, even if a distinct legal inquiry is required, the unconventionality found in the patent provides an "inventive concept." The '341 patent contains an "inventive concept" because it "recite[s] a specific implementation of the abstract idea that . . . solve[s] a problem unique to the Internet." *Weisner v. Google LLC*, 51 F.4th 1073, 1085 (Fed. Cir. 2022). The specification identifies a problem in the prior art techniques for sharing videos over computer networks—

namely, that viewing clients often tried to view video files that were suboptimal for their connection speeds. *See* '341 patent, at 19:67–22. That is a problem unique to computer networks, involving technical incompatibilities brought on by the intersection of the desire to stream videos hosted on the Internet with the physical network limitations of connection speed, limited storage on computers, and a plethora of mutually incompatible formats. As the specification describes, and as multiple witnesses testified at trial, those were very real technical challenges in 1999. *Id.*; *id.* at 1:32–54; Tr. 87:18–88:16 (Mr. Liwerant); Tr. 1256:15–1258:3 (Dr. Almeroth). Moreover, even if the invention is directed at an abstract idea, the patent claims a specific implementation of that abstract idea—namely, to automatically convert the uploaded video into files with multiple formats, to store each of those files, to use a single identifier to refer to the video content in all those files, and to send a file depending on the compatibility of the viewing client with those formats. *See* '341 patent, at 25:14–26:13 (claim 1).

Nor does that fact that VideoShare, at trial, highlighted that in 1999, no competing video-sharing websites or tools contained all the claimed limitations of the '341 patent mean that the jury inappropriately made a novelty finding. For one, "the Supreme Court [has] recognized that in making the § 101 determination, the inquiry 'might sometimes overlap' with other fact-intensive inquiries like novelty under § 102." *Berkheimer*, 881 F.3d at 1368 (quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 90 (2012)). And regardless, VideoShare elicited direct testimony that the specific techniques disclosed in the '341 patent, taken as an ordered combination, were inventive. *See generally* Tr. 1242:14–1260:17.

Google cites no case where a court has determined that a patent contains no inventive concept despite finding that the patent's claims are *not* well-understood, routine, and conventional. This should not be the first such case.

**D.      Google's motion for JMOL based on claim preclusion should be denied.[3]**

Claim preclusion requires showing that the same cause of action was already adjudicated; in the patent context, that requires showing that the patents at issue are "essentially the same" or "patentably indistinct." *SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1167 (Fed. Cir. 2018). Evaluating the sameness between parent and child patents in an assertion of claim preclusion requires "comparison of the asserted claims" to the parent claims. *Id.* at 1166–67.

Such a comparison confirms the distinctiveness of the '341 patent. As the Court noted in its earlier denial of this motion, the '302 claims require generating an "identification tag," whereas the '341 claims require generating an "identifier." Dkt. 21, at 8. The '302 claims require "receiving and "storing" advertisements, the '341 claims do not; the '341 claims require "storing" the first video file; the '302 claims do not. Finally, the '302 claims omit all discussion of sending one of multiple video files depending on the compatibility of their formats with the client.

Google presents no developed analysis of the claim language; it merely states that both patents involve "converting a video file into a second file format for sharing over a computer network" and points to VideoShare's filing of a terminal disclaimer to overcome the examiner's rejection for non-statutory double patenting. Mot. at 19. But Federal Circuit precedents "foreclose the inference that filing a terminal disclaimer functions as an admission regarding the patentability of the resulting claims." *SimpleAir*, 884 F.3d at 1167–68. Rather, "the claim preclusion analysis requires comparing the patents' claims along with other relevant transactional facts." *Id.* at 1168. Because Google has not done so here, and because any such comparison demonstrates clear differences in scope between the '302 and '341 patents, this motion should be denied again.

---

[3]      Google conflates issue preclusion with claim preclusion when describing its motion as one for JMOL of "invalid[ity] on claim-preclusions grounds." Mot. at 19.

### E.    Google's motion for JMOL of unenforceability due to terminal disclaimer should be denied.

The terminal disclaimer nowhere suggests that VideoShare disclaimed the term of the '341 patent beginning from the invalidation of the '608 and '302 patents.  It uses the phrase "the expiration date of the full statutory term," which refers to twenty years from the filing date of the applications, *see* 35 U.S.C. § 154(a)(2), not the date those patents were invalidated, *see* Dkt. 159, at 7–8 (amended order rejecting Google's previous motion).  Google's cited case law—a footnote, stating (in dicta) that a later terminal disclaimer referring to an earlier terminally disclaimed patent must disclaim from the shortened term of the earlier patent, *Eli Lilly & Co. v. Barr Lab'ys, Inc.*, 222 F.3d 973, 985 n.5 (Fed. Cir. 2001)—comports with the standard USPTO form terminal disclaimer used by VideoShare, which explicitly refers to the term of the prior patent as "presently shortened by any terminal disclaimer."  Dkt.74, Ex. A, at 191.  The footnote does not imply that any prior invalidation of the earlier patent constitutes a termination from which the later terminal disclaimer must be measured.  Finally, this Court should resolve any ambiguity in the terminal disclaimer by considering the context and intent of the patentee.  *See Bayer AG v. Carlsbad Tech., Inc.*, 298 F.3d 1377, 1382 (Fed. Cir. 2002); *The Boeing Co. v. United States*, 69 Fed. Cl. 397, 424–25 (2006).  A reasonable patentee would not disclaim any more than necessary to overcome the examiner's rejection.  And VideoShare did not do so here.

## IV.    CONCLUSION

VideoShare respectfully asks that the Court deny Google's motions for JMOL of noninfringement and for JMOL of no damages and its alternative motions for remittitur or a new trial.  VideoShare also asks that the Court deny Google's motions for JMOL of patent invalidity, for JMOL of claim preclusion, and for JMOL of patent unenforceability due to terminal disclaimer.

Respectfully submitted,


/s/ Winston H Luo

Michael W. Shore (SBN 18294915)
Halma Shukri Ndai (SBN 24105486)
**The Shore Firm**
901 Main Street, Suite 3300
Dallas, Texas 75202
Tel: (214) 593-9110
Fax: (214) 593-9111
mshore@shorefirm.com
hndai@shorefirm.com

Brian D. Melton (SBN 24010620)
John P. Lahad (SBN 24068095)
**Susman Godfrey L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Tel:  (713) 651-9366
Fax:  (713) 654-6666
bmelton@susmangodfrey.com
jlahad@susmangodfrey.com

Charles L. Ainsworth (SBN 00783521)
Robert C. Bunt (SBN 00787165)
**Parker, Bunt & Ainsworth P.C.**
100 E. Ferguson, Suite 418
Tyler, TX 75702
Tel: (903) 531-3535
charley@pbatyler.com
rcbunt@pbatyler.com

Winston H Luo (CA 339587)
**Susman Godfrey L.L.P.**
401 Union Street, Suite 3000
Seattle, WA 98101
Tel: (206) 516-3880
Fax: (206) 516-3883
wluo@susmangodfrey.com

COUNSEL FOR PLAINTIFF
VIDEOSHARE, LLC

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on November 14, 2022, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

/s/ Winston H Luo
Winston H Luo

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| VIDEOSHARE, LLC | § | |
| | § | |
| Plaintiff, | § | Civil Action No. 6:19-cv-00663-ADA |
| | § | |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| GOOGLE LLC and YOUTUBE, LLC | § | |
| | § | |
| Defendants. | § | **FILED UNDER SEAL** |

## ORDER DENYING DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND ALTERNATIVE MOTION FOR REMITTITUR OR A NEW TRIAL UNDER RULES 50(b) AND 59

Before the Court are Defendants Google LLC and YouTube, LLC's Rule 50(b) Renewed Motion for Judgment as a Matter of Law and Alternative Motion for a New Trial Under Rules 50(b) and 59 and all related briefing.  Having considered the parties' briefings, and for good cause shown, the Court hereby **DENIES** the Motions.

**IT IS ORDERED THAT**, within seven days of this order, the Parties are to submit a joint motion for entry of a proposed order consistent with the Court's ruling and opinion denying Defendants' Motions.

SIGNED this _____ day of _____, 2022.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE